**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------x

**IN RE STARBUCKS EMPLOYEE**
**GRATUITY LITGATION**

                              **INDEX NO: 08-cv-3318 (LTS)**

This Document Relates To:
All actions


-----------------------------------------------------x


<u>**DECLARATION OF SHANNON LISS-RIORDAN IN SUPPORT OF MOTION**</u>
<u>**TO APPOINT BARENBOIM COUNSEL AS INTERIM LEAD COUNSEL**</u>

I, Shannon Liss-Riordan, under penalty of perjury, affirm as follows:

1.      I am a partner in the Boston law firm of Pyle, Rome, Lichten, Ehrenberg

& Liss-Riordan, P.C., where I practice exclusively in the field of employment law on the

side of employees, with a specialty in wage and hour class actions and discrimination

law.  I joined the firm in 1998 and have been a partner since 2002.

2.      The firm, which has fifteen attorneys, has a practice devoted entirely to

employment litigation on behalf of employees and labor law on behalf of labor unions.

3.      I am an honors graduate of Harvard College (A.B., 1990) and Harvard

Law School (J.D., 1996).  Following law school and prior to practicing at this firm, I

served as a law clerk for two years for U.S. District Court Judge Nancy F. Atlas in

Houston, Texas.

4.      I have received a number of recognitions for my legal work, including the

following:

I was selected for inclusion in the 2008 publication <u>Best Lawyers in America</u> and
featured recently in the <u>Boston Globe Magazine</u> as one of "Boston's Best
Lawyers" (one of the few plaintiff-side employment lawyers selected);

I have been named a "Super Lawyer" by <u>Boston Magazine</u> each year since 2005;

In 2002, <u>Massachusetts Lawyers Weekly</u> named me one of its ten "Lawyers of the Year" (in all areas of practice), citing my success in a number of employment discrimination and First Amendment cases.  (<u>See</u> Exhibit 5.)

5.     I am a frequent invited speaker at national conferences sponsored by such organizations as the American Bar Association and the National Employment Lawyers Association on various topics regarding employment law, class actions, and wage and hour litigation.

6.     In the last seven years, my specialty has become wage and hour class actions.  In particular, I have developed a specialty niche representing tipped employees in class action wage and hour cases.  I have represented thousands of servers in dozens of lawsuits against restaurants, hotels, country clubs, and other foodservice establishments for not allowing servers to keep the full proceeds of customer tips or service charges.[1]

7.     I have brought three tips cases to trial as lead counsel and prevailed in all three of these jury trials.  <u>Calcagno et al. v. High Country Investor, Inc., d/b/a Hilltop Steak House</u>, C.A. No. 03-0707, Mass. Sup. Ct. (Essex 2006) (banquet coordinators not entitled to share in gratuities); <u>Benoit et al. v. The Federalist, Inc.</u>, C.A. No. 04-3516, Mass. Sup. Ct. (Suffolk 2007) (coordinators not entitled to portion of banquet service charges); and <u>DiFiore et al. v. American Airlines, Inc.</u>, C.A. No. 07-10070, U.S. Dist. Ct. (D. Mass. 2008) (airline's policy of collecting $2 per bag charge for curbside check-in

---

[1]     I have been assisted in a number of these cases described below by my law partner, Attorney Hillary Schwab, who co-counseled with me in all three tips trials. Attorney Schwab (who has been selected as one of this year's "Up and Coming Lawyers" by <u>Massachusetts Lawyers Weekly</u>) and Attorney Harold Lichten (who has also been named one of "Boston's Best Lawyers", a "Super Lawyer", and a "Lawyer of the Year" by <u>Massachusetts Lawyers Weekly)</u>, will also be available to assist on the <u>Barenboim</u> case as needed.

that was not distributed to skycaps violated Mass. Tips Law and rendered airline liable for tortious interference with advantageous relations).

8.      I have brought one tips case to the Massachusetts Appeals Court, in which I also prevailed on behalf of the plaintiff class: <u>Cooney et al. v. Compass Group Foodservice</u>, 69 Mass. App. Ct. 632 (2007) (reversing trial court's denial of summary judgment for plaintiff servers, holding that Massachusetts Tips Law should be strictly construed against establishment that did not distribute proceeds of "service charges" to waitstaff employees).

9.      I have prevailed on summary judgment on behalf of plaintiff waitstaff in at least seven tips cases: <u>Fernandez et al. v. Four Seasons Hotels, Ltd. et al.</u>, C.A. No. 02-4689, Mass. Sup. Ct. (Suffolk 2007) (assistant banquet managers and catering coordinators not entitled to share in gratuities even if they assist with serving patrons, summary judgment granted in favor of plaintiff waitstaff); <u>Shea et al. v. Weston Golf Club</u>, C.A. No. 02-1826, Mass. Sup. Ct. (Middlesex 2007) (total gratuities charged by country club must be distributed to waitstaff and bartenders); <u>Banks et al. v. SBH Corp. d/b/a/ Grill 23 & Bar</u>, C.A. No. 04-3515, Mass. Sup. Ct. (Suffolk 2007) (summary judgment granted in favor of waitstaff on claim that they did not receive entire banquet gratuity); <u>Moore et al. v. Barnsider Management Corp.</u>, 2006 WL 2423328 (partial summary judgment entered in favor of waitstaff where kitchen staff received share of tip-outs); <u>Paratore et al. v. F-1 Boston Café, LLC</u>, C.A. No. 02-2162, Mass. Sup. Ct. (Norfolk 2005) (waitstaff entitled to entire proceeds of service charges added to food and beverage bills); <u>Michalak et al. v. Boston Palm Corporation</u>, 2004 WL 2915452 (banquet service charges must be distributed to waitstaff; catering coordinators cannot receive share of gratuities even thought they assist with service); <u>Williamson et al. v. DT</u>

3

Management Co. d/b/a Boston Harbor Hotel, Inc., 2004 WL 1050582 (distribution of portion of banquet gratuity to assistant managers and other non-waitstaff employees who assisted with serving customers violated state tips law).

10.     I have been appointed class counsel on behalf of a certified national class of Morton's waitstaff challenging in arbitration the restaurant's violation of the tip credit provision of the FLSA: Johnson et al. v. Morton's Restaurant Group, et al., AAA No. 11 460 01513 05.

11.     In addition to these victories, I have obtained court-approved class action settlements in nearly twenty cases over the last five years brought on behalf of waitstaff employees alleging tip-related violations.[2]

---

[2]     In addition to these cases regarding tip violations, I have also achieved numerous successes on behalf of employees in other class action and individual litigation. Recently, my partner Harold Lichten and I won a class action bench trial against the Commonwealth of Massachusetts in which they successfully challenged the state's entry level firefighter civil service exam as having a discriminatory disparate impact on minority applicants; that victory led to a court-approved class action settlement for $2.15 million, including the hiring of more than 60 minority firefighters and police officers. Bradley et al. v. City of Lynn et al, 443 F.Supp.2d 145 (D. Mass. 2006). I successfully challenged a class action waiver in an arbitration agreement in the first case in which a federal Court of Appeals has considered the validity of a class action waiver in an FLSA case. See Skirchak et al. v. Dynamics Research Corporation, 508 F.3d 49 (1st Cir. 2007). I have also won significant victories for individual plaintiffs in discrimination and retaliation cases in federal and state court. See, e.g., Richard Dahill v. Boston Police Department, 434 Mass. 233 (2001) (Mass. Supreme Judicial Court decided upon certification from the federal district court that Massachusetts discrimination law would be more protective than federal law in prohibiting discrimination against individuals with correctable disabilities, which resulted in a jury verdict of approximately $850,000) (co-counsel with Harold Lichten); John Sprague v. United Airlines, Inc., 2002 WL 1803733 (following a bench trial, federal court ruled that airline violated Americans With Disabilities Act by refusing to hire deaf airline mechanic, entering judgment of approximately $1.1 million) (co-counsel with Harold Lichten); Samantha Smith et al. v. Winter Place LLC d/b/a Locke-Ober Co., Inc., 447 Mass. 363 (2006) (Mass. Supreme Judicial Court ruled that internal complaints of wage violations are protected under anti-retaliation statute); Richard Gasior v. Massachusetts General Hospital, 446 Mass. 645 (2006) (Mass. Supreme Judicial Court determined that discrimination claims, including claims for punitive damages, survive the plaintiff's death); King et al. v. City of Boston, 71 Mass.App.Ct. 460 (2008) (Mass. Appeals Court found that female superior officers

12.     My tip-related cases, which began in Massachusetts, have received

national attention.  Earlier this year, the Boston Globe published a front page profile

featuring my work on behalf of waitstaff employees and skycaps.  (See Exhibit 1:

Jonathan Salzman "Skycaps and waiters find a legal champion", Boston Globe, April 29,

2008.)  My work on behalf of tipped employees has also been featured in national

publications such as The National Law Journal, Nation's Restaurant News, the Legal

Broadcast Network, and Lawyers and Settlements.  (See Exhibit 2: "Attorney Shannon

Liss-Riordan: Challenging Corporate Power and Tips Abuse".)[3]

13.     For more information on my tip cases, see www.prle.com/

ca_tips_law.htm (Exhibit 3).

14.     In awarding attorneys' fees for my work on a retaliation case brought on

behalf of a terminated server against Morton's of Chicago, a prominent arbitrator

described me as follows:

---

could prove discrimination in police department's failure to provide them with private
locker rooms, a privilege enjoyed by male superior officers);  Gilbert Hernandez v.
Winthrop Printing Co., Suffolk Superior Court, No. 99-04588G (lead counsel in jury trial
resulting in verdict for plaintiff who was terminated retaliation for complaining of race
discrimination); John Bingham v. Lynn Sand & Stone, Mass. Commission Against
Discrimination No. 93-BEM-1491 (lead counsel for case in which truck driver proved he
was not hired because of his race); Adam Simms v. City of New York, 160 F.Supp.2d
398 (E.D.N.Y. 2001) (disability discrimination case resulting in partial summary
judgment for the plaintiff and, on the eve of trial in federal court, the return to full duty of
a New York firefighter with diabetes); O'Neill v. Commonwealth, 2002 WL 342675 (D.
Mass. 2002) (obtained federal court injunction ordering reinstatement of State Police
recruit who had been disqualified in violation of his First Amendment rights, for owning
adult bookstores); and Moore v. Commonwealth, C.A. No. 02-10379, U.S. Dist. Ct. (D.
Mass. 2002) (obtained federal court injunction ordering reinstatement of State Police
recruit who had been disqualified in violation of her First Amendment rights, for
cohabitating with a convicted felon).

[3]     My recent work on behalf of skycap employees challenging the airlines'
imposition of $2 per bag charges for curbside check-in (for which my partner Attorney
Schwab and I recently won a jury verdict in federal court, DiFiore et al. v. American
Airlines, Inc., C.A. No. 07-10070, U.S. Dist. Ct. (D. Mass. 2008)) has likewise received
national attention, including recent features on CNN and NPR.   See Exhibit 3.

> Ms. Liss-Riordan is widely recognized as one of the pre-eminent plaintiff lawyers in New England, and she is the unchallenged leader regarding wage and hour and retaliation claims in the hotel and restaurant industry.

Bilbilian and Morton's of Chicago/Boston, Inc., AAA Case No. 11 160 00217 03, Ruling on Petition for Attorneys Fees, (Exhibit 4), at 15.

15.     My work on behalf of waitstaff employees appears to have prompted what has been referred to as a "wave" of tip-related litigation across the country. Several years ago, attorneys in California, after hearing me speak at a national conference about my work challenging tipping violations and obtaining sample briefing from me on issues related to tip litigation, filed a case against Starbucks on behalf of baristas that resulted earlier this year in a judge's ruling after a bench trial that Starbucks violated the California tips law, California Business and Professions Code sections 17200 *et seq.*, and entered judgment of more than $100 million. Chau et al. v. Starbucks Corporation, No. GIC 836925 (Cal. Super. Ct. San Diego County).[4]

16.     Following the success of that trial, I filed a similar case in Massachusetts where I now represent a putative statewide class of baristas alleging that Starbucks' tip policy violates the Massachusetts Tips Law, Mass. Gen. L. c. 149 § 152A. Matamoros et al. v. Starbucks Corporation, C.A. No. 08-10772 (D. Mass.). Shortly afterward, Maimon Kirschenbaum contacted me and invited me to join him in filing a similar case in New York under N.Y. Labor Law § 196-d, which is the Barenboim case.

17.     After the Barenboim case was filed, the law firm Wolf Popper filed a "competing" class action case, Harayda v. Starbucks, in New York Supreme Court. After

---

[4]     I am in close touch with the attorneys who represented the successful plaintiffs' class in the California litigation. Attorney Terry Chapko (whose firm initiated that litigation) and I have been in communication regarding strategy in these Starbucks tips cases.

the <u>Harayda</u> case was removed to federal court and consolidated with <u>Barenboim</u>, the Wolf Popper attorneys contacted me about collaborating with them in representing the putative plaintiff class.

18.    Although my co-counsel, Attorney Kirschenbaum, and I were skeptical about the need for three separate law firms to represent the putative class in this case, as well as the motives for a firm that had never filed a tips case before (nor had any specialty in employment litigation) to have filed this case one week after the <u>Barenboim</u> case was filed, we did not want to engage in a dispute that would divert counsel's attention from prosecuting this case effectively on behalf of the putative class. In response to Wolf Popper's suggestion that we work together cooperatively on the case, we responded that we would be willing to work with them.

19.    In our discussion regarding potential collaboration, Wolf Popper hostilely rejected suggestions made by myself and Attorney Kirschenbaum and refused to consider any arrangement other than its proposal: that it have a full vote equal to the votes of both Pyle Rome and Joseph & Herzfeld combined and that it be guaranteed one-half of any attorneys' fees recovered, regardless of the amount of work it performed on the case.

20.    When Attorney Kirschenbaum and I tried to discuss calmly our concerns with this proposal, Attorney Levy began shouting at us and not letting us speak. While we would have much preferred to work out an amicable agreement regarding work-sharing (rather than engaging in this public dispute regarding interim class counsel

appointment), this response by Wolf Popper caused us grave concern about the prospect of our having a successful and productive collaborative relationship with them.[5]

I affirm, under penalty of perjury, that the above and foregoing information is true and correct.

___/s/  Shannon Liss-Riordan_____
Shannon Liss-Riordan

Dated:  August 6, 2008

---

[5]     In its motion, Wolf Popper has made some other erroneous statements.  For instance, it asserts that the <u>Barenboim</u> counsel did not share with them our draft of the proposed joint statement.  On the contrary, I did promptly forward my draft of the statement to the Wolf Popper attorneys, as well as Starbucks counsel, after drafting it, so that all counsel could contribute any proposed edits to the statement.  There was no reason for Wolf Popper to draft its own statement from scratch, other than its clear attempt to provide a "competing" draft and create more work for all counsel in the preparation of the joint statement.

# The Boston Globe

TUESDAY, APRIL 29, 2008

*'It's physically tiring. . . . They work hard for those tips.'*

SHANNON LISS-RIORDAN, *lawyer*

# Skycaps and waiters find a legal champion

## Lawyer's suits target tip-skimming

**By Jonathan Saltzman**
GLOBE STAFF

Days after a federal jury ordered American Airlines to pay a group of nine local skycaps more than $325,000 in lost tips, the plaintiffs and their legal team celebrated with a boisterous dinner at Ruth's Chris Steak House at Boston's Old City Hall.

The skycaps ordinarily spend their workdays lifting heavy baggage onto carts at Logan International Airport's curbside, but on this recent evening they raised wine glasses and beer mugs over plates of rib eye steaks to toast their lead lawyer, Shannon Liss-Riordan, whom they dubbed "Sledgehammer Shannon."

The dinner party got superb service, Liss-Riordan said, which is hardly surprising; she recently filed class-action suits on behalf of waiters and waitresses at the upscale restaurant who have accused management of skimming their tips, too.

**LISS-RIORDAN, Page A9**



DINA RUDICK/GLOBE STAFF

Shannon Liss-Riordan met with Don DiFiore of Dracut, lead plaintiff in a lawsuit against American Airlines.

THE BOSTON GLOBE

# Skycaps and waiters find a legal champion

► **LISS-RIORDAN**
*Continued from Page A1*

Since 2001, Liss-Riordan, a partner in a modest-size law firm in downtown Boston, has brought at least 40 lawsuits on behalf of waiters, bartenders, and other service workers in Massachusetts who say their employers cheated them out of tips.

She took an obscure 1952 state law that protects tip-dependent workers, who can legally be paid less than minimum wage, and has used it to reap millions of dollars in awards and settlements. Lawyers outside Massachusetts have adopted her strategy, including the lawyers who recently won a $100 million award for baristas at Starbucks cafes in California.

A Harvard Law School graduate who helped found a feminist activist group in the early 1990s, Liss-Riordan originally wanted to be a civil rights lawyer. Instead, the Houston native has become something of an avenging angel for workers who rely on customers' generosity as they carry plates of sirloin and scrod, mix mojitos and martinis, and hoist luggage.

"It's hard work," Liss-Riordan, 38, said of such jobs. "It's physically tiring, it's stressful, and you have to be good dealing with people. They work hard for those tips, and part of the problem with the industry is a lot of managers and owners look at the tips and think, 'They shouldn't be making that much money.' So they want to take a piece of it, or subsidize their labor costs for other employees."

Her clients speak of her almost reverently. Don Benoit, one of about 40 waiters who successfully sued the former Federalist restaurant in Boston in Suffolk Superior Court last year for failing to give them all of the 21 percent service charge added to bills at private functions, called her "brilliant." A former American Airlines skycap who expects to get about $3,000 in back tips from the airline said Liss-Riordan champions the "kickstand of corporate America."

But critics say she has manipulated an arcane and confusing law to reap a windfall for her clients and firm. If such litigation continues, detractors say, awards could skyrocket as a result of a state law

passed this month mandating that employers pay triple damages for violations of so-called wage-and-hour laws. Critics say the suits hurt fragile businesses and, sometimes, her clients' co-workers.

"I have a lot of respect for Shannon, but I do see this cottage industry she's created around the tip statute as becoming abusive toward employers," said Ariel D. Cudkowicz, who has defended many restaurants, hotels, and Gillette Stadium against Liss-Riordan's suits, reaching out-of-court settlements in several. The prospect of large awards, he said, is "very alluring" to plaintiffs and their lawyers. Liss-Riordan's firm keeps one-third of the money it obtains for clients.

Liss-Riordan first made national headlines in the early 1990s when she joined the daughter of writer Alice Walker and helped founded the Third Wave, a nonprofit group that led voter registration drives in the wake of the Anita Hill-Clarence Thomas hearings.

After graduating from Harvard Law in 1996 and clerking for a federal judge in Texas, she joined the firm Pyle, Rome, Lichten & Ehrenberg and has been there since. Her mentor, Harold L. Lichten, a well-known labor and employment lawyer, said she is "the smartest, most pugnacious, and toughest attorney I've ever met."

It is not uncommon for him to arrive at their Tremont Street office in the morning only to find Liss-Riordan at her desk after

working through the night, he said, "which is particularly amazing given that she has three kids." Liss-Riordan's husband is a writer and stay-at-home father.

Most of her suits allege violations of a state law that prohibits management at restaurants, bars, and hotels from taking a portion of tips reserved for waiters and bartenders who can legally be paid as little as $2.63 an hour, well below the state's minimum wage of $8 an hour.

Some restaurants say other employees, including managers and maitre d's, deserve a share of tips because they sometimes serve food and drinks and also earn relatively low wages. But Liss-Riordan says that if those workers deserve more money, owners should raise their pay.

Defendants have included the Four Seasons Hotel, the Weston Golf Club, Northeastern University, the Palm, and Ruth's Chris, whose Boston lawyer declined to comment. One of the biggest awards came in 2006 when an Essex County jury ordered Hilltop Steakhouse in Saugus to pay an estimated $2.5 million in damages to wait staff, but both sides settled out of court before the judgment became final.

In 2004, the Legislature expanded the 1952 statute to cover employees outside the food and beverage industries, paving the way for Liss-Riordan's skycaps suit. In that complaint, skycaps contended the airline violated the tips law when it began charging

passengers a $2-per-bag fee for curbside check-in service in September 2005. Skycaps testified that tips plunged because many passengers mistakenly thought the workers kept the $2 fee and were reluctant to tip on top of it.

The airline countered that it put up signs specifying that the fee excluded tips. But the jury sided with the plaintiffs, ordering the airline on April 7 to turn over all the fees to the skycaps. They will receive amounts ranging from $3,066 to $64,138, Liss-Riordan said. She has since filed similar suits on behalf of skycaps from United Airlines and US Airways.

Her co-counsel in about half the cases has been Hillary Schwab, a 34-year-old partner at the firm.

Lawyers elsewhere in the country have followed Liss-Riordan's lead. Last month, a San Diego County judge ordered Starbucks to pay at least 120,000 baristas in California more than $100 million in tips and interest to cover gratuities that the company handed over to shift supervisors.

Starbucks condemned the ruling and said the judge did not consider the interests of shift supervisors who "deserve their fair share of the tips." Nonetheless, Liss-Riordan wasted no time filing similar suits in Massachusetts and New York on behalf of baristas there.

Several people in the restaurant and hotel business say such litigation harms the industry. William Sander, general manager of the Fifteen Beacon Hotel, location of the former Federalist restaurant, criticized a December verdict siding with wait staff who said management illegally shared their tips with private dining room coordinators. He said the law was unclear about which employees were entitled to tips.

If restaurants are forced to pay managers more, he said, "you'll end up closing 90 percent of the restaurants in the country."

That's hogwash, said Liss-Riordan.

A well-managed business, she said, "does not dip into tips to make ends meet."

*Jonathan Saltzman can be reached at jsaltzman@globe.com.*


Shannon Liss-Riordan (left) and co-counsel Hillary Schwab have won lawsuits on tips for low-paid service workers.

DAVID L. RYAN/GLOBE STAFF



*LawyersandSettlements.com*
**Legal News. True Stories.**

# Attorney Shannon Liss-Riordan:
# Challenging Corporate Power and Tips Abuse

*April 9, 2008. By Paul Halpern*

*Boston, Massachusetts:* LawyersandSettlements' interview with Shannon Liss-Riordan, a partner in the labor, employment, and class action law firm of <u>Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan, P.C.</u> was delayed a day. That's because Liss-Riordan had to be in court for the verdict in a Massachusetts tips case taken against American Airlines. It was the first thing she mentioned when we reached her the next morning, so we took it from there.

*LawyersandSettlements (LAS): What was your latest verdict about?*

Shannon Liss-Riordan (SLR): We just got a verdict yesterday. We won restitution of $325,000 on behalf of nine Skycaps at Logan International Airport who sued American Airlines, who like some other airlines have recently been charging passengers $2 per bag for curbside checkin. We charged that this practice violated the Massachusetts tip law, and we won. The jury also found tortious interference and violation by American Airlines with the Skycaps' relationship with passengers.

*LAS: What did the tortious interference finding determine?*

It involved the same cash that passengers have always been willing to pay Skycaps as tips for the convenience of curbside checkin—avoiding hauling their bags inside and standing in line in the terminal to check in for a flight. We argued that the checkin fee essentially redirected the Skycaps' tips to American Airlines.

Many passengers thought this fee was a mandatory tip for the Skycaps; we argued that people didn't realize that the money wasn't going to the Skycaps; it was going directly into the coffers of American Airlines. The jury found that this constituted tortious interference under the Massachusetts tip law, but it did not for the one Skycap we represented from Lambert/St. Louis Airport in Missouri, since Missouri doesn't have a tip law.

Originally we asked that the case be certified as a national class action. The judge denied that, but since we've now won at the state level, we may be seeking again to have it certified, and because jury found tortious interference under Massachusetts law, we believe that if we can get certified as a national class action, we can persuade a jury that we have tortious interference elsewhere as well. Now that we've won in Massachusetts, we believe this shows we've got a serious case and we can go forward.

*LAS: You've also recently filed a class action for baristas against Starbucks for tip pooling violations similar to the recent successful action in California. Does the Massachusetts state labor code have a tips clause like the one in California?*

SLR: The Massachusetts tips law is even more favorable to baristas than California; it's actually the most protective in the nation. The tips law refers to "an employer or its agent" in New York, where we've also filed, and in California. In California they found that the shift supervisors were "employer's agents". In Massachusetts, you don't even have to do the "agency" analysis; the law simply states that no employees with any managerial authority may receive any share of pooled tips. The Massachusetts state attorney general has issued an advisory to this effect, so we think the Massachusetts case is even easier than the California case.

*LAS: Given that, do you think that Starbucks may decide to settle in Massachusetts rather than go to trial?*

SLR: Well, that would be a welcome change! I've found, though, that in most of these cases, they'll fight it all the way through trial. Starbucks has vowed to fight this case, they've vowed to appeal the California decision, and they're trying to make themselves look like a benevolent employer. Why can't they just admit they made a mistake and correct their workplace practices?

I find this a lot with tips and wage and hour cases. The employers will fight it and fight it, and then years down the road, when they lose, they wind up paying much more. I'll be glad to take on that fight. I've filed at least 40 tips class actions over the years; I've settled about 20, and the rest are pending. Some of the cases I'm settling now I filed in 2002, and the settlements are much bigger now because they've been accruing interest all along. Along the way, the employers have made every argument imaginable, and they've lost virtually every time.

We won the Skycaps tips case this week, we won against Hilltop Steakhouse in 2006, and we won against the Federalist Restaurant in December 2007. So we've won three trials, we've won many summary judgments, we won an

appeal against Northeastern University that reversed a lower court ruling and gave a summary judgment for our plaintiffs. So we've pretty much established the law in this area.

*LAS: Wouldn't it make more sense for employers to simply comply with the state tips law?*

SLR: You'd think it would, but it's mind boggling the way employers try to get around these rulings. When I started doing these cases in 2001, employers were saying, "Oh, we didn't know there was a tips law; our mistake, sorry." I was suspicious about that then, and by now those arguments are wearing thin. Every business in Massachusetts should know there's this law and they should keep their hands off their employees' tips. They've been finding more and more ingenious ways to get around it, and they're failing; in case after case we beat them.

The latest trick is that they think they can call the service charges that are automatically included in a customer's check a 15 percent "administrative charge". They think that if they change the titles of their managers, that's going to make it okay. So people who were called managers are now captains or leads or something like that, but that doesn't do it. They try implementing arbitration clauses to prevent employees from suing them in class actions. It's been a busy seven years.

*How did you get involved in this type of class action? What keeps you at it?*

SLR: Tips lawsuits are what got me involved in wage and hour law in the first place. In 2001, a waiter called me and asked, "Hey, my manager is taking some of our tips; isn't there supposed to be a law against that?" I said, "That's interesting—let me check this out." So I went and found that this tips law had been on the books since 1952, but there were no published decisions related to it. It had been flagrantly violated across the industry.

Since then, I've won more than a dozen decisions, and that's had a ripple effect. I've been getting calls from across the country, including one from California in 2004. I sent them some information, and I got a call back from them recently to say, "Hey, we thought you might like to know how this all turned out." It turned out to be the Starbuck's tips case, and they won over $100 million in damages. I said, "Wow, fabulous!"

It's really exciting to see workers coming together and realizing that they have rights and they can take action to protect them. Word gets out, someone gets a settlement, one case leads to another. I get calls from waiters in Massachusetts and now around country, saying, "Hey, I didn't know that I could do something about this."

It takes a lot of time, a lot of sweat, a lot of writing briefs, a lot of arguing before judges, but I love doing work that's sticking up for the little guy, supporting working people. I love going against large corporations who think they're above the law because of their wealth and resources, and turning the tables on them and helping workers find their voice.

It's very exciting and very powerful to bring a case that can have repercussions for many employees in a class action that helps people who live paycheck to paycheck or shift to shift, even in a non-unionized setting. This is an exciting other way that workers can stand up for themselves.

*Attorney Shannon Liss-Riordan, a graduate of Harvard College, received her JD cum laude from Harvard Law School in 1996. She has been with Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan, P.C., for nearly ten years and has been a partner since 2002. In 2002 as well, she was named one of ten Lawyers of the Year by Massachusetts Lawyers Weekly for her anti-discrimination and First Amendment rights work.*

# PYLE, ROME, LICHTEN, EHRENBERG & LISS-RIORDAN, P.C.
### *The Labor, Employment & Class Action Specialists*

Home

Attorneys

Practice Areas

Class Action Cases

**Tips lawsuits**
- Skycaps tips cases
- Starbucks tips cases
Independent Contractor
Misclassification
- FedEx Cases
- Newspaper Delivery Drivers
Cleaning franchise cases
State civil service exams

Contact Us

## Lawsuits against restaurants, hotels, and other employers for tip-related violations, on behalf of waitstaff and other tipped employees

For the last seven years, we have represented hundreds of servers in dozens of lawsuits against restaurants, hotels, and other establishments for depriving servers of the full proceeds of customer tips or service charges. We have obtained more than a dozen court-approved class action settlements on behalf of waitstaff, and we have won many of these cases on summary judgment.

We have also won jury verdicts in three of the first tips cases to go to trial, on behalf of skycaps at Logan Airport, function servers at the Hilltop Steak House, and waiters at the Federalist restaurant.

For a sample of our tips cases, see the links below.

SKYCAPS TIPS CASES »

STARBUCKS TIPS CASES »

Fenway barkeep seeks help with tips lawsuit
Boston Herald | April, 2008
(see also: letter that Hayes sent to the Red Sox)

Fenway bartender seeks Sox support on tips
Boston Globe | April, 2008

Jin Workers Win Class Settlement for Stolen Tips
Asian American Movement Ezine | May, 2008

Cape employer sued over tips
Cape Cod Times | April, 2008

Firm seeks class action tips suit against Pier 4
Boston Business Journal | February, 2008

Quincy siblings sue restaurant chain: Say Ruth's Chris Steak House underpaid for non-tip producing work
The Patriot Ledger | November, 2007

Arbitrator certifies national class of servers against Morton's of Chicago in case alleging tip credit violations

## Tips Litigation In The News



Shannon Liss-Riordan & Hillary Schwab in a recent Boston Business Journal profile

Shannon Liss-Riordan discusses skycaps case on CNN
CNN | July 31, 2008

Skycaps and waiters find a legal champion (front page)
Boston Globe | April, 2008

Attorney Shannon Liss-Riordan: Challenging Corporate Power and Tips Abuse
Lawyers and Settlements
April, 2008

The Champion of Skycaps, Waitresses and Delivery Drivers
Vadimus Post | April, 2008

🔊 Audio Interview
Shannon Liss-Riordan discusses wage and tip litigation
Legal Broadcast Network
May, 2008

🔊 Audio Interview
Here & Now interviews Shannon Liss-Riordan on Skycaps tip case
NPR Here & Now | May, 2008

Happy Hour: Friday 1-2pm, Gratuity Included

American Arbitration Association | June, 2007

Suit says Ritz illegally keeps some tip money
Boston Globe | January, 2007

Wave of tip pooling lawsuits snares more operators
Nation's Restaurant News | October, 2006

Door opened for retaliation claims
National Law Journal | August, 2006

Four fired servers win lawsuit against Hilltop restaurant
Daily Item of Lynn | July, 2006

Steak house may be liable for $2.5m
Boston Globe | July, 2006

Atlanta waiters sue: tip-sharing to fund restaurant's
"incidental labor fund"
Atlanta Journal-Constitution | September, 2004

Lawsuits filed by wait staff over tips
Boston Globe | October, 2004

Massachusetts State Law Allows a $25,000 Civil Penalty
for Restaurateurs who Violate the Tip Law
Boston Globe | August, 2004

Beverly Cooney et al. v. Compass Group Foodservice, et
al., 69 Mass.App.Ct. 632 (2007) (Appeals Court held
that servers were entitled as a matter of law to receive
proceeds of service charges added to function bills at
Northeastern University's Henderson House conference
center, reversing lower court's ruling that case
presented fact issue for trial)

Don DiFiore et al. v. American Airlines, Inc., 483
F.Supp.2d 121 (D.Mass. 2007) (skycaps' claim that
airline's $2 baggage charge interfered with their tips was
not preempted by Airline Deregulation Act, and
employees could pursue claim under state tips law and
common law)

Manuel Fernandez et al. v. Four Seasons Hotel, Inc.,
(Suffolk Superior Court 2007) (court granted summary
judgment in favor of plaintiff servers, holding that
hotel's distribution of a portion of banquet service
charges to managers violated Massachusetts tips law)

Paul Shea et al. v. Weston Golf Club, (Middlesex
Superior Court 2007) (court granted summary judgment
in favor of plaintiff servers, holding that private club's

Radio Boston Post | May, 2008

Tips Crusader
Radio Boston Post | May, 2008

Audio Interview
Who's Tips?
Radio Boston Post | May, 2008

failure to distribute to servers revenues listed as service charges on members' bills violated Massachusetts tips law)

Samantha Smith et al. v. Winter Place LLC d/b/a Locke-Ober Co., Inc., 447 Mass. 363 (2006) (Supreme Judicial Court held that employees are engaged in protected activity, and cannot be retaliated against, when they complain about alleged wage violations, even if they do not raise these complaints with the Attorney General)

Michalak et al. v. Boston Palm Corporation, 2004 WL 2915452 (court granted summary judgment in favor of plaintiff servers, holding that distribution of portions of function service charge to catering manager and kitchen staff violated Massachusetts tips law)

Williamson et al. v. DT Management Co. d/b/a Boston Harbor Hotel, Inc., 2004 WL 1050582 (court held that hotel violated Massachusetts tips law by distributing portions of service charges to managers, assistant managers, and catering coordinators)

Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan, P.C.
18 Tremont Street, Suite 500, Boston, MA 02108
tel 617-367-7200 fax 617-367-4820 Contact us

Copyright © 2008. All Rights Reserved.
Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan, P.C.
Terms of use

Website design by Elytra Design, 2007

**AMERICAN ARBITRATION ASSOCIATION**
Employment Arbitration Tribunal

**In the Matter of the Arbitration between**

**DAVID BILBILIAN, Complainant**

     **and**

**MORTON'S OF CHICAGO/BOSTON, INC.,**
**Respondent**

**AAA Case No. 11 160 00217 03**

## RULING ON PETITION FOR ATTORNEYS' FEES AND COSTS AND FINAL AWARD

### BACKGROUND

An arbitration was held in this matter pursuant to Morton's Mandatory Arbitration Policy to decide the issue of whether David Bilbilian was terminated in violation of M.G.L. c.149, §148A. Hearings were held on eight days between October 28, 2003 and January 12, 2005. The parties then submitted extensive briefs and reply briefs by July 5, 2005.

In a forty-four page decision, I found that Bilbilian was terminated in retaliation for protesting a tipping policy which he believed violated c. 149, §152A. Bilbilian was awarded back pay, which was significantly reduced because of a failure to mitigate damages; a minimal amount of compensation for emotional distress; and reasonable attorneys' fees and costs. Shannon Liss-Riordan, Bilbilian's primary counsel, initially submitted on October 27, 2005 a request for fees of $181,985, which she requested be enhanced by a discretionary lodestar multiplier; and costs of $12,776.56. She requested that if Respondent challenged the hours or the billing rate, Respondent should be required to produce its complete billing records for the case.

David Bilbilian
and
Morton's of Chicago/Boston, Inc

do not reflect the actual fees charged by major plaintiff counsel, and certainly not by defense counsel. Judge Young's analysis of why prevailing plaintiff counsels are not entitled to anything approaching the billing rates of defense firms is unpersuasive. Judge Keeton's conclusion that the rates paid by the losing party to its own counsel are very probative of what is reasonable is sound.

Liss-Riordan provided more than a sufficient basis to justify her request for a billing rate of $350. She is widely recognized as one of the pre-eminent plaintiff lawyers in New England, and she is the unchallenged leader regarding wage and hour and retaliation claims in the hotel and restaurant industry. Contrary to Respondent's assertions, this was not a simple, straight-forward case and every issue was strongly contested. Even if Respondent counsel's billing records showed that they did not charge $350 an hour, Liss-Riordan's fee rate request would be justified by the supporting affidavits and the nature of the case. The fact that Bilbilian was not awarded a greater portion of his lost wages was due to his failure to adequately mitigate his damages, not any failure in the prosecution of his case.

The rates sought for Rieker, Carlin, and Young are within the range awarded by state and federal judges for associates, and the actual rates charges by firms doing employment law. Had Respondent produced its records so a comparison could have been made with what was being charged for Windholz's time, with an allowance being made for her somewhat more active role, I would have been receptive to looking more critically at the rates being sought for Complainant's associate counsels. Without that information, I see no reason to cut the requested rates.

15





www.masslawyersweekly.com

Wednesday, October 17, 2007                                                                                    Lawyers Weekly, Inc.

Try 3 Free | Subscriber Services | Our Newspapers | Other Products | Advertise | Help

Lawyer Of The Year 2002



# Shannon E. Liss-Riordan

**Boston**

**Born**: May 29, 1969; Houston

**Education**: Harvard Law School, 1996; Harvard College, 1990

**Massachusetts bar admission**: 1999

**Legal experience**: Pyle, Rome, Lichten & Ehrenberg, partner (1998-present); law clerk to U.S. District Court Judge Nancy F. Atlas, Houston (1996-1998)

**Bar affiliations**: Massachusetts Bar Association, National Employment Lawyers Association

---

Her record speaks for itself.

In 2002, Shannon E. Liss-Riordan won two key discrimination cases and two federal injunctions protecting the First Amendment rights of employees, and began work on several cases that could affect future plaintiffs.

"My favorite cases are ones that require pushing the law," she says.

In January, Liss-Riordan was one of the lead lawyers in the trial of *Dahill v. Boston Police Department*, in which a federal jury awarded more than $800,000 to a Boston Police Academy recruit who was fired when the department concluded that his use of hearing aids was dangerous. In that case, the Supreme Judicial Court decided by certified question that individuals with correctable disabilities may bring discrimination cases under Chapter 151B, a ruling that rejected the applicability of the U.S. Supreme Court's ADA decision in *Sutton v. United Airlines*.

Seven months later, Liss-Riordan teamed up with the Disability Law Center in federal court to win a $1.1 million award against United Airlines for its refusal to hire an experienced airline mechanic because he was deaf.

In a third case, she also won federal injunctions ordering the Massachusetts State Police to admit one recruit who had been disqualified for owning adult bookstores and another who was wrongly disqualified for living with a former felon.

Her year's work also featured 11 class action lawsuits against food service establishments that are allegedly skimming tips from wait staff, discrimination suits for a kidney transplant recipient and an insulin-dependent fireman, and a suit against the City of Everett for allegedly requiring an employee to violate federal equal access laws.

And she did most of this while pregnant with her second child.

In fact, she loves her work so much that she continued working from home during maternity leave in November and was talking to a co-worker about her pending cases just hours after giving birth.

* * *

*Q. What were your most satisfying victories last year and why?*

A. Both the *Sprague* [the airline mechanic] and *Dahill* [the police officer] cases were most satisfying. In both, my team represented someone with a lifelong dream of pursuing a career and they were held back for illegitimate reasons. It was great to see both plaintiffs get their jobs and the opportunity to get back their dreams.

*Q. In the* Dahill *case, what was the key to victory?*

A. Legally, the key was convincing the SJC that the [U.S.] Supreme Court took a wrong turn when it limited who could pursue a disability claim. That gave us the chance to go to trial. [At trial,] the key was putting all the pieces together from different angles to undermine the Police Department explanation for terminating Mr. Dahill. Those pieces included audiological experts, the plaintiff's own testimony, witnesses who were in the police academy with Dahill, and another hearing-impaired police officer who could testify to his ability to perform with hearing aids.

Q. What are the special challenges of representing plaintiffs with hearing impairments?

A. There are societal misperceptions [that] can influence an employer's decision about an individual's ability to do a job. Juries can come to trial with their own misperceptions too. A plaintiff's lawyer has to make sure that stereotypes won't influence a jury's decision. That's partly what led us to waive a jury in the *Sprague* trial. We were worried that lay people would feel uncomfortable about letting a deaf person work on airplanes. We felt a judge could better sift through the evidence and decide the matter factually. But we were also pleased to see the *Dahill* jury overwhelmingly reject the Police Department defense.

Q. What were the special challenges in your First Amendment cases?

A. The plaintiffs I represented were denied jobs for reasons that might not seem sympathetic to the general public. By its very nature, First Amendment work often means representing someone with unpopular beliefs or someone who associates with people engaged in some activity that is not publicly supported. One plaintiff I represented owned adult bookstores and that is obviously not popular with large segments of the public. Another plaintiff was a woman with a boyfriend who served time for drug trafficking and weapons possession. It was a challenge to persuade the court that both individuals had constitutionally protected rights at stake that outweighed the employer's concerns about them as police officers.

In one case, the police argued that the mere presence of a man who owned adult bookstores could create an uncomfortable environment for women officers, but we argued that his First Amendment rights protected what he did on his own time. In the case involving a police recruit who had a boyfriend with a felony record, the police argued that the man would illegally have access to a gun because police are required to keep one with them at all times. But it was not clear that her weapon had to be kept at her home. We argued it could be kept in a relative's house next door or in another accessible location under lock and key.

Q. How do you decide what cases to take and what you screen out?

A. That's a complicated question. There's a balance of many factors. I love listening to people's stories. Generally, I have a really hard time turning down a good case with a compelling story. Bad cases are when the facts are so cloudy that it is uncertain whether we can obtain a good result for them. Sometimes, people have great facts and the law is not on their side, but I take some of those to push the law, too.

Q. Why did you choose to represent plaintiffs in employment law?

A. I went to school for civil rights law, and found a natural gravitation to employment. I still do some civil rights work that is not employment related, but I think people's jobs and careers are most important to them. I also find it fascinating to learn about so many different fields of occupation. This year alone I learned about police work, the printing industry and the restaurant industry — and I basically learned how to take an airplane apart and put it back together. Every time I go into a new field I get more insights into what different people do every day.

Q. You have successfully sued police departments and the police academy a number of times. How do you respond to people who say this just raises the cost of policing?

A. Police officers have rights like everyone else. Because we have laws against discrimination, I think it is especially important for government entities to follow the law. Lawsuits in general increase societal costs, but society has decided to pass laws giving people workplace rights. Having decided that discrimination should not be tolerated, we must prohibit it. Plaintiffs' lawyers are essentially upholding these laws.

Q. How do you respond to those who say that plaintiffs' lawyers just increase the amount of "red tape" for employers?

A. When a plaintiff files suit and prevails, that individual has had to overcome many obstacles to demonstrate that law was broken. For every person who wins, many more are not able to overcome those obstacles, and many never sued but could have. Those who are successful have immeasurable impact on and benefit to others who don't have to go to court in the future. Every case resolved through the courts gives employers and employees more idea of what their rights and responsibilities are and thereby prevents some litigation in that regard.

*Q. What kind of response are you getting to the 11 class actions you filed against restaurants for allegedly skimming portions of tips from servers?*

A. There has been a great deal of response. These suits have raised awareness in the restaurant industry about the Massachusetts wage law that protects tipped employees. Although it has been on the books for a long time, many people have not been aware of it. The law says that wait staff get to control tips received, and service charges should be distributed to employees actually engaged in service. The sense I got from speaking with many waiters is that this law has been often ignored. There is much excitement about making sure that owners and managers are not taking part of the tips intended for servers.

*Q. What keeps you inspired?*

A. I love working with people. I get excited about trying to help people. That's why I went into law. I relish a good challenge. I also love that my career brings together many different kinds of work. I have to do legal analysis, writing, speaking and interviewing of others. I see myself as entrepreneurial and creative. I have to create a suit with specific theories and figure out how to get a certain result and remedy. I love the strategy and putting the pieces together to get the results.

*Q. What is the single biggest problem facing plaintiffs in employment law?*

A. I think the trend of employment law has been moving against plaintiffs for many years. The biggest challenge is having to deal with new procedural and substantive obstacles constantly in the way of pursing an employment suit. Every time a new decision like *Sutton* comes down, it makes it more difficult and fewer plaintiffs get to be heard.

*Q. Is there a danger in allowing people with correctable disabilities to sue, and does this open a can of worms?*

A. Not at all. It is the people who are able to overcome their disabilities that the disability discrimination law was designed to help. People who have a way of performing their job despite their disabilities are the very people who should be allowed to work. People who can't overcome their disabilities won't be able to do the job. When the U.S. Supreme Court closed off suit for people who can overcome disability through correctable devices, it really closed off the law to most of the people it was designed to redress.

And there is no merit to the floodgates argument. In Massachusetts, those with correctable disabilities have been protected and there has hardly been a wave of litigation. Almost all federal circuits had gone the other way before the *Sutton* opinion. *Dahill* just took us back to where we were in Massachusetts.

*Q. What do you say to those who contend that policemen or persons in safety-sensitive professions should seek alternative employment if they have disabilities?*

A. In order to win a disability discrimination claim, a plaintiff has to show that he or she is capable of performing the essential functions of job. That includes safety concerns. The only people who can win are those who can show no undue risk to themselves or others. They should not be in position otherwise, and will not win a discrimination lawsuit.

*Q. The MCAD is clogged with cases. Are too many people suing for bias?*

A. The backlog is because we are understaffed and underfunded. The MCAD issues probable cause findings in a small number of cases, and the most resources are used in cases that get past the probable cause stage and have some merit. Non-meritorious claims do not cause the backlog. Also, many people go to the MCAD without lawyers. It is a relatively user-friendly forum, but that can slow down the process a bit because lawyers know how to streamline cases. The MCAD could greatly benefit from having more resources. They could also help people without lawyers more efficiently.

*Q. What case this year was your greatest challenge and why?*

A. The *Sprague* case was a huge challenge. It involved an industry that was unfamiliar to my co-counsel and me. There was an incredibly vast amount of detail and information regarding airline mechanics and maintenance, and what is required to fix or service an airplane. Preliminary injunction work is also a big challenge. You basically have to compress an entire piece of litigation into days, and put aside all your other work. But it is very satisfying to get a resolution in days and not a matter of years.

*Questions or comments may be directed to the writer at [jcunninghgam@lawyersweekly.com](mailto:jcunninghgam@lawyersweekly.com).*

---

## HARVEY A. SCHWARTZ, Boston employment and civil rights lawyer, on Shannon

## Liss-Riordan ...

Veteran lawyer Harvey A. Schwartz is accustomed to the spotlight, but even he says Shannon E. Liss-Riordan "has been in the middle of an unusual number of high-profile cases this year."

Her record has been all the more impressive, Schwartz suggests, because her achievements came during a year in which she gave birth.

"Shannon's reputation inflated during the course of the year along with her belly, and she developed enormous jury sympathy as a result," he quips.

Schwartz says she is a natural in front of juries. "Her sincerity comes through, and she has a knack for communicating in the courtroom," he says.

He also notes that she is very thorough in preparing her case files.

"Her firm shares office space with us, and her files are expanding throughout the joint space of both firms," he says. "This office generally has a laid-back working atmosphere, but she is the exception - she has been known to burn the late-night oil, even on weekends."

According to Schwartz, Liss-Riordan "is a true believer in people's rights and she is in the profession for the right reasons."

Part of her success, he says, comes from not being afraid to take risks, noting that she has won some difficult cases.

"We both get interesting phone calls from people who feel their rights were violated and some just have oddball cases. I've taken my share of those, but when she told me she was representing a policeman who was terminated because he owned adult video stores, I told her even I would not take that."

Liss-Riordan won that case and several other tough battles this year, and Schwartz predicts more people will know her name in the future.

- John O. Cunningham



User Agreement For Subscriber-Only Online Benefits   |   Help   |   Our Privacy Policy
Send any questions or comments to comments@lawyersweekly.com

**Subscriber Services**: 1-800-451-9998    **Technical Support**: 1-800-444-5297 ext. 8156
© Copyright 2007 Lawyers Weekly, Inc. All Rights Reserved

DOLAN MEDIA COMPANY

Lawyers Weekly does not use spyware; however, we link to a number of other sites and do not take responsibility for any spyware they may use.

This site is best viewed with Internet Explorer 6 (click here to download) or Netscape 7 or higher (click here to download)

66.30.119.107/5.93
0 milliseconds