**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------x

IN RE STARBUCKS EMPLOYEE
GRATUITY LITIGATION

MASTER FILE
08 Civ. 3318 (LTS)

This Document Relates to:
All Actions


--------------------------------------------------------x


## DEFENDANT STARBUCKS CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT


Samidh Guha
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1015
Facsimile: (212) 872-1002

Gregory W. Knopp
AKIN GUMP STRAUSS HAUER & FELD LLP
2029 Century Park East
Suite 2400
Los Angeles, CA 90067
Telephone: (310) 552-6436
Facsimile: (310) 229-1001

Daniel L. Nash
Nathan J. Oleson
Jessica W. Paniccia
AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Avenue, N.W.
Washington, DC 20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288

ATTORNEYS FOR DEFENDANT
STARBUCKS CORPORATION

DATED: June 1, 2009

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... ii

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND ..................................................................................................4

        A.      Plaintiffs' Stores and Job Duties  ...........................................................4

        B.      Distribution of Tips in Plaintiffs' Stores ................................................6

III.    ARGUMENT ........................................................................................................7

        A.      Plaintiffs' Claims That Shift Supervisors May Not Receive
                Tips Fail As A Matter Of Law...................................................................7

                1.      Plaintiffs' Section 196-d Claim Fails as a Matter of Law................8

                        a)      Shift Supervisors and Baristas Are "Waiters," "Busboys,"
                                or "Similar Employees" Who May Share Gratuities ......................9

                        b)      Shift Supervisors Are Not "Employers" or "Agents"  ..................11

                        c)      Plaintiffs Were Not Deprived of Any Tips They
                                Would Have Otherwise Received ...................................................15

                2.      Plaintiffs' Claim Under Section 193 Fails as a Matter of Law ......17

                3.      Plaintiffs' Claim Under Section 198-b Fails as a Matter of Law....18

        B.      The Weekly Distribution of Tips Does Not Violate New York Law......19

        C.      Plaintiff Ortiz's "Training" Claim Fails As A Matter of Law.................20

IV.     CONCLUSION ..................................................................................................22

i

# TABLE OF AUTHORITIES

**CASES**

**FEDERAL CASES**

*Ayres v. 127 Rest. Corp.,*
  12 F. Supp. 2d  305 (S.D.N.Y. 1998) ................................................................. *passim*

*Anderson v. Liberty Lobby, Inc.*
  477 U.S. 242 (1986)........................................................................................7

*Anderson v. Mt. Clemens Pottery Co.,*
  328 U.S. 680 (1946).......................................................................................21

*Burke v. Jacoby,*
  981 F.2d 1372 (2d Cir. 1992) ..................................................................7, 17, 21

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986).........................................................................................7

*Chan v. 88 Palace,*
  2007 WL 313483 (S.D.N.Y. Feb. 1, 2007) ........................................................13, 14

*Chung v. New Silver Palace Rest., Inc.,*
  246 F. Supp. 2d  220 (S.D.N.Y. 2002) ..............................................................13, 14

*Chung v. New Silver Palace Rest., Inc.,*
  272 F.Supp. 2d  314 (S.D.N.Y. 2003) ....................................................................12

*Dole v. Continental Cuisine, Inc.,*
  751  F.Supp. 799 (E.D. Ark. 1990) ........................................................................13

*Frankle v. Bally, Inc.,*
  987 F.2d  86 (2d Cir. 1993) ..................................................................................12

*Herman v. RSR Sec. Servs., Ltd.,*
  172 F.3d 132 (2d Cir. 1999) ..................................................................................12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
  475 U.S. 574 (1986)............................................................................................7

*Morgan v. SpeakEasy, LLC,*
  2007 WL 2757170 (N.D. Ill. Sept. 20, 2007) ......................................................12, 13

*NLRB v. Big Three Indus. Gas & Equip. Co.,*
  579 F.2d 304 (5th Cir. 1978)..................................................................................13

*Ngan Gung Rest., Inc. v. New York (In re Ngan Rest., Inc.),*
    183 B.R 689 (S.D.N.Y. June 29, 1995) .................................................................. 16


## STATE CASES

*People v. Vetri,*
    309 N.Y. 401 (N.Y. 1955) ........................................................................... 17, 18

*Samiento v. World Yacht Inc.,*
    883 N.E.2d 990 (N.Y. 2008) ............................................................................ *passim*

*Truelove v. Northeast Capital & Advisory, Inc.,*
    738 N.E. 2d 770 (N.Y. 2000) ..................................................................... 17, 18

*Tandoor Rest. Inc. v. Comm'r of Labor,*
    1988 WL 383581 (N.Y. Sup.Ct. Aug. 2, 1988) ................................................ 21


## RULES, REGULATIONS AND STATUTES

    FED. R. CIV. P. 56(C) ..................................................................................... 7

    29 U.S.C. § 152(11) ..................................................................................... 14

    29 U.S.C. § 203(d) ...................................................................................... 12

    N.Y. Lab. L. § 2(8-a) .............................................................................. 12, 15

    N.Y. Lab. L. § 190 ..................................................................................... 17

    N.Y. Lab. L. § 190(1) .................................................................................. 18

    N.Y. Lab. L. § 191 ..................................................................................... 20

    N.Y. Lab. L. § 193 ................................................................................. *passim*

    N.Y. Lab. L. § 193-b .................................................................................. 18

    N.Y. Lab. L. § 196-d ............................................................................. *passim*

    N.Y. Lab. L. § 198-a .................................................................................. 15

    N.Y. Lab. L. § 198-b ............................................................................. *passim*

    N.Y. Stat. § 94 .......................................................................................... 9

N.Y. Stat. § 141 ............................................................................................15

N.Y. Comp. Codes R. & Regs. tit. 12 §§ 137-1.2, 1.4.............................................11

N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.21 ..........................................18, 19

## OTHER AUTHORITIES

*Starbucks Corp. d/b/a Starbucks Coffee Co. Store 7356 and Industrial Workers of
the World IU/660,* Case No. 2-RC-22852 (June 30, 2004) ......................................14

NYLS' Governor's Bill Jacket, 1968 ch. 1007 ..................................................... *passim*

NYLS' Governor's Bill Jacket, 1968 ch. 209 ..........................................................12

NYLS' Governor's Bill Jacket, 1934 ch. 171 ..........................................................19

*Merriam-Webster Dictionary* (2009) ...............................................................9, 10

## I. **INTRODUCTION**

Customers in Starbucks stores are not served by a single employee, but rather by a team of hourly partners who work side-by-side taking orders, making drinks, operating the cash register, and completing and delivering the customer's order. This team of Starbucks partners includes "baristas" and "shift supervisors," both of whom spend the vast majority of their time performing the same customer service tasks. These two hourly-paid customer service positions share in the gratuities left in tip containers at Starbucks stores. The store managers and assistant store managers who oversee the store's operations do not.

Plaintiffs Jose Ortiz and Jeana Barenboim are former Starbucks baristas who shared gratuities with their fellow baristas and shift supervisors who helped generate the tips left by customers. In this lawsuit, they claim baristas should get all of the tips, to the exclusion of shift supervisors. Plaintiffs' claim is based on their contention that shift supervisors may not share tips with baristas under New York Labor Law ("NYLL") Section 196-d, which was designed to "end the 'unfair and deceptive practice' of an employer retaining money paid by a patron 'under the impression that he is giving it to the employee, not the employer.'" *Samiento v. World Yacht Inc.,* 883 N.E.2d 990, 994 n.4 (N.Y. 2008). The statute does not prohibit the tip-sharing at issue here as a matter of law, and therefore summary judgment is appropriate on plaintiffs' Section 196-d claim.

*First*, Section 196-d specifically permits the sharing of tips between "waiter[s]" and "busboy[s] or similar employee[s]." The undisputed evidence shows that both shift supervisors and baristas are direct customer service employees whose primary responsibility is to serve customers and perform the other work, such as cleaning the store, that enhances the customer

1

experience.  The statute recognizes that these types of employees may share in the tips they help generate.

*Second*, the undisputed evidence establishes that no "employer" or "agent of . . . [the] corporation" has deprived plaintiffs of tips under Section 196-d.  Starbucks does not receive any of the tip revenue left in its tip containers—the company's policies ensure that 100 percent of these gratuities are divided among the baristas and shift supervisors who earn them.  Plaintiffs nonetheless claim that the statute has been violated because shift supervisors should be deemed "employers" or "agents," and thus subject to the same liability for NYLL violations as Starbucks. Plaintiffs' theory fails as a matter of law.  An hourly employee with minimal supervisory responsibility and no authority to perform management tasks such as hiring, firing, scheduling, evaluating, or imposing formal discipline is not an "employer" or "agent of the corporation" under the NYLL.  The undisputed facts demonstrate that shift supervisors do not possess this type of managerial authority, and thus are not "employers" or "agents" under Section 196-d.

*Third*, plaintiffs cannot establish, as required by Section 196-d, that any tips intended for them were diverted to shift supervisors.  Plaintiffs are not suing to recover tips left specifically and exclusively for them that were later placed in a general pool and redistributed to others; they are claiming an exclusive right to gratuities left in a general tip jar by customers who were served by several different Starbucks partners, including shift supervisors.  Plaintiffs' theory assumes, without any factual support, that all of these tips were intended for them.  But to the extent customers left these tips in exchange for a partner's customer service work, the undisputed facts establish that a portion of these tips were left for shift supervisors.  Plaintiffs cannot prove that the amount of tips they received under Starbucks tip policy was less than the amount of tips that were left for them, and thus their claim under Section 196-d fails.

Plaintiffs also allege that Starbucks policy violates Sections 193 and 198-b of the NYLL, but nothing in these statutory provisions makes it unlawful for shift supervisors to receive tips. The former provision prevents "deductions from wages," but no "deduction" has occurred here, and no "wage" is implicated by the tip policy. The latter provision prohibits employers from demanding that employees "kick back" an "agreed rate of wages," but no "agreed rate of wages" is implicated by the Starbucks tip policy, and Starbucks has not asked plaintiffs to return their tips to the company. Plaintiffs' claims under Sections 193 and 198-b are therefore baseless.

Finally, plaintiffs assert two other meritless claims that are unrelated to the sharing of tips with shift supervisors. In the first, plaintiffs allege that the distribution of tips on a weekly basis "denies baristas the benefit of this money during the period in which Starbucks retains it." But nothing in New York law states when tips must be distributed. And even if the wage-payment requirements in the NYLL applied to tips, the Starbucks tip distribution policy is consistent with the most stringent provisions of the statute, which require only that wages be paid on a weekly basis. Summary judgment accordingly is appropriate on plaintiffs' claims that tips were not timely distributed.

Plaintiffs also claim that Starbucks violated the NYLL by denying plaintiffs gratuities during training. But the undisputed evidence shows that Starbucks policy requires that baristas receive tips during training when they perform customer service work. Under the policy, baristas are excluded from tips during their training period only for time spent on issues unrelated to normal customer service duties, such as when they are reading manuals, attending classes,

working on the computer, or learning to make drinks.  Plaintiff Ortiz admits that he received tips consistent with this policy, and thus summary judgment is appropriate on his training claim.[1]

## II.   BACKGROUND

### A.   Plaintiffs' Stores and Job Duties

Plaintiffs worked briefly as baristas for Starbucks in two New York City stores. Barenboim worked in a Queens store for less than three months in 2006.  (Defendant Starbucks Corporation's Statement of Undisputed Material Facts in Support of Motion for Summary Judgment Pursuant to Local Civil Rule 56.1 ("UF") ¶ 1.)  Ortiz worked in a Manhattan store for less than two months in 2008.  (*Id.* ¶ 2)

Plaintiffs both reported to a store manager, who was a salaried, full-time partner.  (*Id.* ¶ 5.)  The store managers supervised all the partners in the store, including the baristas and the shift supervisors.  (*Id.* ¶ 5.)  The store managers were responsible for interviewing, hiring, scheduling, evaluating, promoting, disciplining, and firing the store partners.[2]  (*Id.* ¶ 6.)

Plaintiffs and the other baristas with whom they worked were part-time, hourly employees.  (*Id.* ¶ 7.)  Plaintiffs' duties as baristas were primarily focused on customer service and included taking orders from customers, operating the cash registers, and making and serving drinks.  (*Id.* ¶ 7.)  Plaintiffs also cleaned, washed dishes, bussed tables, and stocked product.  (*Id.* ¶ 7.)  The baristas in plaintiffs' stores also participated in training new partners and providing coaching on how to perform tasks.  (*Id.* ¶ 7.)

---

[1] Factual disputes exist as to whether Barenboim received tips consistent with Starbucks policy during her training period.  Starbucks therefore does not seek summary judgment as to plaintiff Barenboim's training claim.

[2] Assistant store managers are also involved in these tasks.  (*Id.* ¶ 6.)

Like the baristas, the shift supervisors with whom plaintiffs worked were hourly, part-time partners. (*Id.* ¶ 8.) The shift supervisors did not interview, hire, evaluate, transfer, promote, issue formal discipline, fire, or determine pay for baristas or any other Starbucks partners. (*Id.* ¶ 11.) Nor did they prepare the work schedule, approve overtime work, or process payroll. (*Id.* ¶ 11.)

The shift supervisors worked together with the baristas to provide customer service. (*Id.* ¶ 8.) They performed all the same tasks as baristas, including taking orders, working the cash registers, making drinks, and cleaning. (*Id.* ¶ 8.) In Ortiz's store, shift supervisors spent "most of the time" performing these tasks. (*Id.* ¶ 9.) According to Barenboim, during the limited time she was in her store, the amount of time shift supervisors spent on these tasks varied based on the circumstances, but on some shifts, shift supervisors performed solely barista tasks. (*Id.* ¶ 9.) Indeed, sometimes two shift supervisors worked at the same time, in which case one functioned solely as a barista. (*Id.* ¶ 9.)

Beyond their barista duties, shift supervisors were assigned a few additional tasks. (*Id.* ¶ 10.) They opened and closed the store, which involved unlocking/locking doors and deactivating/activating alarms. (*Id.* ¶ 10.) They also handled cash, which involved opening and depositing money into the safe and counting the tills. (*Id.* ¶ 10.) Shift supervisors also "deployed" partners, ensuring that the team members, including themselves, were assigned to the various work stations, such as the cash registers and the bar (*Id.* ¶ 10.) Shift supervisors could also remind other partners of when to take their scheduled breaks and sometimes addressed customer complaints. (*Id.* ¶ 10.) According to both Barenboim and Ortiz, these duties were the only "additional responsibilities" that shift supervisors had. (*Id.* ¶ 10.) And although Barenboim did not consider shift supervisors to be performing barista work while performing duties such as

"maintaining the floor, assigning baristas to positions of bar . . . telling them when to go on break . . . [and] making sure they clocked out correctly, clocked in correctly," she admits that shift supervisors could continue to perform barista work while performing these additional tasks. (*Id.* ¶ 10.)

### B.    Distribution of Tips in Plaintiffs' Stores

Plaintiffs' stores included containers where customers could place tips. (*Id.* ¶ 12.) In order to ensure that tips are distributed fairly among the hourly partners who provide the customer service, Starbucks maintains a policy that specifies that tips are to be distributed among baristas and shift supervisors according to hours worked. (*Id.* ¶ 12.) At the end of each week, the shift supervisors and baristas determine an hourly tip rate by dividing the total amount collected by the total number of qualifying hours worked that week by baristas and shift supervisors. (*Id.* ¶ 13.) Each barista and shift supervisor receives a portion of the tips equal to the store's hourly tip rate for the week multiplied by the number of hours he or she worked. (*Id.* ¶ 13.) Tips were calculated and distributed on a weekly basis in accordance with this policy in Barenboim and Ortiz's stores. (*Id.* ¶ 13.)

Certain hours that do not involve customer service are excluded from the tip calculation. For example, when new baristas undergo training – reading training materials and policy manuals, completing written and computer-based training modules, attending an off-site workshop, and working with more experienced partners ("learning coaches") to practice tasks – they record their time as "training," and they do not receive tips for that time. (*Id.* ¶ 14.) By contrast, when baristas work "practice shifts" during the training period, that time is recorded as "regular," and these hours count towards the calculation of tips. (*Id.* ¶ 14.)

Plaintiffs admit that they have no evidence regarding whether any particular tip in the tip container was left specifically for them. (*Id.* ¶ 17.) Plaintiffs surmise that tips in the container are left for customer service work such as serving customers, ringing the register, taking their order, and cleaning the store. (*Id.* ¶ 17.) However, as plaintiff Ortiz admitted, shift supervisors spend "most of their time" performing these same tasks. (*Id.* ¶ 9.) Moreover, it is clear that many tips actually are intended specifically for shift supervisors. (*Id.* ¶ 17.)

## III.   <u>ARGUMENT</u>

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).   Where a non-moving party bears the burden of proof as to the claims at issue, summary judgment is warranted if the party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "If the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of the claim, any factual disputes with respect to other elements become immaterial and cannot defeat a motion for summary judgment." *Burke v. Jacoby,* 981 F.2d 1372, 1379 (2d Cir. 1992).  Moreover, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  Summary judgment cannot be defeated by "simply show[ing] that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**A.    Plaintiffs' Claims That Shift Supervisors May Not Receive Tips Fail as a Matter of Law.**

Plaintiffs contend that Starbucks violated Sections 196-d, 193, and 198-b of the New York Labor Law by permitting shift supervisors to receive tips.  As shown below, these claims fail as a matter of law.

### 1.    Plaintiffs' Section 196-d Claim Fails as a Matter of Law.

Section 196-d prohibits an "employer or his agent" from "demand[ing] or accept[ing], directly or indirectly, any part of the gratuities, received by an employee, or retain[ing] any part of a gratuity or of any charge purported to be a gratuity for an employee."  N.Y. Lab. Law § 196-d (McKinney 2008).  Section 196-d was enacted in 1968 to "end the 'unfair and deceptive practice' of an employer retaining money paid by a patron 'under the impression that he is giving it to the employee, not the employer.'"  *Samiento,* 883 N.E.2d at 994 n.4.  In particular, the Legislature was concerned about employer practices of demanding gratuities as "reimburs[ment] by the employee for any portion of [the employee's] minimum wage payments."  NYLS' Governor's Bill Jacket, 1968 ch. 1007, at 6 (attached hereto as Attachment A-1) (arguments in support of bill).

Section 196-d does *not* prohibit customer service employees from dividing tips they collectively earned.  In fact, the statute expressly provides that "[n]othing in this subdivision shall be construed as affecting . . .  practices in connection with banquets and other special functions where a fixed percentage of the patron's bill is added for gratuities which are distributed to employees, nor to the sharing of tips by a waiter with a busboy or similar employee."  N.Y. Lab. Law § 196-d (McKinney 2008); *see also Ayres v. 127 Restaurant Corp.,* 12 F.Supp. 2d 305, 307 (S.D.N.Y. 1998) ("tip-pooling is not *per se* illegal" under Section 196-d); Attach. A-1, at 4; *Samiento,* 883 N.E.2d at 995 (banquet exception created because "[i]t was

8

feared that without this language the practice of pooling for later distribution of tips to all involved employees would be prohibited because upon receiving payment, a person could believe they were entitled to retain the entire amount and not have to share with the rest of the personnel who worked the banquet").

Plaintiffs contend that the shift supervisors with whom they worked were "agents" of Starbucks and thus precluded from receiving any portion of the tips, regardless of who actually earned them. (*See* Am. Compl. ¶¶ 18-19, 24; *see also* Pls.' Mem. in Supp. of Mot. for Class Cert. at 8.) This claim fails for three reasons: (1) baristas and shift supervisors both primarily serve customers, and thus are "waiters" or "busboys or similar employees" who may share tips; (2) shift supervisors are hourly employees with no managerial authority, and thus are not "employers" or "agents of the corporation"; and (3) plaintiffs cannot show that shift supervisors took any of the gratuities that the baristas earned.

> ### a.   Shift Supervisors and Baristas Are "Waiters," "Busboys," or "Similar Employees" Who May Share Gratuities.

Section 196-d's prohibition against employers and agents "demand[ing]" or "accept[ing]" employee tips does not affect, *inter alia,* the "sharing of tips by a waiter with a busboy or similar employee." N.Y. Lab. Law § 196-d (McKinney 2008). Therefore, if baristas and shift supervisors are "waiters, busboys, or similar employees," the prohibitions of Section 196-d do not apply.

The statute does not define the terms "waiter," "busboy," or "similar employee," and thus the meaning of these terms must be derived from their "natural and most obvious sense . . . in accordance with [their] ordinary and accepted meaning, unless the Legislature by definition or from the rest of the context of the statute provides a special meaning." N.Y. Stat. § 94 (McKinney 2008). A "waiter" is "one that waits on another," *i.e.,* one who "attend[s] as a

servant" or "suppl[ies] the wants of [a person]." *Merriam-Webster Dictionary* (2009), http://www.merriam-webster.com (definitions of "waiter" and "waits upon"). A "busboy" is "a waiter's assistant; one who clears away dirty dishes and resets tables in a restaurant." *Id.* (definition of "busboy"). "Similar" employees are those whose work "ha[ve] characteristics in common" and are "alike in substance or essentials." *Id.* (definition of "similar").

These terms directly encompass shift supervisors and baristas. Shift supervisors spend most of their time performing the same customer service work as baristas. (*See* UF ¶ 9.) Like baristas, shift supervisors' primary responsibility is to take orders, run the cash register, work the espresso bar, make drinks, prepare food orders, clean the café, and perform lobby sweeps. (*Id.* ¶ 8.) Thus, shift supervisors and baristas are "waiters," "busboys," or "similar employees" that may share tips under Section 196-d.

This conclusion is entirely consistent with the Legislature's intent. The primary concern of the Legislature in creating Section 196-d was to prevent employers from "confiscating" their employees' tips as a method to recoup the employer's minimum wage payment, thereby eroding minimum wage standards. Attach. A-1, at 4-6 (argument in support of the bill is that "[t]he appropriation of tips by an employer equal to the amount of the minimum wage is destructive to minimum wage standards"; "the employer violates the spirit of the minimum wage law when he is reimbursed by the employee for any portion of his minimum wage payments."). Various commentators complained that the law as originally drawn was overly broad in accomplishing this purpose, because it would have prohibited the common practice of tip-pooling between waiters and similar types of employees. *See* Attach. A-1, at 8-9, 11-13. In response, the Legislature made it clear that "nothing in [Section 196-d] shall be construed as affecting" such practices. N.Y. Lab. Law § 196-d (McKinney 2008).

The tip-sharing arrangement at issue here does not implicate the perceived evils that the statute was designed to address.  Baristas and shift supervisors are both paid an amount well in excess of the statutory minimum,[3] and Starbucks is not "appropriating" the tip money left in its stores as a means to recoup these hourly wages because all of the tips are divided among only the hourly baristas and shift supervisors.  (*See* UF ¶ 12.)  Rather, it falls squarely within the type of tip distribution systems that the Legislature sought to preserve—the sharing of tips among restaurant and food service workers who provide direct customer service by serving, interacting with, and cleaning up after customers.  *See* N.Y. Lab. Law § 196-d (McKinney 2008); *see also,* Attach. A-1, at 4-5, 8-9, 11-13; *cf. Samiento,* 883 N.E.2d at 995 (banquet exception created because "[i]t was feared that without this language the practice of pooling for later distribution of tips to all involved employees would be prohibited because upon receiving payment, a person could believe they were entitled to retain the entire amount and not have to share with the rest of the personnel who worked the banquet").

### b.      Shift Supervisors Are Not "Employers" or Agents."

Plaintiffs' claim also fails as a matter of law because shift supervisors are not "employers" or "agents of the corporation" that are prohibited from "demand[ing]" or "accept[ing]" gratuities.

Shift supervisors are clearly not "employers" under Section 196-d.  In order to determine whether an individual is an "employer" under New York law, courts look to the "economic realities" of the relationship by reviewing "whether the alleged employer (1) ha[s] the power to

_____

[3] Plaintiffs Barenboim and Ortiz were both paid a starting wage of $8.75 per hour (*see* UF at ¶ 3) over twenty percent higher than New York's minimum wage during the applicable period.  *See* N.Y. Comp. Codes R. & Regs. tit. 12 §§ 137-1.2, 1.4 (2009) (minimum wage of

hire or fire the employees, (2) supervise[s] [or] control[s] employee work schedules or conditions of employment, (3) determine[s] the rate . . . of payment, and (4) maintain[s] employment records." *See, e.g., Herman v. RSR Sec. Servs., Ltd.,* 172 F.3d 132, 139 (2d Cir. 1999); *Chung v. New Silver Palace Rest.,Inc.,* 272 F.Supp. 314, 318 n. 6 (S.D.N.Y. 2003). It is undisputed that shift supervisors have no authority in any of these areas. (*See* UF ¶ 11.)

Nor are shift supervisors "agents of the corporation" under Section 196-d. An agent of the corporation "includes, but is not limited to, a manager, superintendent, foreman, supervisor, or any other person employed acting in such a capacity." N.Y. Lab. Law § 2 (8-a) (McKinney 2008). The New York Labor Law was amended to include this definition in 1968 in order to extend criminal liability for Labor Law violations to "active managers of a business enterprise [who] have often evaded prosecution . . . by hiding behind a corporate shell invariably with insufficient assets." NYLS' Governor's Bill Jacket, 1968 ch. 209, at 7 (attached hereto as Attachment A-2) (comments of the Association of the Bar of the City of New York approving bill). Indeed, when reviewing whether an individual employee is an "employer" or "agent of the corporation" under Section 196-d, courts within this district have treated the "employer" and "agent of the corporation" analysis as functionally the same.[4] *See Ayres,* 12 F. Supp. 2d at 308 (analyzing "agent" and "employer" issue together).

---

$6.75 per hour between Jan. 1, 2006-Dec. 31, 2006; minimum wage of $7.15 per hour after Jan. 1, 2007).

[4] The FLSA's definition of "employer" includes "any person acting directly or indirectly in the interests of the employer," and thus is broad enough to include any individuals who may be acting as agents of the employer. 29 U.S.C. § 203(d); *Frankle v. Bally, Inc.,* 987 F.2d 86 (2d Cir. 1993) (FLSA definition of employer is broader than traditional common-law agency test). Under this expansive definition, courts have uniformly held that supervisory employees with no authority to hire, fire, or schedule employees are not "employers" and may participate in tip pools, even if they have some floor supervisory responsibilities. *See, e.g., Morgan v. SpeakEasy, LLC,* No. 05-C-5795, 2007 WL 2757170, at *17-19 (N.D. Ill. Sept. 20, 2007) (attached hereto as

Applying this standard, courts have consistently held that customer service employees with only limited supervisory responsibilities do not qualify as "agents." For example, in *Ayres,* the court stated that an employee that is "merely [a] senior floor captain with more limited supervisory responsibilities" is *not* an "agent of the corporation" within the meaning of Section 196-d. *Ayres,* 12 F.Supp. 2d at 308 (citing *NLRB v. Big Three Indus. Gas & Equip. Co.,* 579 F.2d 304, 309-10 (5th Cir. 1978) (supervisors who had authority to "interview job applicants, grant time off, allocate overtime work, transfer employees and recommend wage increases" were employer's agents)). By contrast, the court in *Ayres* held that employees are "employers or agents of the corporation" when they make hiring decisions, have "full authority" to terminate or suspend employees, control the store's budget, and make a guaranteed salary each week. *Ayres,* 12 F. Supp. 2d at 308.

Similarly, in *Chan v. 88 Palace,* this Court rejected the plaintiffs' Section 196-d claim as to one employee that "generally acted in effect as a server," regardless of the fact that he "had some supervisory responsibilities, and exercised somewhat greater autonomy than captains or waiters, and . . . had a modest financial interest in the restaurant . . . ." No. 03 Civ. 6048 (GEL), 2007 WL 313483, at *18, 20-21 (S.D.N.Y. Feb. 1, 2007) (attached hereto as Attachment B-2). The Court also rejected the plaintiffs' claims as to another employee who "acted as ordinary serving personnel," even though he purchased supplies and processed hiring-related paperwork,

---

Attachment B-1) ("senior servers" not "employers" under FLSA for purposes of tip-pooling provisions where they exercised "some control over employees, such as sending them home, requesting additional staff, and supervising their work," but had no authority to hire, fire, or schedule employees); *Dole v. Continental Cuisine, Inc.,* 751 F. Supp. 799, 807 (E.D. Ark. 1990) (maitre d' with some floor supervisory responsibilities not "employer" because he did not "hire and fire employees, control the methods of operation . . ., set hourly wages, or control the payroll."); *compare, e.g., Chung,* 246 F.Supp. 2d at 224-25, 227-28 (part-owners of restaurant

"exercised some personal authority," and "act[ed] as a captain." *Id.* at *3, 18-19. The Court

stated that Section 196-d's prohibitions on tip-sharing did not apply to these employees because

they did not "wield[] broad managerial authority." *Id.* at *21.

     As shown above, the undisputed evidence shows that Starbucks shift supervisors do not

possess the type of authority that would render them "agents of the corporation" and subject to

criminal liability for violations of Section 196-d. Shift supervisors are hourly, part-time

employees who cannot interview, hire, fire, schedule, evaluate, or enforce discipline against

baristas. (UF ¶¶ 8, 11). They are "merely senior floor captain[s] with more limited supervisory

responsibilities," *Ayres*, 12 F.Supp. 2d at 308, and not corporate agents who "wield[] broad

managerial authority." *Chan*, 2007 U.S. Dist. LEXIS 7770, at * 58.

     Indeed, the National Labor Relations Board's Regional Director for Region 2 has found

that shift supervisors in New York do not possess sufficient authority to render them

"supervisors" under the National Labor Relations Act. That statute similarly defines the term to

include:

> [A]ny individual having authority, in the interest of the employer, to hire, transfer,
> suspend, lay off, recall, promote, discharge, assign, reward, or discipline other
> employees, or responsibility to direct them, or to adjust their grievances, or effectively to
> recommend such action, if in connection with the foregoing the exercise of such authority
> is not of a merely routine or clerical nature, but requires the use of independent judgment.

29 U.S.C. § 152(11). The Regional Director held that Starbucks "shift supervisors perform the

same tasks as baristas, but with additional responsibilities . . . [T]hese extra responsibilities, on

balance, do not confer supervisory status on the shift supervisors." *See Starbucks Corp. d/b/a*

---

with authority to hire and fire, set schedules, and who sat on board of directors were "employers"
prohibited from sharing in tip pool under FLSA).

*Starbucks Coffee Co. Store 7356 and Industrial Workers of the World IU/660*, Case No. 2-RC-22852, Decision at 21-22 (June 30, 2004) (attached hereto as Attachment C).

No court has found hourly employees with minimal floor supervisory responsibilities and no authority to hire, fire, schedule, evaluate, or formally discipline their subordinates to be "employers" or "agents" for purposes of Section 196-d.  To do so would do violence to the statutory intent of both Section 196-d and the definition of "agent of the corporation" in Section 2(8-a).  Neither statutory provision was intended as a hammer to disenfranchise part-time customer service workers with minor supervisory responsibilities from tips that they helped earn.[5]  *See* Attach. A-1, at 4-6.  To the contrary, the legislative purpose of the section was to ensure that tips would reach their intended recipients, rather than the employer.  *Samiento,* 883 N.E.2d at 994 n.4.  This is precisely what occurs when tips in the communal Starbucks tip container are distributed to the hourly shift supervisors and baristas.

The undisputed facts show that shift supervisors are, at most, "mere[] senior floor captain with more limited supervisory responsibilities."  *Ayres*, 12 F.Supp. 2d at 308.  Thus, they are not "employers" or "agents of the corporation," and are not prohibited from receiving the tips they earn.

---

[5] Holding that shift supervisors are "agents of the corporation" would lead to the anomalous result that hourly workers with no authority to control their subordinates or the company's tip policies would be criminally liable for these policies.  *See* New York Labor Law § 198-a (imposing criminal penalties on, *inter alia* , agent of the corporation for violations of Labor Law).  Such absurd constructions should be avoided.  N.Y. Stat. § 141 (McKinney 2008) ("[i]n construing a statute which is ambiguous the construction to be adopted is the one which will not cause objectionable results").

### c.  Plaintiffs Were Not Deprived of Any Tips They Would Have Otherwise Received.

Section 196-d, by its terms, only prohibits the diversion of tips "received" by or left for an employee. N.Y. Lab. Law § 196-d (McKinney 2008). Thus, to prove their claim, Plaintiffs must do more than show that shift supervisors are "agents"; they also must prove that shift supervisors took tips that *baristas* "received." *See id.*; *Ngan Gung Rest., Inc. v. New York* (*In re Ngan Gung Rest., Inc.*), 183 B.R. 689, 695 (S.D.N.Y. June 29, 1995) (Section 196-d "was enacted to ensure that service employees actually receive the tips *given to them* by the public . . . .") (emphasis added). Plaintiffs cannot prove that they lost tips to shift supervisors that they should have otherwise received.

Plaintiffs are not seeking the return of tips that were given specifically to them. Rather, they claim that tips left in a communal tip container and subsequently distributed to their co-workers belong to them. But plaintiffs admit that they do not know if *any* of the tips left in the tip containers were actually intended for them. (UF ¶ 17.) And plaintiffs have no evidence that the amount of tips they would have received from customers would exceed the amount they actually received pursuant to Starbucks tip policies. (*Id.* 17.)

Put differently, plaintiffs' claim is dependent on the unsupported assumption that tips left in the container were intended exclusively for them. But nothing in the record supports this illogical conclusion. To the contrary, the record shows that shift supervisors spent most of their time performing the same work as baristas that purportedly generated the tips left in the tip containers. (UF ¶¶ 9, 17.) Thus, under plaintiffs' theory of how tips are earned, shift supervisors also were the intended recipients of tips in the tip containers. If this is true, plaintiffs cannot claim the right to the portion of tips left for shift supervisors. Nothing in Section 196-d entitles an employee to claim a tip that was not theirs in the first place.

Plaintiffs thus cannot prove an essential element of their claim—that an employer or agent demanded or accepted tips that they should have received instead. N.Y. Lab. Law § 196-d (McKinney 2008). This failure of proof is fatal to their claim. *Burke*, 981 F.2d at 1379 ("If the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of the claim, any factual disputes with respect to other elements become immaterial and cannot defeat a motion for summary judgment.").

### 2.     Plaintiffs' Claim Under Section 193 Fails as a Matter of Law.

Plaintiffs also allege that the tip distribution violates NYLL Section 193. Section 193 prohibits an employer from making "any deduction from the *wages* of an employee," unless the deductions "are made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency." N.Y. Lab. Law § 193 (McKinney 2008) (emphasis added). Plaintiffs' claim under this statute fails for two reasons.

*First*, as shown above, the tip distribution at plaintiffs' stores was entirely consistent with Section 196-d, which expressly permits tip-sharing under certain circumstances. Accordingly, even if Starbucks policy could be construed as effectuating a "deduction from wages," such deductions were permissible, because they were "made in accordance with the provisions of any law." N.Y. Lab. Law § 193 (McKinney 2008).

*Second*, Section 193 does not apply here because it only concerns "wages," and not gratuities. The Labor Law defines "wages" as "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis." N.Y. Lab. Law § 190 (McKinney 2008). The term does *not* include "all of the benefits, monetary or otherwise, which an employee derives from a master and servant relationship." *Truelove v. Northeast Capital & Advisory, Inc.*, 738 N.E.2d 770, 772 (N.Y. 2000)

(quoting *People v. Vetri*, 309 N.Y. 401, 407 (N.Y. 1955)).  Thus, purely discretionary incentive

payments by an employer are not "wages," because they are not payments by the employer for

labor or services rendered.  *See, e.g., Truelove*, 738 N.E.2d at 771-73.

Gratuities likewise are not "wages."  Gratuities are not previously-determined amounts

paid by an employer for services rendered to the employer, as contemplated by the statutory

definition.  N.Y. Labor Law § 193-b; *Truelove*, 738 N.E.2d at 772 (definition of "wages" adopted

by the legislature was "narrow[]" (citing *Vetri*, 309 N.Y. at 401)).  Rather, they are discretionary

contributions left by customers that are neither fixed nor owed to employees.  *See* N.Y. Comp.

Codes R. & Regs. tit.12, § 142-2.21 (2009) (defining "gratuities" as voluntary contribution by

customer).  The Court should not read gratuities into the definition of "wages" where "the

Legislature elected not to define ["wages"] in Labor Law § 190(1) so expansively as to cover all

forms of employee remuneration."  *Truelove*, 738 N.E.2d at 772.  Because tips are not "wages,"

Section 193 does not apply.

### 3.    Plaintiffs' Claim Under Section 198-b Fails as a Matter of Law.

Plaintiffs' final argument for prohibiting shift supervisors from receiving tips is that

Starbucks policy violates Section 198-b.  That statute provides:

> [w]henever any employee who is engaged to perform labor shall be promised an
> agreed rate of wages for his or her services . . . it shall be unlawful for any person,
> either for that person or any other person, to request, demand, or receive, either
> before or after such employee is engaged, a return, donation or contribution of
> any part or all of said employee's wages, salary, supplements, or other thing of
> value, upon the statement, representation, or understanding that failure to comply
> with such request or demand will prevent such employee from procuring or
> retaining employment.

N.Y. Lab. Law § 198-b (McKinney 2008).  This statute does not apply here.

*First*, plaintiffs were not "promised an agreed rate of wages" that included a set amount

of tips.  As noted above, tips are, by definition, left at the discretion of customers and are

necessarily variable.  N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.21 (2009) (defining "tips" as

"voluntary contributions received by the employee from a guest, patron, customer, or other

person for services rendered . . . .")  Starbucks could not possibly promise any particular "agreed

rate."  And plaintiffs admit that they were not promised tips at "an agreed rate."  (UF ¶ 18.)  In

the absence of any "promised" rate of tips, Section 198-b simply does not apply.

*Second*, Starbucks indisputably did not "request, demand, or receive" a return, donation,

or contribution of anything that plaintiffs had been "promised."  Starbucks took none of the tips

that were left in the tip container.  (UF ¶ 12.)  All of these gratuities were distributed to baristas

and shift supervisors.  And Starbucks never promised plaintiffs that they would receive tips other

than in the manner that they were actually distributed—in proportion to their hours worked.

(*See, e.g.,* UF ¶ 8, 13.)  In short, Starbucks did not promise plaintiffs one form of compensation,

and then force plaintiffs to "kick back" already paid amounts to line its pockets.  Section 198-b

was enacted to address that type of unscrupulous practice, *see* NYLS' Governor's Bill Jacket

1934 ch. 171 at 4-6 (attached hereto as Attachment A-3), and accordingly the statute has no

application here.

**B.    The Weekly Distribution of Tips Does Not Violate New York Law.**

Plaintiffs claim that Starbucks violated New York law by not distributing tips "until the

end of each week."  (Am. Compl. ¶ 21.)  But Starbucks weekly distribution of tips is wholly

consistent with New York law.

The New York Labor Law does not specify when tips must be paid.  It does address the

timing of *wage* payments, but that provision is inapplicable because, as explained above, tips are

not wages.  Even if the timing provisions of the wage payment statute applied to gratuities, the

statute requires only that wages be paid no later than "seven calendar days after the end of the

week in which the wages are earned." N.Y. Lab. Law § 191 (McKinney 2008). Plaintiffs both admittedly received tips within this one-week timeframe. (*See* UF ¶ 13.) Therefore, even if this section of the NYLL applies to gratuities, plaintiffs' claim fails as a matter of law.

Although plaintiffs may claim that tips should be distributed on a shift-by-shift basis, nothing in the statute imposes such a requirement. The statute does not regulate how or when tips may be shared among waiters, busboys, or similar employees. Nor does it impose restrictions on the distribution of tips other than to prohibit "employers" or "agents" from "demand[ing]" or "accept[ing]" tips "received" by an employee. N.Y. Lab. Law § 196-d (McKinney 2008). And as shown above, plaintiffs cannot meet their burden to establish any of these elements here.[6]

### C.      Plaintiff Ortiz's "Training" Claim Fails As A Matter of Law.

Starbucks tip policies permit baristas to receive tips during their training period during "practice" shifts when they perform direct customer service, but do not allow baristas to receive tips for training time where baristas receive classroom instruction, review training materials, complete training modules, or create practice drinks that should not be served to customers. (UF ¶ 14.) Plaintiff Ortiz received tips consistent with this policy, and thus summary judgment is appropriate on his training claim.

During his first week of employment, Ortiz admittedly did not engage in any customer service activities, instead spending all his work time reviewing policy materials, completing training modules, attending training classes, and working with his learning coach. (UF ¶ 15.)

---

[6] Nor is there any principled reason why customer service employees should be permitted to divide their collective tips at the end of a shift but not at the end of a week. In neither instance does the employee serve every tipping customer. Rather, in both instances, the employee receives a portion of the tips left during a defined period based on some measure of relative contribution.

Because he performed absolutely no customer service work during his first week, as a matter of law, he was not entitled to any tips during that period. *See* N.Y. Lab. Law § 196-d (McKinney 2008); *see also, Tandoor Rest. Inc v. Comm'r of Labor,* No. 22, 1988 WL 383581, at *1 (N.Y. Sup.Ct. Aug. 2, 1988) (attached hereto as Attachment B-3) (customer service employees may not be forced to share tips with non-service employees).

Nor does Ortiz have any evidence that he is entitled to additional tips for work performed during his second week, which marked the end of his "training period." Again, Ortiz admits that he spent most of his time during that week performing training activities—reviewing materials in the back room or making practice drinks under the supervision of a learning coach. (UF ¶ 15.) He also admits he spent nearly 40 percent of his second week of employment clocked in as "regular" time, and thus received tips for that time. (*Id.* ¶ 16.)

Ortiz apparently contends that he should have received additional tips for his second week because some of the practice drinks he made during the seven hours of training might have been given to customers. According to Ortiz, he did not immediately start providing customers with his practice drinks, but as time went on some of the less "difficult[]" practice drinks he made could have been provided to customers. But Ortiz admits that he has no estimate of how often this happened. (*Id.* ¶ 16 (admitting that not every drink was served to customers and that there is no way he could determine how many drinks (or how much time he spent making drinks that) were actually served to customers).) The few cases where Ortiz may have presented a practice drink to a customer are therefore speculative and *de minimis*, and do not preclude the entry of summary judgment on his training claim. *See Burke,* 981 F.2d at 1379 (summary judgment appropriate where plaintiff fails to introduce evidence sufficient to establish element of claim); *cf. Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 692 (1946) (where alleged

violation of FLSA requirements involves only a "few . . . minutes" of uncompensated time,

"such trifles may be disregarded" under "*de minimis* doctrine").  Ortiz received all of the tips to

which he was entitled during his training period, and thus his training claim, like his other

claims, fails as a matter of law.

## IV.    <u>CONCLUSION</u>

      For the foregoing reasons, this Court should grant defendant's motion for summary

judgment on plaintiffs' claims under Sections 193, 196-d, and 198-b of the New York Labor Law.


                    Respectfully submitted,

DATED: June 1, 2009         s/ Jessica W. Paniccia
                    Samidh Guha
                    AKIN GUMP STRAUSS HAUER & FELD LLP
                    One Bryant Park
                    New York, NY  10036
                    Telephone: (212) 872-1015
                    Facsimile: (212) 872-1002
                    sguha@akingump.com

                    Gregory W. Knopp
                    AKIN GUMP STRAUSS HAUER & FELD LLP
                    2029 Century Park East
                    Suite 2400
                    Los Angeles, CA 90067
                    Telephone: (310) 552-6436
                    Facsimile: (310) 229-1001
                    gknopp@akingump.com

                    Daniel L. Nash
                    dnash@akingump.com
                    Nathan J. Oleson
                    noleson@akingump.com
                    Jessica W. Paniccia
                    jpaniccia@akingump.com
                    AKIN GUMP STRAUSS HAUER & FELD LLP
                    1333 New Hampshire Avenue, N.W.
                    Washington, DC 20036
                    Telephone: (202) 887-4000

Facsimile: (202) 887-4288

ATTORNEYS FOR DEFENDANT
STARBUCKS CORPORATION

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Defendant Starbucks

Corporation's Memorandum of Law In Support of Motion for Summary Judgment was served

this 1st day of June, 2009 via ECF filing notification on the following:


Charles Edward Joseph
D. Maimon Kirschenbaum
Michael Douglas Palmer
JOSEPH & HERZFELD LLP
757 Third Avenue
25th Floor
New York, NY 10017
Email: maimon@jhllp.com
E-mail: mpalmer@jhllp.com


Shannon Liss-Riordan
LICHTEN & LISS-RIORDAN, P.C.
100 Cambridge Street, 20th Floor
Boston, MA  02114
E-mail: sliss@llrlaw.com



s/ Jessica W. Paniccia
Jessica W. Paniccia