**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------x

IN RE STARBUCKS EMPLOYEE
GRATUITY LITIGATION

MASTER FILE
08 Civ. 3318 (LTS)

This Document Relates to:
All Actions


--------------------------------------------------------x


### DEFENDANT STARBUCKS CORPORATION'S OPPOSITION
### TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Samidh Guha
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1015
Facsimile: (212) 872-1002

Gregory W. Knopp
AKIN GUMP STRAUSS HAUER & FELD LLP
2029 Century Park East
Suite 2400
Los Angeles, CA 90067
Telephone: (310) 552-6436
Facsimile: (310) 229-1001

Daniel L. Nash
Nathan J. Oleson
Jessica W. Paniccia
AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Avenue, N.W.
Washington, DC 20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288

ATTORNEYS FOR DEFENDANT
STARBUCKS CORPORATION

DATED: July 2, 2009

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................ ii

I.  INTRODUCTION ........................................................................................... 1

II. BACKGROUND ............................................................................................. 3

    A.  Plaintiffs' Stores and Job Duties .......................................................... 3

    B.  Distribution of Tips in Plaintiffs' Stores .............................................. 4

III. ARGUMENT .................................................................................................. 5

    A.  Plaintiffs Are Not Entitled to Judgment on Their Section 196-d Claim ................. 5

        1.  Plaintiffs' "Agent" Claim Fails as a Matter of Law ........................................... 5

            a)  Shift Supervisors Are Not "Agents" ................................................ 6

            b)  Shift Supervisors and Baristas Are "Waiters", "Busboys" or "Similar Employees" Who May Share Gratuities .................. 13

            c)  Shift Supervisors Did Not "Demand," "Accept," or "Retain" Tips "Received" by Plaintiffs ...................... 14

        2.  The Starbucks Tip Policy is Not a "Tip Pool" Used to Pay Shift Supervisors ................................. 16

        3.  Plaintiffs' Weekly Distribution Claim Fails as a Matter of Law ..................... 19

        4.  Plaintiffs' Training Claim Fails as a Matter of Law ........................................ 21

    B.  Plaintiffs Are Not Entitled to Judgment on Their Section 193 Claim .................. 22

    C.  Plaintiffs are Not Entitled to Judgment On Their Section 198-b Claim .............. 23

IV. CONCLUSION ............................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

## FEDERAL CASES

*Ayres v. 127 Rest. Corp.,*
   12 F. Supp. 2d 305 (S.D.N.Y. 1998) ............................................................. *passim*

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986).............................................................................................5

*Chan v. 88 Palace,*
   2007 WL 313483 (S.D.N.Y. Feb. 1, 2007) ..................................................... *passim*

*Chung v. New Silver Palace Rest.,*
   272 F. Supp.2d 314 (S.D.N.Y. 2003) ................................................................24

*DiBella v. Hopkins,*
   403 F.3d 102 (2d Cir. 2005) ..............................................................................12

*Good Samaritan Hosp. v. Shalala,*
   508 U.S. 402 (1993)...........................................................................................17

*Gordon v. Kaleida Health,*
   2008 WL 5114217 (W.D.N.Y. Nov. 25, 2008).................................................23

*In re Occidental Chemical Corp. v. Public Service Comm'n,*
   499 N.Y.S.2d 214 (N.Y. App. Div. 1986)........................................................17

*INS v. Cardoza-Fonseca,*
   480 U.S.. 421 (1987).........................................................................................17

*Jaramillio v. Weyerhaueser Co.,*
   536 F.3d 140 (2d Cir. 2008) ...............................................................................5

*Lu v. Jing Fong Rest., Inc.,*
   503 F. Supp. 2d 706 (S.D.N.Y. 2007) ..............................................................17

*Morris v. Schroder Capital Mgmt. Int'l,*
   445 F.3d 525 (2d Cir. 2006) ..............................................................................12

*NLRB v. Big Three Indus. Gas & Equip. Co.,*
   579 F.2d 304 (5th Cir. 1978) ...............................................................................7

*Ngan Gung Rest., Inc. v. New York (In re Ngan Rest., Inc.),*
   183 B.R 689 (S.D.N.Y. June 29, 1995)........................................................14, 15

## STATE CASES

*Chau v. Starbucks Corp.*,
   94 Cal. Rptr. 3d 593, 14 Wage & Hour Cas. 2d (BNA) (Cal. App. 4 Dist. 2009) .........11, 15, 18

*People v. Vetri*,
   309 N.Y. 401 (N.Y. 1955) ......................................................................................................22

*Salinas v. Kinderhook Diner*,
   761 N.Y.S.2d 366 (N.Y. App. Div. 2003)..............................................................................23

*Samiento v. World Yacht Inc.*,
   883 N.E.2d 990 (N.Y. 2008) ..................................................................................................10

*Truelove v. Northeast Capital & Advisory, Inc.*,
   738 N.E. 2d 770 (N.Y. 2000) ...........................................................................................22, 23

*Tandoor Rest. Inc. v. Comm'r of Labor*,
   1988 WL 383581 (N.Y. Sup.Ct. Aug. 2, 1988) .....................................................................21

## RULES, REGULATIONS, AND STATUTES

FED. R. CIV. P. 56(c)................................................................................................................5

Second Circuit Local Rule § 0.27 ...........................................................................................12

N.Y. Comp. Codes R. & Regs. tit. 12 § 357.1(c) ...................................................................23

N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.21 .............................................................22, 24

N.Y. Comp. Codes R. & Regs. tit. 22 § 500.27 ......................................................................12

N.Y. Lab. L. § 2 (8-a) ...............................................................................................................6

N.Y. Lab. L. § 190 ..................................................................................................................22

N.Y. Lab. L. § 193 ........................................................................................................3, 22, 23

N.Y. Lab. L. § 193-b ...............................................................................................................22

N.Y. Lab. L. § 196-d....................................................................................................... *passim*

N.Y. Lab. L. § 198-a ...............................................................................................................11

N.Y. Lab. L. § 198-b........................................................................................................3, 23, 24

N.Y. Stat. § 94................................................................................................................14

N.Y. Const. art. VI, § 3(b)(9)..........................................................................................12

## OTHER AUTHORITIES

NYLS' Governor's Bill Jacket, 1968 ch. 209 ...................................................................10

NYLS' Governor's Bill Jacket, 1968 ch. 1007 .................................................................17

Memorandum from George Ostrow, N.Y. Dept. of Labor, (Sept. 5, 1972) ...................... *passim*

Letter from Jeffrey G. Shapiro, N.Y. Dept. of Labor, (Sept. 2, 2008)..............................13

Letter from Robert Ambaras, N.Y. Dept. of Labor, (Sept. 29, 1998)................................13

Letter from Robert Ambaras, N.Y. Dept. of Labor, (Sept. 16, 1998)................................13

Letter from Jerome Tracy, N.Y. Dept. of Labor, (Dec. 8, 2005) .........................18 , 19, 20

*Merriam-Webster Dictionary* ..........................................................................................14

## I.    **INTRODUCTION**

Plaintiffs Jeanna Barenboim and Jose Ortiz have asked this Court to rule as a matter of law that Starbucks baristas are entitled to all of the tips left in communal tip containers, to the exclusion of another category of hourly employees—shift supervisors—who spend most of their time performing the same customer service work that generated the tips.  Plaintiffs' request conflicts with the plain language of the New York Labor Law provisions upon which they rely, the legislative intent of these provisions, and the authority interpreting these provisions, and is also unsupported by the record.  Plaintiffs' motion for summary judgment must be denied.

Plaintiffs' primary claim is that shift supervisors are "agents" of Starbucks and therefore may not share tips under New York Labor Law Section 196-d, even though they have no authority to interview, hire, schedule, evaluate, discipline, or terminate other employees.  This claim fails for three reasons.

First, courts and the New York Department of Labor (NYDOL) have repeatedly rejected the contention that hourly workers with minimal supervisory responsibilities are "agents" under Section 196-d.  The contention has been squarely rejected by the courts in this district, which have held that employees who are "merely . . . senior floor captain[s] with more limited supervisory responsibilities" are not "agent[s] of [the]corporation" within the meaning of Section 196-d.  *Ayres v. 127 Restaurant Corp.,* 12 F. Supp. 2d 305, 308 (S.D.N.Y. 1998); N.Y. Lab. L. § 196-d.  And it has been rejected by the New York Department of Labor, which has long held that an "agent" under Section 196-d is an "officer of the corporation, or general manager of the business, but does not include a mere supervisory employee who does not have the authority to hire or fire."  Memorandum from George Ostrow, N.Y. Dept. of Labor, to Supervisors (Sept. 5,

1972) at 1 (attached hereto as Attachment A-1).  Shift supervisors indisputably do not possess the level of authority that would make them "agents."

Second, plaintiffs' Section 196-d claim fails regardless of whether the shift supervisors in plaintiffs' stores were "agents."  The statute specifically provides that "*[n]othing in this subdivision* shall be construed as affecting the… sharing of tips by a waiter with a busboy or similar employee." (emphasis added.)  Baristas and shift supervisors qualify as "waiters," "busboys," or "similar employees" under the plain meaning of these terms.  The primary duty of both positions is to make drinks, operate the cash register, serve customers, and perform other customer-related tasks.  The statute permits employers to require such employees to share tips, regardless of what other duties they perform.

Third, plaintiffs' Section 196-d claim fails because plaintiffs have not shown that any tips they "received" were improperly diverted.  The statute only prohibits employers from "demand[ing] or accept[ing]" gratuities "received by an employee."  Plaintiffs make no effort to prove this statutory requirement is met, apparently because they assume that all of the tips left in a communal tip container were intended solely for baristas.  But there is no evidence to support this assumption.  To the contrary, the evidence shows that tips were left for the collective customer service provided by shift supervisors and baristas alike.  Plaintiffs have not—and cannot—show that the amount of tips customers intended them to receive would have exceeded the amount of tips they actually received under Starbucks hour-based tip distribution.  In short, they have no evidence that they lost any tips whatsoever.  This failure of proof is fatal to their motion.

Plaintiffs assert three additional theories under Section 196-d that are equally without merit.  First, they allege that the distribution of tips from a communal tip container is an

improper "tip pool." This argument fails because the allocation of tips from a communal tip container is not a "tip pooling" arrangement. Second, plaintiffs allege that tips from a communal tip container may not be distributed on a weekly basis, but there is nothing in Section 196-d that imposes such a restriction. Third, plaintiffs claim that tips were not paid to baristas in training, but Starbucks policies indisputably provide for the payment of tips to baristas when they are actually serving customers during training. Plaintiffs have not shown any basis for concluding that they are entitled to judgment as a matter of law on these theories.

Finally, plaintiffs assert conclusory claims under Sections 193 and 198-b of the New York Labor Law, alleging that the distribution of tips from the communal container is an unlawful "deduction from wages" and an illegal wage "kickback." Neither Section 193 nor Section 198-b prohibits the distribution of tips to hourly workers based on their hours worked. Thus, these claims also fail as a matter of law.

## II.    BACKGROUND

### A.    Plaintiffs' Stores and Job Duties

Plaintiffs worked briefly as baristas for Starbucks in two New York City stores. (Defendant Starbucks Corporation's Statement of Undisputed Material Facts in Support of Motion for Summary Judgment Pursuant to Local Civil Rule 56.1 ("UF") ¶¶ 1-2.) Plaintiffs' duties as baristas were primarily focused on customer service and included taking orders from customers, operating the cash registers, and making and serving drinks. (*Id.* ¶ 7.)

The shift supervisors in plaintiffs' stores spent most of their time working side-by-side with baristas providing customer service. (*Id.* ¶ 8.) They performed all the same tasks as baristas, including taking orders, working the cash registers, making drinks, and cleaning. (*Id.* ¶ 8.) Beyond their barista duties, shift supervisors were assigned a few additional tasks such as

opening and closing the store and cash-handling responsibilities. (*Id.* ¶ 10.) However, shift supervisors did not interview, hire, evaluate, transfer, promote, formally discipline, fire, or determine the pay for baristas. (*Id.* ¶ 11.) Nor did they prepare the work schedule, approve overtime work, or process payroll. (*Id.* ¶ 11.) These duties were handled instead by store managers and assistant store managers. (*Id.* ¶ 6.)

Although plaintiffs attempt to characterize shift supervisors as having "managerial" authority because they "coach" or "deploy" baristas, it is undisputed that baristas also were involved in these tasks. For instance, baristas may coach other baristas on the proper way to make drinks or perform duties. (*See id.* ¶ 7.) Similarly, the deployment of partners during a shift is often a collaborative effort between baristas and shift supervisors, unless the store manager has specifically assigned partners to particular stations.[1] (RF ¶ 29.)

**B.    Distribution of Tips in Plaintiffs' Stores**

Plaintiffs' stores included containers where customers could place tips. (UF ¶ 12.) To ensure that tips are distributed fairly among the hourly partners who provide the customer service, Starbucks policy specifies that tips are to be distributed among baristas and shift supervisors according to hours worked. (*Id.* ¶ 12.) At the end of each week, the shift supervisors and baristas determine an hourly tip rate by dividing the total amount collected by the total number of qualifying hours worked that week by baristas and shift supervisors. (*Id.* ¶ 13.) Each

---

[1] Starbucks refers the Court to Defendant Starbucks Corporation's Response to Plaintiffs' Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 ("RF"), which catalogues plaintiffs' misrepresentations of the evidence, including plaintiffs' mischaracterization of shift supervisors' responsibilities, and conclusory allegation that shift supervisors are "managerial employees." (*See* RF ¶¶ 28-30, 36, 38-43.)

barista and shift supervisor receives a portion of the tips equal to the store's hourly tip rate for the week multiplied by the number of hours he or she worked. (*Id.* ¶ 13.) Tips were calculated and distributed on a weekly basis in accordance with this policy in Barenboim's and Ortiz's stores. (*Id.* ¶ 13.) Contrary to plaintiffs' assertions, those hours during baristas' training that involve customer service—known as "practice shifts"—are included in the calculation and distribution of tips. (*See id.* ¶ 14; RF ¶¶ 78-79, 82-83, 85-87.)

## III.   ARGUMENT

A court may grant a motion for summary judgment only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case. *See, e.g., Jaramillo v. Weyerhaueser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). A motion for summary judgment must be denied where the movant fails to make a showing sufficient to establish any element of a claim upon which it bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### A.   Plaintiffs Are Not Entitled to Judgment on Their Section 196-d Claim.

#### 1.   Plaintiffs' "Agent" Claim Fails as a Matter of Law

Section 196-d prohibits an "employer or his agent" from "demand[ing] or accept[ing], directly or indirectly, any part of the gratuities, received by an employee, or retain[ing] any part of a gratuity or of any charge purported to be a gratuity for an employee." N.Y. Lab. Law § 196-d (McKinney 2008). Plaintiffs claim that Starbucks violated this provision by allowing shift supervisors to share in the tips left in the tip container because plaintiffs contend that shift

supervisors are "agents" under Section 196-d. This claim fails for three reasons: (1) shift supervisors are not "agents" under Section 196-d; (2) regardless, shift supervisors are entitled to share in the tips they help earn because they qualify as waiters, busboys, and "similar employees" who are expressly permitted to share tips; and (3) plaintiffs cannot show that they were deprived of any tips they "received" within the meaning of the statute.

### a.      Shift Supervisors Are Not "Agents"

Plaintiffs have not—and cannot—show that shift supervisors are "agents" within the meaning of Section 196-d. The statute defines an agent as "a manager, superintendent, foreman, supervisor or any other person employed acting in such capacity," and interpretive authority makes clear that this definition does not encompass every employee with supervisory responsibility. Thus, an employee who is "merely [a] senior floor captain with more limited supervisory responsibilities" is *not* an "agent of [the] corporation" within the meaning of Section 196-d. N.Y. Lab. Law § 2(8-a) (McKinney 2008); *Ayres*, 12 F. Supp. 2d at 308; *see also Chan v. 88 Palace*, 2007 WL 313483, at *18, 20-21 (S.D.N.Y. Feb. 1, 2007)[2] (employee not "agent" within meaning of Section 196-d where he "generally acted in effect as a server," regardless of the fact that he "had some supervisory responsibilities, and exercised somewhat greater autonomy than captains or waiters, and . . . had a modest financial interest in the restaurant...."). Rather, to qualify as an agent under Section 196-d, an employee must "wield[] broad managerial authority" such that they "stand[] in the shoes of the employer." *Chan*, 2007 WL 313483, at *21; Attach. A-1 at 1. Thus, a "mere supervisory employee who does not have the authority to hire or fire" does not qualify, even if he or she bears the title of "supervisor." Attach. A-1 at 1 (Section

---

[2] This unpublished decision was previously submitted to the Court as Attach. B-2 to Def.'s Mem. of Law in Support of Mot. for Summ. J. [DE 57].

196-d "agent" is an "officer of the corporation, or general manager of the business, but does not include a mere supervisory employee who does not have the authority to hire or fire"); *Ayres*, 12 F. Supp. 2d at 308 (contrasting non-agent supervisors who have "limited supervisory responsibilities" with possible agents who had the authority to hire workers).

Unable to prove that shift supervisors meet the standard for "agents" for purposes of Section 196-d, plaintiffs argue that no such standard exists. Plaintiffs claim the standards set forth by the district courts in *Ayres* and *Chan* are invalid because these courts "fail[ed] to address the 'agent' language in Section 196-d." (Plaintiffs' Motion for Partial Summary Judgment and Memorandum in Support Thereof ("Pls.' Mem.") at 13.) As an initial matter, this attack on *Ayres* and *Chan* does nothing to address the New York Department of Labor's similar conclusion that "agents" do not include a "mere supervisory employee who does not have the authority to hire or fire." Attach. A-1 at 1.

But plaintiffs' argument also fails because, contrary to plaintiffs' assertions, both *Ayres* and *Chan* explicitly acknowledged the statute's prohibition concerning "agents" in reaching their conclusions. The *Ayres* court applied the agency standard under the National Labor Relations Act when concluding that an employee that is "merely [a] senior floor captain with more limited supervisory responsibilities" is *not* an "agent of [the] corporation" within the meaning of Section 196-d. *Ayres*, 12 F. Supp. 2d at 308 (citing *NLRB v. Big Three Indus. Gas & Equip. Co.*, 579 F.2d 304, 309-10 (5th Cir. 1978) (supervisors who had authority to "interview job applicants, grant time off, allocate overtime work, transfer employees and recommend wage increases" were employer's agents)). The *Chan* decision likewise acknowledged the statutory restrictions on "agents" in Section 196-d before following the reasoning in *Ayres*. *Chan*, 2007 WL 313483, at

*20-21. In short, plaintiffs have neither distinguished the relevant authority interpreting Section 196-d nor provided a compelling reason to ignore these decisions.

As this authority shows, shift supervisors undeniably do not qualify as "agents" under Section 196-d. Shift supervisors have no authority to hire or terminate employees. (*See* UF ¶ 11; RF ¶ 29.) Nor do they have any meaningful managerial responsibility over Starbucks stores. They may not, *inter alia*, create the store schedule, approve overtime work, formally discipline partners, complete partner evaluations, promote partners, or set their pay rates. (UF ¶ 11; RF ¶ 29.) They thus are not "agents" under the New York Labor Law. *Ayres*, 12 F. Supp. 2d at 308; *Chan*, 2007 WL 313483, at *18, 20-21; Attach. A-1 at 1 ("agent" does not include a "mere supervisory employee who does not have the authority to hire or fire.")

Despite shift supervisors' inability to perform any managerial functions, plaintiffs argue that shift supervisors are "agents" because they may open the store, handle cash, and perform other minor supervisory duties.[3] None of these duties make shift supervisors "agents." Opening and closing the store, handling cash, or informing partners when the store manager has scheduled them for a break does not require the exercise of managerial discretion or otherwise transform hourly line workers into the "general manager of the business." Attach. A-1 at 1; (RF ¶¶ 29, 36-37; *see, e.g., id.* ¶ 36 (shift supervisors typically defer to a schedule created by the store manager when reminding partners to take their breaks).) Similarly, the fact that some employee must hold keys to the store when the store manager or assistant store manager is unavailable does not

---

[3] Much of the evidence cited by plaintiffs concerns the hiring process, qualifications, and training of shift supervisors, none of which is relevant for determining whether shift supervisors exercise "managerial" authority. That promotions of baristas to shift supervisor positions include training in "supervisory skills," a pay raise, and possibly an interview is irrelevant, and plaintiffs cite no authority for the proposition that these requirements elevate an employee to one who "stands in the shoes of the employer" for purposes of determining agency. (Pls.' Mem. at 6.)

render that individual a "managerial" employee when they have no authority to hire, fire, discipline, evaluate, or schedule employees. Attach. A-1 at 1.  Plaintiffs have offered no evidence that a shift supervisor was ever the "sole managerial employee" at one of their stores, (Pls.' Mem. at 7), nor any evidence suggesting that a shift supervisor would exercise greater authority under those circumstances.  And "keeping an eye" on the shift or "coaching" other partners does not demonstrate managerial status where shift supervisors have no authority to discipline partners for any infractions that they observe.  (UF ¶ 11; RF ¶¶ 9-10, 13, 27-30, 36-43.)  In this regard, shift supervisors are no different than baristas—they may advise their co-workers if they are doing something wrong, but only the store manager or assistant store manager possess the authority to take managerial action on behalf of the company.  (UF ¶ 11.)  None of these "limited supervisory responsibilities" make shift supervisors "agents" under New York law. Attach. A-1 at 1; *Ayres*, 12 F. Supp. 2d at 308.

Plaintiffs concede that these facts are insufficient to meet the standard for "agent" set by New York court decisions and administrative authority.  Instead, they argue that this authority should be disregarded because the New York Labor Law should be "liberally construed" to "protect employees" like baristas.  (Pls.' Mem. at 4-5.)  This argument is meaningless here because shift supervisors are also employees, and they equally deserve the protection of New York's labor laws, including Section 196-d, which ensures that tips go to all the employees who earned them.

Moreover, the specific legislative history behind Section 196-d and the statutory definition of "agent" show that it would be inconsistent with the intent of the statute to exclude shift supervisors from the tip distribution.  Section 196-d was enacted to "end the 'unfair and deceptive practice' of an employer retaining money paid by a patron 'under the impression that

he is giving it to the employee, not the employer.'" *Samiento v. World Yacht Inc.*, 883 N.E.2d 990, 994 n.4 (N.Y. 2008). It is undisputed that all of the tips left in the tip container are distributed to the baristas and shift supervisors, and not to Starbucks or any of its managers. It also is undisputed that shift supervisors at plaintiffs' stores spent most of their time providing the same type of customer service that plaintiffs contend led to customer tips. Excluding shift supervisors from the tip distribution would undermine the customer's expectation—and the statute's intention—that hourly service employees would receive the tips left for their service.

Similarly, excluding shift supervisors from the tip distribution on the theory that they are "agents" would be inconsistent with the Legislature's purpose in adding the term to the New York Labor Law. The NYLL was amended to include "agents" within its prohibitions in order to extend criminal liability for Labor Law violations to "active managers of a business enterprise [who] have often evaded prosecution . . . by hiding behind a corporate shell invariably with insufficient assets." NYLS' Governor's Bill Jacket, 1968 ch. 209, at 7 [4](comments of the Association of the Bar of the City of New York approving bill). As noted above, this term has been interpreted by the NYDOL to extend to an "officer of the corporation, or general manager of the business," but not "a mere supervisory employee who does not have the authority to hire or fire." Attach A-1 at 1. This statutory purpose may not be overridden by the general principle that the New York Labor Law was enacted to protect employees. Indeed, the Labor Law's purpose in protecting employees would be itself undermined if hourly workers such as shift supervisors were found to be criminally liable for violations of the New York Labor Law solely

---

[4] This Bill Jacket was previously submitted to the Court as Attach. A-2 to Def.'s Mem. of Law in Support of Mot. for Summ. J. [DE 57].

because they have minor supervisory responsibilities.  *See* New York Labor Law § 198-a
(imposing criminal penalties on "agents" for violations of statute).

With no basis for their claims under New York law, plaintiffs urge the Court to disregard
it in favor of court decisions in California and Massachusetts.  However, even if plaintiffs'
reliance on out-of-state authority were proper, the cited authority does nothing to save plaintiffs'
claims.  Plaintiffs rely heavily on a bench trial verdict in *Chau v. Starbucks Corp.* that found that
shift supervisors could not receive tips from the tip container under California law.  (Pls.' Mem.
at 9-10.)  But the day after plaintiffs filed their motion here, the California Court of Appeals
unanimously reversed the trial court's decision and ordered that judgment be entered for
Starbucks, holding that shift supervisors could not be excluded from the distribution of tips from
the tip containers.  *Chau v. Starbucks Corp.*, 94 Cal. Rptr. 3d 593, 14 Wage & Hour Cas. 2d
(BNA) 1665 (Cal. App. 4 Dist. 2009).

Cases interpreting Massachusetts' tip laws are also inapposite, because they involve
interpretation of a different statute and focus on the interpretation of whether the terms
"employees" and "service" permit salaried managers to share in banquet tips.  (*See* Pls.' Mem. at
10-11.)  These cases presented no statutory issue regarding whether such employees were
"agents," and in any event are factually distinguishable because they involve salaried managers
whose primary duty was management.  Here, it is undisputed that such employees—store
managers and assistant store managers—are excluded from the tip distribution.

Absent any authority supporting a conclusion that shift supervisors are "agents" under the
statute – and in the face of the countervailing court authority, Department of Labor guidance, and
legislative history – plaintiffs ask the Court to certify the "agent" question to the New York Court
of Appeals, arguing that the issue of shift supervisors' status as "agents" is "unsettled" under

New York law. (Pls.' Mem. at 20-21.) This request is procedurally improper, because under New York constitutional and state law, this Court does not have authority to certify questions directly to the New York Court of Appeals. N.Y. Const. art. VI, § 3(b)(9) (limiting certification to dispositive questions of law arising in "the Supreme Court of the United States a court of appeals of the United States, or an appellate court of last resort of another state"); N.Y. Comp. Codes R. & Regs. tit. 22 § 500.27 (2009). Therefore, if plaintiffs wish to seek such a remedy, they must do so through the Second Circuit, which holds this discretionary authority. *Id.*; Second Circuit Local Rule § 0.27.

In any event, this case does not present an unsettled question suitable for certification. *See Morris v. Schroder Capital Mgmt. Int'l*, 445 F.3d 525, 530-531 (2d Cir. 2006) ("Certification is to be used in those cases where there is a split of authority on the issue, where a statute's plain language does not indicate the answer, or when presented with a complex question of New York common law for which no New York authority can be found.") (quoting *DiBella v. Hopkins*, 403 F.3d 102, 111 (2d Cir. 2005)). As shown above, the courts in this district and the NYDOL have consistently held that direct service employees with only limited supervisory responsibilities are not "agents" and are not prohibited from sharing in the gratuities they help generate with other direct service employees under Section 196-d. *Ayres v. 127 Restaurant Corp.*, 12 F. Supp. 2d 305 (S.D.N.Y. 1998); *Chan v. 88 Palace*, 2007 WL 313483, at *18, 20-21. These decisions are fully consistent with the statute's language and the Legislature's intent as documented in the statute's legislative history. *See supra* Part III.A.1. The issue of whether shift supervisors are "agents" under Section 196-d is not a close question. Court and administrative authority have conclusively established that they are not. This Court need not certify the "agent" question to the New York Court of Appeals to reach this conclusion.

**b.     Shift Supervisors and Baristas Are "Waiters," "Busboys," or "Similar Employees" Who May Share Gratuities.**

Plaintiffs' Section 196-d claim fails for the independent reason that tip-sharing between baristas and shift supervisors is proper under the statute's language explicitly permitting the "sharing of tips by a waiter with a busboy or similar employee." N.Y. Lab. Law § 196-d (McKinney 2008). Plaintiffs contest the application of this exception by asserting that "it seems clear that 'similar employee' refers to employees 'similar' to busboys, not similar to waiters." (Pls.' Mem. at 9). Like plaintiffs' reading of the term "agent," this interpretation has been rejected by the NYDOL, which has repeatedly advised that the term "similar employee" encompasses *any* employee who provides direct service to a tipping customer, regardless of title. *See* Attach. A-1 at 2 ("We will consider a 'similar employee' to be any employee who participates with the waiter in rendering some personal service to the patron [including] the hostess or captain, who greets and seats the patron [and] . . . a short order cook at a counter."); Letter from Jeffrey G. Shapiro, Staff Attorney, N.Y. Dept. of Labor, to Koji Muto, Inakaya New York, LLC, (Sept. 2, 2008) at 2 (attached hereto as Attachment A-2) ("Sushi/robata chefs serving food right in front of the customers are eligible to receive tips since they provide service to customers."); Letter from Robert Ambaras, Senior Attorney, N.Y. Dept. of Labor, to Harold Rotchford, (Sept. 29, 1998) at 2 (attached hereto as Attachment A-3) (NYDOL "considers a 'similar employee' to be any employee who renders a direct and personal service to customers"); Letter from Robert Ambaras, Senior Attorney, N.Y. Dept. of Labor, to Jennifer Bernheim, Esq., Piper & Marbury, LLP, (Sept. 16, 1998) at 1 (attached hereto as Attachment A-4) (NYDOL "considers a 'similar employee to be any employee who participates with a waiter in rendering a personal service to the customer who leaves the tip.")

The baristas and shift supervisors in plaintiffs' stores spent the majority of their time providing direct customer service, and thus qualify to share tips as "waiters," "busboys," or "similar employees."  (*See* UF ¶¶ 8-9; RF ¶ 29); *see* N.Y. Stat. § 94 (McKinney 2008) (statutory terms should be given their ordinary meaning); *Merriam-Webster Dictionary* (2009) ("waiter" is "one that waits on another," *i.e.,* one who "attend[s] as a servant" or "suppl[ies] the wants of [a person];" "busboy" is "a waiter's assistant; one who clears away dirty dishes and resets tables in a restaurant;" "Similar" employees are those whose work "ha[ve] characteristics in common" and are "alike in substance or essentials.").

Plaintiffs' contention that shift supervisors may not qualify for this exception because they are "agents" fails for two reasons.  (Pls.' Mem. at 9.)  First, as shown above, shift supervisors are not "agents" under Section 196-d.  Second, this argument fails because it is inconsistent with the language of Section 196-d.  The tip-sharing exception is explicit: "*[n]othing in this subdivision* shall be construed as affecting the . . . sharing of tips by a waiter with a busboy or similar employee."  N.Y. Labor Law § 196-d (emphasis added).  Thus, any employee whose primary duty is to serve as a waiter, busboy, or similar employee may share tips, regardless of what other responsibilities they may hold.  To hold otherwise would conflict with the statute's plain language, which provides that "nothing" in Section 196-d may infringe upon the ability of "waiters," "busboys," or "similar employees" to share tips.  The tip-sharing exception applies to plaintiffs' claims, regardless of whether shift supervisors are "agents."

### c.  The Shift Supervisors Did Not "Demand," "Accept," or "Retain" Tips "Received" by Plaintiffs.

Plaintiffs' Section 196-d claim fails for a third reason: the statute, by its terms, only prohibits the diversion of tips "received" by an employee.  N.Y. Lab. Law § 196-d.  Thus, plaintiffs must prove that shift supervisors took tips that *they* "received."  *See id.*; *Ngan Gung*

14

*Rest., Inc. v. New York* (*In re Ngan Gung Rest., Inc.*), 183 B.R. 689, 695 (S.D.N.Y. June 29,

1995) (Section 196-d "was enacted to ensure that service employees actually receive the tips

*given to them* by the public . . . .") (emphasis added).  Plaintiffs cannot prove that they lost tips to

shift supervisors that they should have otherwise received.

      Plaintiffs are not seeking the return of tips that were given specifically to them.  Rather,

they claim that tips left in a communal tip container and subsequently distributed to their co-

workers belong to them.  But plaintiffs admit that they do not know if *any* of the tips left in the

tip containers were actually intended for them.  (UF ¶ 17.)  And plaintiffs have no evidence that

the amount of tips they earned would exceed the amount actually given to them.  (*Id.* ¶ 17.)

      The record shows that shift supervisors at plaintiffs' stores spent most of their time

performing the same work as baristas that purportedly generated the tips left in the tip containers.

(*Id.* ¶¶ 9, 17.)  Thus, under plaintiffs' theory of how tips are earned, shift supervisors also were

the intended recipients of tips in the tip containers.  If this is true, plaintiffs cannot claim the right

to the portion of tips left for shift supervisors.  Nothing in Section 196-d entitles an employee to

a tip that was not left for her.

      The California Court of Appeals' interpretation of "California's nearly identically worded

law" (Pls.' Mem. at 9) in *Chau* demonstrates the infirmity in plaintiffs' claim.  The California

Court of Appeals found that California's statutory restrictions on agents taking tips from other

workers does not prohibit shift supervisors from keeping tips given to them for their services.

*Chau*, 94 Cal. Rptr. 3d at 599-600.  Rather, the California statute only prohibits agents from

taking tips given to "*another* employee," and says nothing about whether an agent may retain a

tip intended for them.  *Id.*  Where tips are left in a communal tip container, the California Court

of Appeal found that it would be illogical to conclude the statute prohibits a shift supervisor from

retaining "*his or her portion* of a collective tip that was intended for the entire team of service employees, including the shift supervisor." *Id.* at 600. "In this situation, the shift supervisor keeps only his or her earned portion of the gratuity and does not 'take' any portion of the tip intended for services by the barista or baristas." *Id.*

Plaintiffs' claim under Section 196-d fails for the same reason. The statute only prohibits an employer or agent from "demand[ing] or accept[ing]" tips "received by an employee." N.Y. Labor Law § 196-d. Where the evidence establishes that tips were left both for baristas and shift supervisors, plaintiffs cannot obtain judgment as a matter of law without showing that the tips they received were given to other employees. Plaintiffs have not even attempted to make this showing, and therefore their summary judgment motion must be denied.

### 2. The Starbucks Tip Policy Is Not a "Tip Pool" Used to Pay Shift Supervisors.

Although it is undisputed that all of the tips left in Starbucks tip containers are distributed to baristas and shift supervisors, plaintiffs nevertheless contend that Starbucks "[i]n essence... is retaining these tips" because "its policy allows it to pay its supervisory employees a lower hourly wage than it would otherwise need to pay." (Pls.' Mem. at 15.) Plaintiffs go on to argue that even if shift supervisors are not "agents," the distribution of tips is a "mandatory tip pool" that is illegal under Section 196-d. (*Id.* at 16-17.) These arguments are meritless.

Plaintiffs' first argument has no factual support. Plaintiffs have offered no evidence that Starbucks has retained any tips that *they* earned. Specifically, they have offered no evidence that Starbucks took tips that *they* earned and gave them to shift supervisors to supplement their wages. Indeed, all the evidence shows that shift supervisors simply received their fair share of the tips they helped generate. Absent any evidence that plaintiffs were somehow short-changed, they cannot prove that their tips have been unlawfully retained by Starbucks. In short, plaintiffs'

theory that Starbucks funnels the baristas' tips to shift supervisors so it can pay them a lower

wage is pure fantasy.  Plaintiffs have not offered a single shred of evidence to support this

contention.[5]

Plaintiffs' contention that the tip distribution system is an improper "tip pool" is also

without merit.  Plaintiffs claim that "tip pools" must be voluntary in order to be lawful.[6]  (Pls.'

Mem. at 17) (emphasis omitted).  But the distribution of tips between baristas and shift

supervisors is not a "tip pool."  As the *Chau* court noted, the Starbucks tip policy "presents the

---

[5] Plaintiffs' reliance on *Lu v. Jing Fong Rest., Inc.*, 503 F. Supp. 2d 706 (S.D.N.Y. 2007), is misplaced.  The employer in that case allegedly demanded a share of tip pool proceeds to pay half of the salaries of certain groups of employees.  *Id.* at 710.  Starbucks does not divert tips clearly earned by one set of employees to pay the salaries of another group, but merely allocates tips among the employees who earned them.

[6] Starbucks disputes this contention.  *See Ayres,* 12 F. Supp. 2d at 307 ("tip-pooling is not *per se* illegal").  Although the NYDOL has taken the position that "tip pools" must be "examined carefully" before they may be allowed, it apparently agrees that the statute does not necessarily bar the use of tip pools.  Prior to 1972, the NYDOL permitted tip pooling under Section 196-d.  *See* Attach. A-1 at 1 (noting that it was "revising" the Department's position on tip pooling based on "the existence of certain abuses found in tip-sharing and tip-pooling arrangements").  This position was consistent with legislative history of the statute, which added the "tip sharing" provision after commentators argued the statute as originally drafted would end the accepted practice of "tip pooling."  *See* NYLS' Governor's Bill Jacket, 1968 ch. 1007, at 8-9, 11-13  (This Bill Jacket was previously submitted to the Court as Attach. A-1 to Def.'s Mem. of Law in Support of Mot. for Summ. J. [DE 57]) (arguments in support of bill).  After initially permitting tip pooling without restriction, the NYDOL changed its position based on "certain abuses" it had observed, and concluded that tip pooling could be legal after being subject to closer scrutiny.  Attach. A-1 at 1.  Having taken conflicting positions on this issue over time, the NYDOL's current treatment of tip-pooling is not entitled to deference.  *See Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 417 (1993) ("'An agency interpretation of a relevant provision which conflicts with the agency's earlier interpretation is 'entitled to considerably less deference' than a consistently held agency view.'" (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 466, n.30 (1987)); *In re Occidental Chemical Corp. v. Public Service Comm'n*, 499 N.Y.S.2d 214, 218 (N.Y. App. Div. 1986) (where statutory interpretation requires analysis of statutory language and ascertaining legislative intent, "the construction by the administrative agency is entitled to less weight, and no deference whatsoever if found to be inconsistent with the words and purposes of the statute").  Nonetheless, plaintiffs' "tip pooling" argument fails because the Starbucks tip distribution system is not a "tip pool."

flip side of [a] mandatory tip-pooling practice." *Chau*, 94 Cal. Rptr. 3d at 594. As the Court explained, mandatory tip pooling is:

> [F]actually and analytically distinguishable from . . . [the Starbucks tip distribution policy]. . . . In each of . . . [the mandatory tip pooling cases], the court evaluated an employer policy mandating that an employee contribute a portion of his or her personal tip to a "tip pool" to be shared by other employees. In this case, there was no required "tip pooling." Starbucks's challenged policy involved only the appropriate division of gratuities placed by customers in a tip box to benefit a team of employees. Although superficially the two scenarios may seem similar, they are materially different . . .

*Id.* at 601. Starbucks policy thus is not a tip pool because "Starbucks does not have a policy requiring baristas to give *their* tips to a shift supervisor . . . Instead, Starbucks's policy concerns the division of tips that are specifically given to a *group* of employees consisting of baristas and shift supervisors." *Id.* at 604. Under this policy, Starbucks "ensures that if a customer places money in a collective tip box with the intention that it be shared among baristas and shift supervisors, each employee will retain his or her fair share of the tip proceeds." *Id.*

The NYDOL has recognized that similar tip policies—wherein tips are deposited in a collective tip box and then distributed among direct service employees based upon the number of hours worked—is a "process of tip sharing which would remain within the bounds of the law." Letter from Jerome Tracy, N.Y. Dept. of Labor, to Edward C. Hooks, Esq., Harris Beach, PLLC, (Dec. 8, 2005) at 1 (attached hereto as Attachment A-5). In a December 8, 2005 opinion letter, the NYDOL examined tipping practices at a car wash where as many as 12 to 14 employees might touch a car as it goes through the car wash process. *Id.* The car wash had a box at the end of the wash labeled "Tips" where customers could deposit money. *Id.* Each day, at the conclusion of business, the tips were divided among the workers based upon the number of hours worked that day. *Id.* In assessing this practice, the NYDOL acknowledged its distinction

between "tip pools" and "tip-sharing" and found the employer's policy could qualify as a "tip-sharing process." *Id.* at 2.

Because Starbucks similarly allows customers to tip the entire team of baristas and shift supervisors that provide customer service, and the tips are divided among the service employees based on the number of hours worked, Starbucks policy is likewise a lawful "tip-sharing process," rather than a "tip pool."[7]  *Id.*  Thus, plaintiffs' "tip pooling" claim cannot be sustained.

### 3.   Plaintiffs' Weekly Distribution Claim Fails as a Matter of Law.

Plaintiffs further claim that Starbucks violated Section 196-d by not distributing tips until the end of each week.  (Pls.' Mem. at 19.)  Plaintiffs argue, in cursory fashion, that this renders the tip distribution process an "unlawful tip pool" under the statute.  This claim, like plaintiffs' other Section 196-d claims, has no support in the law.

Nothing in Section 196-d imposes a requirement on when or how tips must be distributed from a communal tip container, and plaintiffs do not cite a single case in support of their theory that a weekly distribution is improper.  Plaintiffs merely assert that "[the distribution of tips] to baristas and supervisors on a weekly basis . . . constitutes an unlawful tip pool under Section

---

[7] The NYDOL identified various additional requirements the tip-sharing process needed to follow, including: (1) it must be clear to customers that tips must be deposited in the tip box rather than handed to individual employees; (2) the box must indicate that tips will be distributed only to employees who perform a service on the car and non-service employee may not receive tips; and (3) one or more of the tip-eligible employees must participate in the tip calculation and distribution process. Attach. A-5 at 2.  Plaintiffs have made no attempt to show that these elements were not satisfied.  In fact, although these requirements are not mandated by the statute, Starbucks complies with them.  It is undisputed that no non-service employees share in the tips, and tip shares are calculated and distributed solely by baristas and shift supervisors.  (*See* UF ¶¶ 12-13.)  Starbucks does not require partners to put tips in the tip box that are handed directly to them, (RF Additional Material Facts ¶ 5), but this is consistent with the statute, which does not require employers to *take tips away* from any employee when a tip is intended solely for them. Indeed, requiring employees to place these tips into the tip container would be similar to the very practice the NYDOL alleges is "tip pooling."

196-d . . . because baristas are required to share tips with others who did not even work the same shifts as them." (Pls.' Mem. at 19.) But the statute only prohibits employers from "demand[ing]" or "accept[ing]" tips "received" by an employee. N.Y. Lab. Law § 196-d. Plaintiffs have not shown how the distribution of tips based on the hours worked each week violates this provision.

Nor could they. Dividing tips among employees who work on different shifts within a week is no different from dividing tips among employees who work on the same shift but do not all serve the same customers, or who work on the same day but do not work the same shifts. Under any distribution method, not every employee receiving tips will have participated in serving every tipping customer during a given time period. This is especially true, as plaintiff Barenboim admits, because Starbucks does not have set shifts, which means that even among partners who work the "morning shift" there would not be uniformity in hours worked and number of tipping customers served. (RF Additional Material Facts ¶ 6.) In these situations, the NYDOL has not required the employer to make hour-by-hour, shift-by-shift, or customer-by-customer distribution. *See* Attach. A-5 at 1 (finding distribution of car wash tip box proceeds to be lawful without requiring employer to show that each employee worked on every tipping car during course of business day).

In short, dividing tips among all the employees who contributed to the service that generated those tips is plainly proper, whether the distribution occurs each hour, each day, or each week. Plaintiffs have identified absolutely no law to the contrary. Accordingly, they are not entitled to judgment as a matter of law on their "weekly distribution claim."[8]

---

[8] Plaintiffs have offered no evidence that the weekly tip distribution process resulted in them receiving less in tips than if they had received tips on an hour-by-hour basis. (UF ¶ 17.)

4.   **Plaintiffs' Training Claim Fails as a Matter of Law.**

Plaintiffs claim they are entitled to summary judgment because "Starbucks' own tip policy states that baristas do not receive tips for training." (Pls.' Mem. at 19.) This contention – the crux of plaintiffs' claim – is contrary to the record evidence. Baristas in training code their time in two ways: (1) as "coverage" when they have direct customer contact during practice shifts; and (2) as "training" when they train away from customers. Under Starbucks policy, baristas in training do receive tips for time during which they serve customers (the "coverage" time), but not for the "training" time, such as time spent reviewing manuals. This policy is entirely consistent with Section 196-d. *See* N.Y. Lab. Law § 196-d ; *see also, Tandoor Rest. Inc v. Comm'r of Labor*, No. 22, 1988 WL 383581, at *1 (N.Y. Sup.Ct. Aug. 2, 1988)[9] (customer service employees may not be forced to share tips with non-service employees).

Plaintiffs' contention that certain individuals may have been "confus[ed]" about this policy does not support their request for summary judgment. Plaintiffs offer no evidence to support their claim that "[b]aristas in training who are working a practice shift have not always 'clock [sic] in' under the 'coverage/barista' code[.]" (RF ¶ 85). In fact, the evidence in the record shows that baristas in training working practice shifts clock in as "regular floor coverage" and receive tips for that time. (*Id.* ¶ 85; UF ¶ 14.) More importantly, these vague allegations about confusion on the part of unidentified employees are irrelevant to the claims of the two plaintiffs. Ortiz admits that he received tips consistent with Starbucks lawful policy, (UF ¶ 15, 16), and Barenboim has offered no evidence to support her allegation that she did not receive tips for time spent directly serving customers. Absent any evidence that *these plaintiffs* were denied

---

[9] This unpublished decision was previously submitted to the Court at Attach. B-3 to Def.'s Mem. of Law in Support of Mot. for Summ. J. [DE 57].

tips for time spent serving customers, plaintiffs' motion for summary judgment on their training claim must be denied.

### B.   <u>Plaintiffs Are Not Entitled to Judgment on Their Section 193 Claim.</u>

Section 193 prohibits an employer from making "any deduction from the wages of an employee," unless the deductions "are made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency." N.Y. Lab. Law § 193 (McKinney 2008). Plaintiffs' claim under Section 193 fails for three reasons.

First, as shown above, the tip distribution at plaintiffs' stores was entirely consistent with Section 196-d, which expressly permits mandatory tip-sharing among direct service employees. Accordingly, even if Starbucks policy could be construed as effectuating a "deduction from wages," such deductions were permissible, because they were "made in accordance with the provisions of any law." N.Y. Lab. Law § 193 (McKinney 2008).

Second, Section 193 does not apply because tips are not "wages." The Labor Law defines "wages" as "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis." N.Y. Lab. Law § 190 (McKinney 2008). Gratuities are not previously-determined amounts paid by an employer for services rendered to the employer, as contemplated by the statutory definition. N.Y. Labor Law § 193-b; *Truelove v. Northeast Capital & Advisory, Inc.*, 738 N.E.2d 770, 772 (N.Y. 2000) (definition of "wages" adopted by the legislature was "narrow[]" (citing *Vetri*, 309 N.Y. at 401)). Rather, they are discretionary contributions left by customers that are neither fixed nor owed to employees. *See* N.Y. Comp. Codes R. & Regs. tit.12, § 142-2.21 (2009) (defining "gratuities" as voluntary contribution by customer).

Plaintiffs cite authority interpreting New York's workers' compensation statute, but that authority actually proves Starbucks point. *Salinas v. Kinderhook Diner*, 761 N.Y.S.2d 366 (N.Y. App. Div. 2003). Unlike the statutory scheme at issue here, workers' compensation regulations expressly define wages to *include* "tips and gratuities." N.Y. Comp. Codes R. & Regs. tit. 12, § 357.1(c). Because tips are not similarly included in Section 190's definition of wages, and the New York Legislature has shown that it knows how to include gratuities within the definition of wages when it so desires, the Court should not interpret "wages" more expansively than written. *Truelove*, 738 N.E.2d at 772.

Third, to prevail under Section 193, plaintiffs must show not only that tips are "wages," but that Starbucks made an unlawful "deduction" from such wages. *See Gordon v. Kaleida Health*, No. 08-CV-378S, 2008 WL 5114217, at *6, n.3 (W.D.N.Y. Nov. 25, 2008) (attached hereto as Attachment B) ("[s]ection 193 does not stand for the principle that an employer must *pay* an employee all wages due, but rather prohibits an employer from *deducting* wages from an employee's paycheck.") Plaintiffs have made no effort to prove that any "wages" they earned were deducted. In fact, because shift supervisors performed all the same customer service work as baristas, the evidence shows that plaintiffs received their fair share of the tips. Absent evidence that plaintiffs were denied tips that they earned, they cannot prove that anything was "deducted," as they must. For this reason as well, they are not entitled to judgment on their claim under Section 193.

C. **Plaintiffs Are Not Entitled to Judgment On Their Section 198-b Claim.**

Under Section 198-b, "[w]henever any employee who is engaged to perform labor shall be promised an agreed rate of wages for his or her services," an employer is prohibited from "request[ing], demand[ing], or receiv[ing]" "a return, donation or contribution of any part or all

of said employee's wages, salary, supplements, or other thing of value" as a condition of employment. N.Y. Lab. Law § 198-b. This section does not apply here for two reasons.

First, tips are not "an agreed rate of wages" promised for plaintiffs' services. As shown above, tips are not "wages" at all. Moreover, tips are, by definition, left at the discretion of customers and are necessarily variable. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.21 (2009) (defining "tips" as "voluntary contributions . . . .") Starbucks could not possibly promise any particular "agreed rate," and plaintiffs admit that they were not promised tips at "an agreed rate." (UF ¶ 18.) The distribution of tips thus does not fall within the plain language of Section 198-b. Plaintiffs have cited no authority to the contrary.

Second, Starbucks indisputably did not "request, demand, or receive" a return, donation, or contribution of anything that plaintiffs had been "promised." Starbucks took none of the tips that were left in the tip container. (UF ¶ 12.) All of these gratuities were distributed to baristas and shift supervisors based on hours worked, exactly as Starbucks policy requires. (*Id.*) Unlike Section 196-d, Section 198-b only applies where an *employer* "request[s], demand[s], or receive[s]" the return of agreed-upon wages. *See* N.Y. Labor Law § 198-b. Starbucks did not make such a demand here, and thus plaintiffs' Section 198-b claim fails as a matter of law.[10]

---

[10] In *Chung v. New Silver Palace Rest., Inc.*, 272 F. Supp. 2d 314 (S.D.N.Y. 2003), the Court denied the defendant's motion for summary judgment based on its ruling that Sections 196-d and 198-b provide a private right of action. The Court's decision contains no analysis on whether, as plaintiffs claim, "forcing employees to share their tips with their employer [created] a possible violation of Section 198-b." *Id.*; (Pls.' Mem. at 18.)

IV.    **CONCLUSION**

For the foregoing reasons, this Court should deny plaintiffs' motion for partial summary

judgment in its entirety.


Respectfully submitted,

DATED:  July 2, 2009          s/ Jessica W. Paniccia
                              Samidh Guha
                              AKIN GUMP STRAUSS HAUER & FELD LLP
                              One Bryant Park
                              New York, NY  10036
                              Telephone: (212) 872-1015
                              Facsimile: (212) 872-1002
                              sguha@akingump.com

                              Gregory W. Knopp
                              AKIN GUMP STRAUSS HAUER & FELD LLP
                              2029 Century Park East
                              Suite 2400
                              Los Angeles, CA 90067
                              Telephone: (310) 552-6436
                              Facsimile: (310) 229-1001
                              gknopp@akingump.com

                              Daniel L. Nash
                              dnash@akingump.com
                              Nathan J. Oleson
                              noleson@akingump.com
                              Jessica W. Paniccia
                              jpaniccia@akingump.com
                              AKIN GUMP STRAUSS HAUER & FELD LLP
                              1333 New Hampshire Avenue, N.W.
                              Washington, DC 20036
                              Telephone: (202) 887-4000
                              Facsimile: (202) 887-4288

                              ATTORNEYS FOR DEFENDANT
                              STARBUCKS CORPORATION

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Defendant Starbucks

Corporation's Opposition to Plaintiffs' Motion for Summary Partial Judgment was served this

2nd day of July 2009 via ECF filing notification on the following:


Charles Edward Joseph
D. Maimon Kirschenbaum
Michael Douglas Palmer
JOSEPH & HERZFELD LLP
757 Third Avenue
25th Floor
New York, NY 10017
Email: maimon@jhllp.com
E-mail: mpalmer@jhllp.com


Shannon Liss-Riordan
LICHTEN & LISS-RIORDAN, P.C.
100 Cambridge Street, 20th Floor
Boston, MA  02114
E-mail: sliss@llrlaw.com


s/ Jessica W. Paniccia
Jessica W. Paniccia