USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: DEC 1 6 2009

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
IN RE STARBUCKS EMPLOYEE
GRATUITY LITIGATION

No. 08 Civ. 3318 (LTS)(JCF)

This Document Relates to:
All Actions

-----------------------------------------------------------------x

## OPINION AND ORDER

APPEARANCES:

D. Maimon Kirschenbaum, Esq.
JOSEPH & HERZFELD LLP
757 Third Avenue, 25th Floor
New York, New York 10017

- and -

Shannon Liss-Riordan, Esq.
LICHTEN & LISS-RIORDAN, P.C.
100 Cambridge Street, 20th Floor
Boston, Massachusetts 02114

*Attorneys for Plaintiffs*

Samidh Jalem Guha, Esq.
Daniel L. Nash, Esq.
Nathan J. Oleson, Esq.
AKIN GUMP STRAUSS HAUER & FELD, LLP
One Bryant Park
New York, New York 10036

*Attorneys for Defendants*

LAURA TAYLOR SWAIN, United States District Judge

Plaintiffs Jeana Barenboim ("Barenboim") and Jose Ortiz ("Ortiz") (collectively, "Plaintiffs"), formerly employed as Baristas in stores operated by Starbucks Corporation ("Starbucks" or "Defendant"), bring this putative statewide class action asserting various claims against Starbucks for alleged violations of several provisions of the New York Labor Law ("N.Y. Labor Law"). Plaintiffs' first claim arises out of Starbucks' policy of distributing tips to store Shift Supervisors, who Plaintiffs assert are agents of the employer and thus may not lawfully be included in the distribution of tips pursuant to Section 196-d of the N.Y. Labor Law. Plaintiffs additionally assert that Starbucks' tip distribution policy constitutes an illegal "kick-back" of wages and an unlawful deduction of wages in violation of Sections 198-b and 193, respectively, of the N.Y. Labor Law. Plaintiffs also assert a "training claim," premised on the allegation that Starbucks unlawfully denied tips to Baristas for customer service performed during their two-week training period.[1] Plaintiffs have adequately averred that the Court has diversity jurisdiction of this action pursuant to the Class Action Fairness Act of 2005. 28 U.S.C. § 1332(d).

Plaintiffs have moved for class certification and the parties have cross-moved for summary judgment pursuant to Rules 23 and 56 of the Federal Rules of Civil Procedure. The Court has considered thoroughly the parties' submissions. For the following reasons, Defendant's motion for summary judgment as a matter of law is granted in its entirety and every claim asserted by Plaintiffs, with the exception of plaintiff Barenboim's individual "training claim" (as to which Defendant concedes there is a genuine issue of material fact and has not

---

[1] Although Plaintiffs do not specifically articulate the legal authority for this claim, the Court construes the claim as arising under Section 196-d of the N.Y. Labor Law.

moved for summary judgment), is hereby dismissed. Plaintiffs' motion for class certification of the "training claim" is denied. The Court will not address Plaintiffs' class certification motion with respect to the other claims in light of the Court's ruling on Defendant's summary judgment motion.

BACKGROUND

The following material facts are undisputed unless otherwise indicated.[2] Plaintiffs Barenboim and Ortiz are both New York residents and former employees of Starbucks. (Def. Response ¶ 1.) Starbucks is a Washington-based coffee and beverage company that operates approximately 400 stores in New York State. (Def. Response ¶ 3.) Barenboim worked as a Barista at a store located in Queens, New York, from October 3, 2006, to December 13, 2006. (Def. 56.1 St. ¶ 1.) Ortiz worked as a Barista at a store located in Manhattan, New York, from February 4, 2008, to March 28, 2008. (Id. at ¶ 2.) As new Baristas, Barenboim and Ortiz were paid a starting wage of $8.75 per hour. (Id. at ¶ 3.) Starbucks stores are staffed by employees whom Starbucks refers to as "partners." (Id. at ¶ 4.) Partners are divided into four categories: Baristas, Shift Supervisors, Assistant Store Managers, and Store Managers. (Id.) In New York, Starbucks employs approximately 5,250 - 5,600 Baristas, approximately 1,200 Shift Supervisors, approximately 400 Assistant Store Managers, and approximately 400 Store Managers. (Id. at ¶ 5.) On average, each store is staffed with approximately 17-18 Baristas, three Shift Supervisors, and one Assistant Store Manager. (Id. at ¶¶ 6-8.)

---

[2] Citations to the parties' respective S.D.N.Y. Local Civil Rule 56.1 statements ("__ 56.1 St.") incorporate by reference citations to the underlying evidentiary submissions. Each party submitted a 56.1 Statement with its motion for summary judgment. Defendant also submitted a responsive 56.1 Statement ("Def. Response") with its submission in opposition to Plaintiffs' motion.

Baristas are entry-level, part-time hourly employees primarily responsible for customer service-related tasks such as working the cash register, making coffee drinks, and "[a]nticipat[ing] customer and store needs by constantly evaluating the environment and customers for cues." (Id. at ¶¶ 9-11.) Each Barista must complete a two-week training program at the beginning of her employment, learning how to perform the various tasks associated with that position. (Id. at ¶ 12.) During the training period, new Baristas must complete four to five hours of technology training, which teaches Baristas how to use the store's cash register. New Baristas must also work three or four "practice shifts," during which time the Baristas work "on the floor" serving customers, taking drink orders, preparing drinks, processing customer payments, cleaning the store, and reading and performing assignments in a workbook. (Id. at ¶¶ 14-16.) At the end of the two-week training period, Baristas must take a practical exam to become "certified," demonstrating their skills and knowledge of the tasks associated with their position. (Id. at ¶17.)

Shift Supervisors, like Baristas, are part-time hourly employees, who are non-exempt from applicable labor laws governing overtime pay. (Id. at ¶¶ 22, 29; Def. 56.1 St. ¶ 10.) Shift Supervisors spend a majority of their time performing the same duties as Baristas, but are also responsible for some additional tasks, including supervising and coordinating partners within the store, opening and closing the store, and depositing money into the safe. (Id.) However, Shift Supervisors do not have the authority to interview, hire, transfer, evaluate, promote, issue formal discipline, fire, or determine pay for any partners. (Def. Response ¶ 29; Def. 56.1 St. ¶ 11.) Shift Supervisors also do not prepare the work schedule, approve overtime work, or process payroll. (Id.) Shift Supervisors may be promoted from the ranks of Baristas

upon approval of the Store Manager or District Manager, or hired directly into the position. (Def. Response ¶ 19.) Prior customer service experience in a retail or restaurant environment is necessary to work as a Shift Supervisor. (Pl. 56.1 St. ¶ 21.) Shift Supervisors must also complete a training program at the beginning of their employment that consists of a workshop on "supervisory skills," training on deployment,[3] coaching,[4] and "general information on the Shift Supervisor role." (Def. Response ¶¶ 25-26.) Shift Supervisors are authorized to provide verbal corrective feedback to partners and relay their impressions of a partner's performance to the Store Manager, but are not authorized to formally discipline partners. (Id. at ¶ 39.)

Store Managers are exempt, full-time salaried employees and have the authority to recruit, hire, promote, transfer, schedule, discipline, and terminate Baristas and Shift Supervisors. (Id. at ¶ 51; Def. 56.1 St. ¶¶ 5-6.) Store Managers are responsible for leading a team of store partners and are responsible for the operations of the store to which they are assigned. (Def. Response ¶ 54.) In some stores, a Store Manager is supported by an Assistant Store Manager, who is a full-time salaried employee. (Id. at ¶¶ 50, 53.) Although Store Managers and Assistant Store Managers may perform the same customer-service related duties performed by Baristas and Shift Supervisors on an as-needed basis, their primary duties are related to managing the store. (Id. at ¶ 56.) Approximately 70% of Assistant Store Managers are promoted internally from the ranks of Shift Supervisors. (Id. at ¶ 45.) Approximately 60-70% of Store Managers are

---

[3] "Deployment" refers to the supervision of partners' placement in a store during a particular shift, such as designating some partners to work at the cash register, while designating others to make drinks for customers. (Id. at ¶ 27.)

[4] "Coaching" refers to how partners provide feedback to other partners on their task performance. (Id. at ¶ 28.)

promoted internally from the ranks of Assistant Store Managers. (Id. at ¶ 46.)

Starbucks requires that every store have a Shift Supervisor, Assistant Store Manager or Store Manager on the premises at all times. (Id. at ¶ 30.) In the absence of an Assistant Store Manager or Store Manager, a Shift Supervisor is authorized to open the safe, transfer money from the safe to the cash registers, and take the daily deposit to the bank. (Id. at ¶¶ 32, 34.) Shift Supervisors also collect deposit slips and place them in the store's safe and bring deposit slips to and from the bank. (Id. at ¶ 34.) Shift Supervisors, as well as Assistant Store Managers and Store Managers, are authorized to open and close the store: they possess keys to the store and are able to disarm the store's alarm system. (Id. at ¶ 35.) A written Starbucks policy provides that all partners work as a team to create and maintain the "Starbucks Experience" for customers and partners, and thus customers are served by a customer service "team" rather than by individual employees. (Id. at ¶¶ 9, 53-54.)

### *Tip Distribution Practices*

Starbucks has a highly detailed written policy governing the collection, storage and distribution of tips. (Def. Response ¶ 62.) The policy requires that each store place a small plexiglass cube container near the cash register (the "collective tip box"). (Id.) When the collective tip box becomes full, its contents are emptied into a bag labeled "tips" that is placed in the store's safe. (Id.) Once a week, a Shift Supervisor or Barista calculates the weekly total of accumulated tips and then consults a report of the total hours worked during the week to determine the ratable tip distribution to each tip-eligible partner. (Id. at ¶¶ 66-67.) Shift Supervisors and Baristas are tip-eligible partners whereas Assistant Store Managers and Store Managers are not. (Id. at ¶¶ 64-65.) For the purposes of tip distribution, only qualifying hours

(explained below) are included in a partner's number of hours worked during the week. (Id. at ¶ 68.) Tips are distributed weekly in cash and are not part of a tip-eligible employee's paycheck. (Id. at ¶ 70.) Shift Supervisors and Baristas are required to report any tips received in excess of 50 cents per hour, whether received as part of the distribution or received individually from a customer, by entering the amount of tips they received into Starbucks' computer system.[5] (Id. at ¶ 72.)

### Training and Tip-Eligible Hours

During a Barista's two-week training period at the beginning of her employment, hours worked are recorded either as "training" hours or "coverage/barista" hours. "Training" includes the hours spent reading training materials and policy manuals, completing written and computer-based training modules, attending off-site workshops, and practicing tasks with more experienced partners ("learning coaches"). (Id. at ¶ 78.) These hours are not tip-eligible, or "qualifying," hours. (Id.) However, when Baristas work "practice shifts" during their training period, in which they perform customer service related duties such as preparing beverages and processing payments at the cash register, that time is recorded as "coverage/barista" and does qualify as tip-eligible. (Id.) Plaintiff Ortiz has not proffered any evidence that he engaged in any customer service-related work during his two-week training as a Barista for which he did not receive a distribution of tips. (Def. 56.1 St. ¶¶ 15-16.) Plantiffs do, however, proffer evidence that plaintiff Barenboim may have engaged in customer service-related work during her two-

---

[5] It is undisputed that Starbucks does not require the contribution of tips, if any, given directly to individual employees. (Def. Response ¶ 75.) It is also undisputed that neither Barenboim nor Ortiz ever received a tip directly from any customer they served. (Def. 56.1 St. ¶ 17.)

week training as a Barista but did not receive any distribution of tips during that time.[6] (Barenboim Tr. 121: 2-16).

## DISCUSSION

*The Parties' Cross-Motions for Summary Judgment*

In their cross-motions, the parties seek summary judgment with respect to Plaintiffs' claims that Defendant's collective tip distribution policy violates Sections 196-d, 198-b, and 193 of the New York Labor Law by reason of the inclusion of Shift Supervisors in the tip-eligible group and the pooling and distribution of tips on a weekly basis. Defendant also seeks summary judgment dismissing Plaintiff Ortiz's claim that he was denied tips during his training period. Summary judgment is to be granted in favor of a moving party where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of establishing that there is no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A fact is considered material to summary judgment "if it 'might affect the outcome of the suit under the governing law,'" and an issue of fact is a genuine one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Holtz v. Rockefeller & Co. Inc., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson, 477 U.S. at 248). The Second Circuit has explained, however, that "[t]he party against whom summary judgment is sought . . . 'must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he

---

[6] Defendant concedes that plaintiff Barenboim has framed a genuine issue of material fact with respect to this claim.

nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

When cross-motions for summary judgment are filed, "the standard is the same as that for individual motions for summary judgment." Natural Res. Def. Council v. Evans, 254 F. Supp. 2d 434, 438 (S.D.N.Y. 2003). "The court must consider each motion independently of the other and, when evaluating each, the court must consider the facts in the light most favorable to the non-moving party." Id. (citing Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001)).

### *Plaintiffs' N.Y. Labor Law § 196-d Tip-Sharing Claim*

New York Labor Law Section 196-d prohibits any "employer or his agent" from "demand[ing] or accept[ing], directly or indirectly, any part of the gratuities, received by an employee, or retain[ing] any part of a gratuity or of any charge purported to be a gratuity for an employee." N.Y. Lab. Law § 196-d (McKinney 2002); see Chung v. New Silver Palace Rest., Inc., 246 F. Supp. 2d 220, 230 (S.D.N.Y. 2002) (holding that Section 196-d "clearly prohibits part-owner employees who wield . . . broad managerial authority" from retaining tips). The drafters of Section 196-d "sought to end the unfair and deceptive practice of an employer retaining money paid by a patron under the impression that he is giving it to the employee, not to the employer." Samiento v. World Yacht Inc., 10 N.Y.3d 70, 87 n.4 (N.Y. 2008) (internal quotation marks omitted). The New York Labor Law defines an "agent" of a corporation as someone including, but not limited to, "a manager, superintendent, foreman, supervisor or any other person employed acting in such capacity." N.Y. Lab. Law § 2(8-a) (McKinney 2009).

Plaintiffs contend that Shift Supervisors are "agents" of Starbucks and thus prohibited from sharing in tips because they were able to supervise and coordinate Baristas, open and close the store, deposit money into the safe, and oversee the store in the absence of a Store Manager or Assistant Store Manager. These responsibilities, however, do not carry the broad managerial authority or power to control employees that courts have held to be sufficient to render an employee an "employer or [employer's] agent" within the meaning of Section 196-d. In <u>Ayres v. 127 Restaurant Corp.</u>, the court held that an employee became an "employer or his agent" when he gained "full authority" to suspend or terminate employees, assumed greater responsibility for the restaurant's budget, and received a guaranteed salary, whereas a "senior floor captain with more limited supervisory responsibilities" would not be an agent for the purposes of Section 196-d. <u>Ayres v. 127 Restaurant Corp.</u>, 12 F. Supp. 2d 305, 308 (S.D.N.Y. 1998). Similarly, in <u>Chan v. Sung Yue Tung Corp.</u>, the court held that a restaurant employee's authority to manage the distribution of tips to other employees and the flexibility he was afforded in his work schedule did not suffice to qualify him as an agent for the purposes of Section 196-d because the employee did not enjoy operational control or managerial authority and could not hire or fire other employees. <u>Chan v. Sung Yue Tung Corp.</u>, No. 03 Civ. 6048, 2007 WL 313483, at * 2-3, 13-14 (S.D.N.Y. Feb. 1, 2007); <u>see also</u> <u>Chan v. Triple 8 Palace, Inc.</u>, No. 03 Civ. 6048, 2006 WL 851749, at *16-17 (S.D.N.Y. Mar. 30, 2006) (concluding that plaintiffs failed to demonstrate that certain restaurant employees – who carried business cards and represented to customers they were managers, addressed customer complaints, supervised waiters and busboys, made menus, set shifts for other employees, made hiring recommendations, and documented and calculated tip sharing – were either employers or agents because the proffered

evidence failed to demonstrate that they "possessed the power to control" plaintiffs). From this case law emerges the proposition that persons without the capacity to hire, fire or discipline other employees, even restaurant staff characterized as senior floor captains and accorded supervisory responsibilities, are not agents for the purposes of Section 196-d, presumably because persons without authority over hiring, firing and other incidents of the employment relationship are not exercising powers relevant to the creation or maintenance of the employment relationship. It is undisputed that Shift Supervisors spend a majority of their working hours performing the same tasks as Baristas. Shift Supervisors' additional responsibilities do not constitute exercise of authority over the creation, terms or conditions of the employment relationship with Starbucks. Accordingly, the Court concludes that no rational jury could conclude on this record that Shift Supervisors are agents within the meaning of the statutory prohibition.

Plaintiffs fail to cite any authority to support the contrary proposition that the limited supervisory authority possessed by Shift Supervisors is sufficient to render them agents under Section 196-d. Rather, Plaintiffs rely on a California state trial court decision in which a class of Baristas who had asserted claims against Starbucks nearly identical to the instant claims prevailed on their contention that Shift Supervisors were Starbucks' agents and that it therefore was unlawful under California law for them to share with Baristas in the collective tips. See Chau v. Starbucks Corp., 174 Cal. App. 4th 688 (Cal. Ct. App. 2009). The Chau decision relied on by Plaintiffs, however, was reversed unanimously on appeal and therefore does not provide viable support for Plaintiffs' claims here. Chau v. Starbucks Corp., 174 Cal. App. 4th 688 (Cal. Ct. App. 2009).

Plaintiffs also make various arguments regarding the final sentence of Section

196-d, which provides that "[n]othing in this subdivision shall be construed as affecting . . . the sharing of tips by a waiter with a busboy or similar employee." N.Y. Lab. Law § 196-d (McKinney 2002). Plaintiffs argue that the phrase "similar employee" modifies "busboy" rather than "waiter" and therefore only allows waiters (and, by analogy, Baristas) to share tips with employees "who are lower down the food and beverage hierarchy." (Pl.'s Opp. at 3.) The argument is unavailing because the plain language of the statute makes clear that this sentence merely limits the scope of the first sentence of Section 196-d, without independently proscribing any activity. In light of the Court's conclusion that Defendant has not violated the first sentence of the statute, the Court need not consider further the parties' arguments regarding the statute's final sentence.

### Plaintiffs' Claims under N.Y. Labor Law Sections 193 and 198-b

Plaintiffs assert that Defendant's policy of distributing tips earned by Baristas to Shift Supervisors constitutes an illegal kick-back and an illegal deduction of wages, in violation of New York Labor Law Sections 193 and 198-b, respectively. Section 193 prohibits employers from making any deductions from wages, except as required by law or regulation, or authorized by the employee for the employee's benefit.[7] The statute is intended to prohibit a deduction from wages for the benefit of the employer and to ensure full and prompt payment of wages to

---

[7] "1. No employer shall make any deduction from the wages of an employee, except deductions which: a. are made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency; or b. are expressly authorized in writing by the employee and are for the benefit of the employee . . . 2. No employer shall make any charge against wages, or require an employee to make any payment by separate transaction unless such charge or payment is permitted as a deduction from wages under the provisions of subdivision one of this section." N.Y. Lab. Law § 193 (McKinney 2009).

employees. See Hudacs v. Frito-Lay, Inc., 90 N.Y.2d 342, 346-47 (N.Y. 1997) (finding that Section 193 was intended to place the risk of loss for such things as damaged or spoiled merchandise on the employer rather than the employees). The Court concludes that Section 193 is wholly inapplicable to this case. Plaintiffs fail to proffer any evidence that Defendant made any unauthorized deduction from Baristas' wages. Rather, Defendant implemented a policy providing the manner in which gratuities that are received in addition to Baristas' hourly wages are distributed among a team of customer service employees.

Plaintiffs similarly have failed to proffer any evidence that Defendant's policy constituted an illegal "kick-back" of wages within the meaning of Section 198-b, such that engaging in the tip distribution policy would be a condition of obtaining or retaining employment as a Barista with Starbucks, which is a necessary element of a claim asserted under this provision.[8] See Chung v. New Silver Palace Restaurant, 272 F. Supp. 2d 314, 316 (S.D.N.Y. 2003) (finding a violation of Section 198(b) where restaurant employees were required to share their tips with their employer as a prerequisite for their continued employment). Accordingly, Defendant's motion for summary judgment on these claims is granted.

*Plaintiffs' Class Certification Motion and the Training Claim*

Plaintiffs "training claim" is premised on the allegation that Defendant unlawfully

---

[8] "Whenever any employee who is engaged to perform labor shall be promised an agreed rate of wages for his or her services . . . it shall be unlawful for any person, either for that person or any other person, to request, demand, or receive . . . a return, donation or contribution of any part of all of said employee's wages . . . upon the statement, representation, or understanding that failure to comply with such request or demand will prevent such employee from procuring or retaining employment." N.Y. Lab. Law § 198-b (McKinney 2009).

denied tips to Baristas for customer service performed during their two-week training period. As explained above, Plaintiffs have failed to proffer any evidence that Ortiz performed customer service work during his training period for which he did not receive his share of tips and, accordingly, Defendant's motion for summary judgment on Ortiz's training claim is granted. Defendant concedes, however, that there is a genuine issue of material fact with respect to plaintiff Barenboim's training claim.

Plaintiffs seek to certify a class, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), consisting of all current and former Baristas employed by Defendant in New York State within the six-year limitations period who were denied tips for customer service work performed during their training period. The party seeking class certification bears the burden of showing that: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy"). Fed. R. Civ. P. 23(a). The party seeking class certification must also show that the proposed class action meets the criteria of one of the three categories of class actions permissible under Rule 23(b). Plaintiffs seek certification pursuant to Rule 23(b)(3), asserting that questions of law or fact common to members of the class predominate and a class action is superior to other available methods for adjudication. Fed. R. Civ. P. 23(b).

"Rule 23 is given a liberal rather than restrictive construction and courts are to adopt a standard of flexibility." Marisol v. Giuliani, 126 F.3d 372, 377 (2d Cir. 1997). However, a district court must only grant class certification "after a rigorous analysis." Gen. Tel.

Co. of the Southwest v. Falcon, 457 U.S. 147, 161 (1982). After a careful consideration of the parties' submissions, the Court concludes that Plaintiffs fail to meet the numerosity, commonality, and typicality requirements of Rule 23(a).

To satisfy the numerosity requirement, the plaintiffs must show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a). Numerosity can be presumed at a level of forty members. Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995). However, "[c]ourts have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement." Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir. 1993) (certifying a class estimated to include between 22 and 133 members). District courts must make factual findings as to the approximate size of the class based on the parties' evidentiary proffers. In re Initial Public Offering Securities Litig., 471 F.3d 24, 40 (2d Cir. 2006).

Plaintiffs' training claim is premised on their allegation that Baristas were denied tips during their training period. However, it is undisputed that Defendant had a lawful policy of distributing tips to Baristas in training when they performed customer-service related duties, while not distributing tips to Baristas for training hours in which they did not perform customer service. Plaintiffs argue that this policy may not have been consistently implemented at all of Defendant's New York stores during the putative Class Period, and that some Baristas may therefore have been denied tips to which they were entitled. However, Plaintiffs have not proffered any specific evidence to support a finding that tips were denied to a class of Baristas that is so numerous that joinder of all members would be impracticable. The record is barren of any evidence, in the form of affidavits, declarations, or deposition testimony, indicating that any

Baristas other than plaintiff Barenboim were denied their rightful shares of the ratable tip distribution for customer service work performed during their training period. Accordingly, Plaintiffs have failed to satisfy the numerosity requirement.

Plaintiffs' class certification motion with respect to the training claim fails on commonality and typicality grounds as well. The commonality and typicality criteria for class certification "tend to merge . . . [because] [b]oth serve as guideposts for determining whether . . . the named plaintiff's claim and the class claims are so inter-related that the interests of the class members will be fairly and adequately protected in their absence." Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 157 n.13 (1982). Commonality requires the party seeking class certification to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Typicality requires that the claims of the party seeking certification are "typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement "is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability," and is "usually met irrespective of minor variations in the fact patterns underlying individual claims." Robidoux, 987 F.2d at 936.

Here, Plaintiffs have failed to meet their burden of demonstrating the requisite commonality and typicality of their training claim. The evidence proffered does not support a claim that any Barista other than plaintiff Barenboim was denied tips for customer service work engaged in during the training period. Thus, Plaintiffs fail to establish that individual factual questions as to whether Baristas did not receive tips during training, despite Defendant's lawful policy to distribute tips for customer service work, would not predominate over common legal

and factual questions among the class. Plaintiffs similarly fail to demonstrate that plaintiff Barenboim's claim would be typical of the claims of the putative class.[9]

*Plaintiffs' Class Certification Motion With Respect To Their Other Claims*

The Court need not address Plaintiffs' class certification motion with respect to their other claims. Federal Rule of Civil Procedure 23 provides that a district court must rule on the issue of class certification "[a]t an early practicable time after a person sues or is sued as a class representative . . . " Fed. R. Civ. P. 23(c)(1). This provision affords district courts with flexibility when presented with both a dispositive motion and a motion for class certification. See Project Release v. Prevost, 722 F.2d 960, 963 (2d Cir. 1983); Wright v. Schock, 742 F.2d 541, 543-44 (9th Cir. 1984). A court should consider whether an initial ruling on the merits of a claim would protect the parties from needless and costly further litigation and whether such a ruling would prejudice any of the parties. Wright, 742 F.2d at 544. A district court may reserve decision on a class certification motion pending disposition of a motion to dismiss, Benfield v. Mocatta Metals Corp., No. 91 Civ. 8255, 1993 WL 148978, at *2 (S.D.N.Y. May 5, 1993) (citing Christensen v. Kiewit-Murdock Investment Corp., 815 F.2d 206, 214 (2d. Cir. 1987)), or pending disposition of a motion for summary judgment, Encarnacion v. Astrue, 491 F. Supp. 2d 453, 459 (S.D.N.Y. 2007), aff'd, 568 F.3d 72 (2d Cir. 2009). Having determined that Defendant is entitled to summary judgment dismissing all of Plaintiffs' claims other than the training claim, the Court will forego determination of the class certification motion with respect to those claims.

---

[9] In light of the Court's conclusion that Plaintiffs have failed to satisfy the requirements of Rule 23(a), the Court need not consider whether Plaintiffs have satisfied the requirements of Rule 23(b).

CONCLUSION

Defendant's summary judgment motion is granted in its entirety. Plaintiffs' cross-motion for summary judgment is denied in its entirety. Accordingly, all of Plaintiffs' claims are dismissed, other than plaintiff Barenboim's individual training claim. Plaintiffs' motion for class certification is denied in its entirety. The parties must promptly contact Magistrate Judge Francis' chambers to schedule a settlement conference. If the parties fail to settle their dispute, they must appear for a Final Pre-Trial Conference on **Friday, March 12, 2010, at 3:00 p.m.** The parties must confer and make submissions in advance of the Final Pre-Trial Conference as required by the previously entered Pre-Trial Scheduling Order (docket entry no. 26). This Opinion and Order resolves docket entry nos. 41, 56 and 62.

SO ORDERED.

Dated: New York, New York
       December 16, 2009

/s/ LAURA TAYLOR SWAIN
United States District Judge