N.Y.S.D. Case #
08-cv-3318(LTS)

10-4912-cv, 11-3199-cv,
Barenboim v. starbucks, Winans v. Starbucks Corp.

# UNITED STATES COURT OF APPEALS

## FOR THE SECOND CIRCUIT

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/23/2012

_____

August Term, 2011

(Argued: August 30, 2012     Decided: October 23, 2012)

Docket No. 10-4912-cv

_____

JEANA BARENBOIM, JOSE ORTIZ, on behalf of themselves and all others similarly situated,
*Plaintiffs-Appellants,*

—v.—

STARBUCKS CORPORATION,
*Defendant-Appellee.*

_____

Docket No. 11-3199-cv

_____

EUGENE WINANS, MICHAEL BIENTHCS, REYNOLDS MANGONES, MATTHEW TABER,
KRISTEN TOMAINO, on behalf of themselves and all others similarly situated,
*Plaintiffs-Appellants,*

KENNISHA LAWRENCE,
*Plaintiff,*

—v.—

STARBUCKS CORPORATION,
*Defendant-Appellee.*

_____

Before:

WINTER, RAGGI, and LIVINGSTON, *Circuit Judges*

_____

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

1

CERTIFIED COPY ISSUED ON 10/23/2012

Appeals heard in tandem from awards of summary judgment in favor of defendant Starbucks Corporation in the United States District Court for the Southern District of New York (Laura Taylor Swain, *Judge*).  In No. 10-4912-cv, plaintiffs, representing a putative class of Starbucks baristas, contend that the district court erred in failing to construe New York Labor Law § 196-d to prohibit Starbucks from distributing pooled tips to shift supervisors, who are purportedly Starbucks "agent[s]," as that word is used in the statute. In No. 11-3199-cv, plaintiffs, representing a putative class of Starbucks Assistant Store Managers ("ASMs"), contend that the district court erred in construing § 196-d as not requiring Starbucks to include ASMs in its tip pools.  Because these cases turn on the proper construction of New York Labor Law § 196-d, and the New York Court of Appeals has yet to construe the meaning of the word "agents" under the statute or to decide whether an employer may exclude a tip-earning employee from receiving distributions from a common tip pool, we defer decision and certify these questions to the New York Court of Appeals.

—————————————

SHANNON LISS-RIORDAN (Daniel Maimon Kirschenbaum, Joseph, Herzfeld, Hester & Kirschenbaum LLP, New York, New York, *on the brief*), Lichten & Liss-Riordan, P.C., Boston, Massachusetts, *for Jeana Barenboim and Jose Ortiz*.

LEWIS M. STEEL (Paul W. Mollica, Adam T. Klein, *on the brief*), Outten & Golden LLP, New York, New York, *for Eugene Winans, Michael Bienthcs, Reynolds Mangones, Matthew Taber, and Kristen Tomaino*.

REX S. HEINKE (Samidh Guha, Gregory W. Knopp, Daniel L. Nash, Nathan J. Oleson, Johanna R. Shargel, *on the brief*), Akin Gump Strauss Hauer & Feld LLP, Washington, D.C., *for Defendant-Appellee*.

—————————————

R<small>EENA</small> R<small>AGGI</small>, *Circuit Judge*:

These appeals, heard in tandem, challenge awards of summary judgment entered in the United States District Court for the Southern District of New York (Laura Taylor Swain, *Judge*), in favor of defendant Starbucks Corporation on plaintiffs' complaints that Starbucks violates New York Labor Law § 196-d in the distribution of tip pools maintained at stores in New York State. In each store, Starbucks employs four types of workers. At the bottom of a Starbucks store's hierarchy are "baristas," the line workers responsible for taking customers' orders and serving the company's coffee- and tea-based drinks. Immediately above baristas are "shift supervisors," who are principally responsible for serving customers, but who also enjoy limited supervisory responsibilities. Above the shift supervisors are "assistant store managers" ("ASMs"), who serve as deputies to the highest-ranking employees, the store managers.

Each Starbucks store posts a plexiglass box at the counter where customers may leave tips. Starbucks policy provides for these tips to be pooled and distributed among the baristas and shift supervisors. Starbucks does not permit its store managers or ASMs to receive any share of a tip pool.

In the first appeal before us, <u>Barenboim v. Starbucks Corp.</u>, No. 10-4912-cv, a putative class of baristas sued Starbucks, contending that shift supervisors are not permitted to receive distributions from a store's tip pool because shift supervisors are Starbucks "agent[s]" who may not "demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee." N.Y. Lab. Law § 196-d. In the second appeal, <u>Winans v.</u>

3

Starbucks Corp., No. 11-3199-cv, a putative class of ASMs sued Starbucks, claiming that they are not Starbucks agents ineligible to receive tips pursuant to § 196-d, and therefore could not be excluded from sharing in a tip pool to which their own customer service yields gratuities. In awarding summary judgment in favor of Starbucks in both cases, the district court ruled as a matter of law that there was no genuine dispute of material fact that shift supervisors are not Starbucks agents under N.Y. Lab. Law § 196-d, see In re Starbucks Emp. Gratuity Litig., 264 F.R.D. 67, 72–73 (S.D.N.Y. 2009), and that, even if a genuine factual dispute existed as to ASMs' eligibility to retain gratuities, § 196-d did not afford them a statutory right to receive distributions from Starbucks tip pools, see Winans v. Starbucks Corp., 796 F. Supp. 2d 515, 519 (S.D.N.Y. 2011).

These appeals present two unresolved questions of New York law:

First, what types of employees are eligible to participate in a tip-pooling arrangement, and what factors should inform a court's consideration of eligibility? Section 196-d prohibits an "agent," defined elsewhere as a "supervisor," N.Y. Lab. Law § 2(8-a), from retaining tips. New York law does not define "supervisor." Here, shift supervisors and ASMs both exercise supervisory roles, although in differing degrees, and it remains unclear how many or what kind of supervisory responsibilities are dispositive to the § 196-d analysis. Moreover, although the statute permits employers to require tip sharing by "a waiter with a busboy or similar employee," id. § 196-d, it is unclear whether an employer may mandate a tip-pooling arrangement between a waiter and another customer-service employee of higher rank.

Second, if an employee is not an agent and therefore is eligible to receive tips, may an employer deny him tip-pool distributions even though customers paid gratuities into the

pool in compensation for his service?  Although § 196-d establishes who is ineligible to receive a share of tips, New York law does not clearly state whether an employer may exclude an otherwise eligible tip-earning employee from any share of the business's tip pool.

Because these unresolved questions implicate significant New York state interests, and are determinative of these appeals, we defer decision and certify them to the New York Court of Appeals.

## I.    Background

### A.    *Barenboim v. Starbucks Corp.*, No. 10-4912-cv

Jeana Barenboim and Jose Ortiz (collectively, "Barenboim") were formerly employed by Starbucks as baristas in New York.  As such, they were responsible for preparing food and beverages for Starbucks customers.  Baristas work on a part-time, hourly basis.

Similarly, shift supervisors, the Starbucks employees immediately senior to baristas, are primarily responsible for serving food and beverages to customers and work on a part-time, hourly basis.  As their title indicates, however, shift supervisors also have some supervisory responsibilities, such as assigning baristas to particular positions during their shifts, administering break periods, directing the flow of customers, and providing feedback to baristas about their performance.  Further, shift supervisors are authorized to open and close stores, change the cash register tills, and deposit money in the bank, but only when both an ASM and store manager—the Starbucks employees senior to shift supervisors—are unavailable.

Starbucks stores post tip jars next to cash registers, wherein customers regularly leave gratuities.  Once these tip jars become full, Starbucks requires that they be emptied into a

5

bag, which is then placed in the store safe. Each week, tips are tallied and then distributed in cash to baristas and shift supervisors in proportion to the number of hours each employee worked. Starbucks's company-wide policy requires tips to be distributed among baristas and shift supervisors and precludes store managers and ASMs from receiving payments from the tip pool.

Barenboim filed this putative class action on April 3, 2008, principally alleging that Starbucks violated various provisions of New York Labor Law by allowing shift supervisors to participate in tip pools. See N.Y. Lab. Law §§ 193, 196-d & 198-b. Barenboim also alleged that Starbucks illegally failed to distribute tips to barista trainees who served customers during their training periods.

On December 16, 2009, the district court awarded summary judgment to Starbucks and denied plaintiffs' motions for summary judgment and class certification. It concluded that shift supervisors are not Starbucks agents because their limited supervisory responsibilities "do not carry the broad managerial authority or power to control employees that courts have held to be sufficient to render an employee an 'employer or [employer's] agent' within the meaning of Section 196-d." In re Starbucks Emp. Gratuity Litig., 264 F.R.D. at 72 (alteration in original).

The parties stipulated to dismissal of plaintiffs' remaining claim concerning Starbucks's distribution of tips to barista trainees, and the district court endorsed that stipulation on October 8, 2010 without entering a separate judgment. Plaintiffs timely appealed on December 2, 2010. See Fed. R. App. P. 4(a)(7)(A)(ii) (permitting party 150

6

days to appeal from entry of final order if no separate judgment is entered as otherwise required under Fed. R. Civ. P. 58(a)).

> B. *Winans v. Starbucks Corp.*, No. 11-3199-cv

Plaintiffs Eugene Winans, Michael Bienthcs, Reynolds Mangones, Matthew Taber, and Kristen Tomaino (collectively, "Winans") are former Starbucks ASMs.  In contrast to baristas and shift supervisors, ASMs are full-time employees who receive a salary when they work at least 37 hours per week and are paid an hourly wage when they work less than 37 hours.  Nevertheless, ASMs are "non-exempt" under the Fair Labor Standards Act ("FLSA") and, thus, Starbucks pays them overtime, just as it does baristas and shift supervisors.  Winans adduced evidence showing that the majority of ASMs' time is spent serving customers and that ASMs wear the same uniform as baristas and shift supervisors, rendering these three groups of workers indistinguishable from each other in dealings with customers.

ASMs, however, are also responsible for managerial tasks, although the parties contest the degree to which ASMs act as managers.  Winans emphasizes that ASMs have no final authority over management decisions.  Rather, ASMs assist the store manager by conducting preliminary interviews of job applicants, advising about employee work performance and promotions, recommending termination of employees, disciplining employees at the store manager's direction, and preparing work schedules and payrolls for the store manager's approval.  Winans also points out that, in Starbucks's internal job descriptions, ASMs are listed as retail store support, while only store managers are considered management, and that the principal requirement for the ASM position is the "[a]bility to act with a 'customer comes

first' attitude and deliver customer service that meets or exceeds customer expectations." Winans J.A. 1554.

In response, Starbucks stresses that ASMs' principal function is to manage the store and its employees by participating in managerial decisionmaking with the store manager and serving as the store manager's deputy. Starbucks identifies its ASMs as the company's "bench" of future store managers; their assistance to store managers is intended to teach them the skills necessary to manage a Starbucks store in the future. Id. at 601. Thus, Starbucks maintains that, although they may lack final authority over management decisions, ASMs are integral to store management insofar as they provide the first layer of employee review and act as a liaison between the store manager and the store's shift supervisors and baristas.

Winans commenced suit on April 18, 2008, to compel Starbucks to include ASMs in store tip pools, and to obtain tips to which they were purportedly entitled under N.Y. Lab. Law § 196-d. On cross-motions for summary judgment, the district court concluded that there was a genuine dispute of material fact whether ASMs were employees eligible to retain gratuities under § 196-d. See Winans v. Starbucks Corp., 796 F. Supp. 2d at 518. Nevertheless, the district court awarded summary judgment to Starbucks on the ground that, while New York law excludes an employer or his agent from retaining tips, § 196-d does not compel an employer to include any specific eligible employees in a tip pool. See id. at 518–19. Thus, the district court granted Starbucks's summary judgment motion, denied plaintiffs' motion, and dismissed as moot their motion for class certification. See id. at 520. Winans's timely appeal followed.

8

## II.    Discussion

In each appeal, plaintiffs are citizens of New York suing Starbucks, a Washington corporation, for more than $5 million in damages on behalf of a putative class of Starbucks employees.  Accordingly, we have diversity jurisdiction to decide the questions of state law each appeal presents.  See 28 U.S.C. § 1332(d)(2)(A).

We review the district court's rulings on cross-motions for summary judgment de novo, in each case construing the evidence in the light most favorable to the non-moving party.  See Novella v. Westchester County, 661 F.3d 128, 139 (2d Cir. 2011).  We will affirm an award of summary judgment only where there is no genuine issue of material fact and a party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(a); Novella v. Westchester County, 661 F.3d at 139.

Barenboim submits that the district court committed legal error in determining that shift supervisors are not Starbucks agents prohibited from retaining tips under N.Y. Lab. Law § 196-d because the evidence shows that shift supervisors, as their title states, exercise supervisory functions.  Winans maintains that the evidence indisputably showed that ASMs are not Starbucks agents because they engage primarily in customer service and lack any final managerial authority, and that they are therefore eligible to receive tips from Starbucks tip pools.  Winans further argues that, since ASMs may retain the tips they earn, § 196-d does not permit Starbucks to distribute tips contributed to the tip pool for their services to baristas and shift supervisors.

In this appeal, Barenboim has also moved for certification to the New York Court of Appeals.  See N.Y. Comp. Codes R. & Regs. Tit. 12,  § 500.27(a) (authorizing New York

Court of Appeals to accept certified question from this court).  Our decision whether to
certify a question is guided by three factors: (1) whether the New York Court of Appeals has
addressed the issue and, if not, whether the decisions of other New York courts permit us to
predict how the Court of Appeals would resolve it; (2) whether the question is of importance
to the state and may require value judgments and public policy choices; and (3) whether the
certified question is determinative of a claim before us.  See Joseph v. Athanasopoulos, 648
F.3d 58, 67 (2d Cir. 2011).  As we explain infra, these three factors are satisfied in both
appeals, and we therefore defer decision and certify questions to the New York Court of
Appeals.

A.     Barenboim's § 196-d Claim

New York Labor Law § 196-d states, in relevant part:

> No employer or his agent or an officer or agent of any corporation, or any
> other person shall demand or accept, directly or indirectly, any part of the
> gratuities, received by an employee, or retain any part of a gratuity or of any
> charge purported to be a gratuity for an employee. . . . Nothing in this
> subdivision shall be construed as affecting the . . . sharing of tips by a waiter
> with a busboy or similar employee.

Construing the statute, we have concluded that, "[b]y its plain terms, § 196-d bars employers
from requiring tipped employees to share tips with employees who do not perform direct
customer service—i.e., employees who are not 'busboy[s] or similar employee[s]' and
employees who are managers or 'agent[s]' of the employer." Shahriar v. Smith & Wollensky
Rest. Grp., Inc., 659 F.3d 234, 240 (2d Cir. 2011).

Disregarding the fact that shift supervisors undoubtedly "perform direct customer
service" that customers acknowledge with gratuity contributions to the tip pool, id.,

Barenboim contends that shift supervisors can receive no part of any tip pool because they are employer "agents" under New York Labor Law § 196-d. In support, Barenboim cites New York Labor Law § 2(8-a), which defines "agent" to include "a manager, superintendent, foreman, <u>supervisor</u> or any other person employed acting in such capacity," <u>id.</u> (emphasis added). Barenboim argues that, because shift supervisors engage in at least some supervisory functions, they are ineligible to receive any distribution from a tip pool. Insofar as § 196-d permits an employer to require a waiter to share tips with a busboy, Barenboim urges us to construe the statute to permit such tip sharing only between a tipped employee and another employee a "step down the ladder." Barenboim Br. 29. Thus, Barenboim reasons that § 196-d must be construed to prohibit Starbucks from ordering a barista to share pooled tips with a shift supervisor, an employee standing "a step [up] the ladder."

Like the district court, we are skeptical of Barenboim's argument. As we observed in <u>Shahriar</u>, what the plain language of § 196-d prohibits is "requiring tipped employees to share tips with employees <u>who do not perform direct customer service</u>." <u>Shahriar v. Smith & Wollensky Rest. Grp., Inc.</u>, 659 F.3d at 240 (emphasis added). It is undisputed that shift supervisors perform direct customer service. Indeed, it is their primary job duty. Further, shift supervisors generate tips for such service that are among those pooled for weekly distribution. Thus, plaintiffs are not challenging an employer requirement that they share pooled tips paid only to baristas with shift supervisors. Rather, they are claiming that, under New York law, even tips earned by shift supervisors, once included in a pool with tips earned by baristas, must be paid only to baristas. This is not clear from the text of New York law.

11

Indeed, under our analogous FLSA jurisprudence, the fact that an employee has some supervisory responsibilities does not render him an "employer" ineligible to retain gratuities. 29 U.S.C. § 203(m).[1] Rather, in the FLSA context, we would examine the economic reality of the employment relationship to determine whether shift supervisors are statutory employers, and we would almost certainly conclude that they are not because shift supervisors do not hire and fire employees, determine employees' rate of pay, or maintain employment records, and because they exercise only limited supervision of baristas. See Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984) (providing non-exhaustive list of factors in applying economic reality test); accord Velez v. Sanchez, 693 F.3d 308, 326 (2d Cir. 2012).

Finally, in January 2011, while this appeal was pending, the New York Department of Labor promulgated the New York State Hospitality Wage Order ("Hospitality Wage Order"), which governs employer-mandated tip pools in the hospitality industry. In pertinent part, the Hospitality Wage Order states that "[a]n employer may require food service workers to participate in a tip pool and may set the percentage to be distributed to each occupation from the tip pool." N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.16(b) (2011). The Order is emphatic: "Only food service workers may receive distributions from the tip pool." Id. The Order defines "food services workers" as employees "primarily engaged in the serving

---

[1] Under the FLSA, an employer may credit tips toward an employee's earnings for purposes of complying with federal minimum wage requirements, provided that "all tips received by such employee have been retained by the employee." 29 U.S.C. § 203(m); see Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d at 240.

12

of food or beverages to guests, patrons or customers." Id. § 146-3.4(a).  It lists "wait staff, bartenders, captains and bussing personnel," as well as employees "regularly receiv[ing] tips," as examples of persons falling within the definition.  Id. Moreover, the Order separately instructs that eligibility to participate in a tip pool "shall be based upon duties and not titles," id. § 146-2.14(e), again referencing "captains who provide direct food service to customers" among the eligible occupations, id. § 146-2.14(e)(8).

Starbucks contends that this Order disposes of Barenboim's suit in Starbucks's favor. The Hospitality Wage Order clearly provides that the performance of some supervisory functions does not render an employee ineligible to participate in a tip pool, so long as that employee is "primarily engaged in the serving of food or beverages to . . . customers." Id. § 146-3.4(a).  Thus, the Hospitality Wage Order specifically includes "captains who provide direct food service to customers" as among the employees eligible for tip pooling, id. §§ 146-2.14(e)(8), 146-3.4(a), even though captains are also responsible for supervising others, see generally Webster's Third New International Dictionary 334 (1986) (defining "captain" to include "restaurant functionary in charge of waiters: headwaiter").  Here, shift supervisors, who principally serve Starbucks customers, but who also provide limited supervision to baristas, seem analogous to the captains the Department of Labor identified as eligible to receive tip-pool distributions.  In addition, the Hospitality Wage Order undermines Barenboim's reliance on the last sentence of § 196-d regarding employer-mandated tip sharing between a waiter and another similar employee.  The Order clarifies that the statute permits both tip sharing, the practice by which a tipped employee (a waiter)

13

gives a portion of his own tips to another employee (a busboy) who also provides services to customers but without himself receiving any gratuity, see N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.14(a) (defining tip sharing), as well as tip pooling, the practice by which employees, each of whom receives tips, intermingle those gratuities in a common pool for future distribution, see id. § 146-2.14(b) (defining tip pooling). The Hospitality Wage Order clarifies that in a tip-pooling arrangement, any employee primarily engaged in customer service may receive a distribution from the tip pool, even if that employee is the equivalent of a captain, who stands a step up the staff hierarchy.

While we may doubt the merits of Barenboim's claim for the reasons just mentioned, we are hesitant to rule it out completely. First, although this court has described the purpose of N.Y. Lab. Law § 196-d as prohibiting employers from retaining tips earned by employees directly serving customers, see Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d at 240, that statement was informed by district court decisions construing the statute, see id. at 240–41 (citing Chan v. Triple 8 Palace, Inc., No. 03-cv-6048, 2006 WL 851749, at *16 (S.D.N.Y. Mar. 31, 2006) (Lynch, J.), and Ayres v. 127 Rest. Corp., 12 F. Supp. 2d 305, 307 n.1 (S.D.N.Y. 1998) (Chin, J.)), and a single New York administrative adjudication, see id. at 241 (citing Tandoor Rest., Inc. v. Comm'r of Labor, No. PR-82-83 (Industrial Bd. of App. Dec. 23, 1987)). Our description of § 196-d's purpose was not based on a New York court's construction of the law, much less a decision of the New York Court of Appeals.

Moreover, our description of the statute was made in the context of deciding that § 196-d and the FLSA share a common aim and should be construed in the same manner.

See id. at 241 ("Thus, 29 U.S.C. § 203(m) and § 196-d bar the same types of tipping practices, and actions that violate the tip pooling provision of 29 U.S.C. § 203(m) may also violate § 196-d."). But plaintiffs offer a textual argument that neither this court in Shahriar nor any New York court appears to have considered. Unlike the FLSA, which only permits tips to be credited to an employee's wage if "all tips received by such employee have been retained by the employee," 29 U.S.C. § 203(m), and thus "prohibits 'employers' from sharing in waitstaff's tips," Barenboim Br. 18, New York Labor Law proscribes either an "employer or his agent" from retaining employees' tips, N.Y. Lab. Law § 196-d (emphasis added). Thus, where the FLSA only generally limits "any person acting directly or indirectly in the interest of an employer in relation to an employee" from retaining tips, 29 U.S.C. § 203(d) (defining "employer"), New York Labor Law specifically limits any "manager, superintendent, foreman, supervisor or any other person employed in such capacity" from retaining tips, N.Y. Lab. Law § 2(8-a) (defining "agent") (emphasis added). Barenboim argues that New York Labor Law therefore reflects a more limiting legislative intent than Congress's use of the single word "employer" in the FLSA. Specifically, he maintains that any employee acting as a "supervisor," even in a limited capacity, is ineligible to receive tips in New York, even though her employer could credit those tips as wages under federal law.

We cannot ignore this textual difference between the FLSA and New York Labor Law. Indeed, as Barenboim notes, the New York Court of Appeals has previously interpreted § 196-d more broadly than its parallel FLSA provision. In Samiento v. World Yacht Inc., 10 N.Y.3d 70, 854 N.Y.S.2d 83 (2008), the Court of Appeals held that when a

banquet hall or other catering service imposes a mandatory service charge as purported waitstaff compensation, that service charge is considered a "gratuity" under § 196-d even though the payment is mandatory, not voluntary. See id. at 78–79. Tips under the FLSA, by contrast, do not include such obligatory service charges. See 29 C.F.R. § 531.55(a) ("A compulsory charge for service . . . imposed on a customer by an employer's establishment, is not a tip . . . ."); accord Chan v. Triple 8 Palace, Inc., 2006 WL 851749, at *3 & n.9. Thus, under New York law, an employer may not retain any part of a compulsory charge that it purports to collect to compensate its employees, while under federal law, the same employer may retain portions of that charge and still claim a tip credit. Because, as this example illustrates, § 196-d and the FLSA do not overlap fully in their text and interpretation, we cannot readily dismiss Barenboim's argument by reference to the FLSA.

Insofar as there is any ambiguity in New York law regarding when an employee is a "supervisor" and, thus, an employee's "agent" who may not retain tips, we would be bound to apply the Hospitality Wage Order, provided that the Department of Labor's regulations were a permissible interpretation of § 196-d. See N.Y. Lab. Law § 199 (authorizing Department of Labor Commissioner to issue rules and regulations for enforcing state laws governing employers' payment of wages to employees); Samiento v. World Yacht Inc., 10 N.Y.3d at 79, 854 N.Y.S.2d at 88 (instructing that "Labor Department's interpretation of a statute it is charged with enforcing is entitled to deference" pursuant to general administrative law principle that "construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld"). See generally Golf

16

v. N.Y. State Dep't of Soc. Servs., 91 N.Y.2d 656, 667, 674 N.Y.S.2d 600, 605 (1998) (holding that, where statute is ambiguous, deference is appropriately accorded to agency's interpretation). But no court—state or federal—appears yet to have construed or applied the Hospitality Wage Order regulations, but see Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d at 241 n.3 (noting promulgation of Hospitality Wage Order, but concluding that it did not affect outcome of appeal), and we are reluctant to hold in advance of any New York court that the Order represents a permissible interpretation of the state statute.

Barenboim argues that the Hospitality Wage Order regulations constitute an unreasonable interpretation of § 196-d. He submits that, by allowing waitstaff captains to participate in tip pools, the Hospitality Wage Order contradicts the plain language and legislative intent of § 196-d, which bars any employer's agent, including a "supervisor," from retaining part of a gratuity. In plaintiffs' view, there is no ambiguity in the meaning of "supervisor": when the New York legislature defined "agent" to include supervisors, it intended to reference all supervisors, even if supervision constituted a fraction of an employee's job responsibilities. Barenboim urges this construction of the words "supervisor" and "agent" based on the New York Court of Appeals' instruction that, given "the remedial nature of Labor Law § 196-d, such language should be liberally construed in favor of the employees." Samiento v. World Yacht Inc., 10 N.Y.3d at 78, 854 N.Y.S.2d at 87. He asserts that the employees to be favored in this case are baristas, the only workers without any supervisory responsibilities, so that they may receive a greater portion of gratuities. Insofar as the Hospitality Wage Order expands the class of employees eligible to retain tips under

17

§ 196-d to include "captains" who exercise supervisory functions, see N.Y. Comp. Codes R. & Regs. tit. 12, §§ 146-2.14(e)(8), 146-3.4(a), Barenboim submits that it is ultra vires.

Barenboim also argues that the regulations are ultra vires because they conflict with § 196-d's final sentence, which only sanctions tip sharing between a waiter and a "busboy or similar employee." He maintains that a captain is not a "similar employee" because he is superior, not inferior, to a waiter, and the legislature did not contemplate that the waiter's tips would be shared up the staff hierarchy. Thus, he urges that the Hospitality Wage Order would be unlawful if relied on to allow shift supervisors to receive a share of the tips earned by baristas.

We have certain reservations as to Barenboim's urged construction of § 196-d, and thus seek further guidance from the New York Court of Appeals regarding the meaning of the words "agent" and "supervisor" under New York Labor Law. Further, we are unsure how Samiento's admonition to "liberally" construe § 196-d "in favor of the employees" applies where, as here, the entire dispute centers on who the employees—as opposed to the employer and his agents—are and, thus, who should benefit under the statute. Clearer direction is needed as to what factors New York views as determinative of who is an employer's agent and, conversely, who is his employee.

Besides this interpretative problem, a further state law question is presented: Does the Hospitality Wage Order apply retroactively where, as here, the class claims arise before, as well as after, that order's promulgation? New York regulations presumptively lack retroactive effect. See Good Samaritan Hosp. v. Axelrod, 150 A.D.2d 775, 777, 542

N.Y.S.2d 28, 31 (2d Dep't 1989) (citing <u>Bowen v. Georgetown Univ. Hosp.</u>, 488 U.S. 204, 208 (1988)).  Nevertheless, in this case, application of the Hospitality Wage Order to Starbucks's conduct may not raise a retroactivity concern because the regulations do not attach new penalties or other legal consequences to actions preceding their promulgation; they merely clarify the meaning of an ambiguous statute.  <u>See</u> <u>American Tel. & Tel. Co. v. State Tax Comm'n</u>, 61 N.Y.2d 393, 404, 474 N.Y.S.2d 434, 439–40 (1984).  <u>See generally</u> <u>Landgraf v. USI Film Prods.</u>, 511 U.S. 244, 269–70 (1994).  Here, too, it is better for the New York Court of Appeals to decide in the first instance whether, assuming that application of the Department of Labor's regulations is dispositive, the Hospitality Wage Order governs Barenboim's entire case or only the portion of it postdating the Order's promulgation.

      B.    <u>Winans's § 196-d Claim</u>

Like Barenboim, Winans presents novel questions of New York law, not only with respect to (1) what factors determine whether an employee is an "agent" under § 196-d, but also (2) whether, if an employee is otherwise eligible to receive tips under § 196-d, an employer can preclude that employee from receiving any distributions from a common tip pool.  We address each question separately.

      1.    <u>Starbucks "Agents"</u>

The application of § 196-d to Starbucks ASMs is potentially more vexing than its application to shift supervisors.  On the one hand, if Barenboim's interpretation prevails and an employee with any supervisory functions is deemed an employer's agent, then, <u>a fortiori</u>, ASMs are ineligible to receive tip-pool distributions because they exercise greater managerial

and supervisory authority than do shift supervisors.  But if Barenboim's interpretation of

§ 196-d is incorrect, and shift supervisors are not agents excluded by law from sharing in a

tip pool, then it is not clear that the same conclusion applies with respect to the agency status

of ASMs.

The record shows that ASMs assist store managers in making hiring and firing

decisions, assigning shifts to baristas and shift supervisors, evaluating employee

performance, recommending corrective action for employee infractions, and processing

payroll.  While this means ASMs have greater managerial and supervisory authority than

shift supervisors, we nevertheless cannot confidently conclude that they have the degree of

authority necessary to be Starbucks agents so as to be precluded by § 196-d from any

participation in tip pools, even though some of the gratuities therein were given for service

performed by ASMs.[2]

Winans contends that ultimate managerial power rests exclusively with store

managers, and that ASMs do little more than assist them in exercising that power.  Starbucks

maintains, however, that ASMs are part of a store's management team and that, despite their

lack of final decisionmaking authority, their undisputed involvement in those management

decisions is sufficient for them to be recognized as "agents" under New York Labor Law.

The parties' dispute is more legal than factual, with resolution depending on whether New

York views final decisionmaking authority as necessary to demonstrate that someone is an

---

[2] We note that whether ASMs, or for that matter shift supervisors, may receive distributions from tip pools in light of § 196-d is a different question from whether Starbucks's distribution method—by reference to hours worked—is subject to attack.

employer's agent.  New York Labor Law § 2(8-a) defines an "agent" as "a manager" without further explanation, and there are no New York court decisions discussing the meaning of the word "agent" in the context of § 196-d.  But see In re Starbucks Emp. Gratuity Litig., 264 F.R.D. at 72 (citing prior district court cases requiring employee to have "full authority" to manage and supervise employees to be "employer or his agent" under § 196-d (internal quotation marks omitted)).

The parties further dispute the relevance of ASMs' customer service to Winans's § 196-d claim.  Winans argues that, because ASMs spend the vast majority of their time engaged in customer service rather than managerial tasks, they should be treated the same as baristas and shift supervisors under § 196-d.  Although Starbucks does not deny that ASMs spend most of their time serving customers, it notes that store managers, who no one doubts are the company's agents, also provide customer service.  Starbucks further asserts that ASMs are distinguishable from baristas and shift supervisors because ASMs have greater managerial responsibilities and are salaried, full-time employees.  The relevancy of ASMs' customer service responsibilities to resolution of their agency status is not clearly evident from the statute and limited caselaw.  The Department of Labor's Hospitality Wage Order does say that a "food service worker" may be included in a tip pool, N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.16(b), so long as he is "primarily engaged in the serving of food or beverages" to customers, id. § 146-3.4.  Even assuming that the Order governs disposition of this case, much depends on the meaning of "primarily engaged."  The phrase could measure the amount of time that an employee is engaged in customer service relative to other duties, which could favor Winans, or it could refer to the most salient responsibility from the employer's point of view, which could favor Starbucks in light of its treatment of ASMs as

21

managerial staff.  Or it could refer to some combination of these or other measurements.

In any event, Starbucks maintains that ASMs cannot receive distributions from tip pools because they are not similar to waiters or busboys as a consequence of their managerial roles.  Starbucks does not go as far as Barenboim in arguing that the Department of Labor's Hospitality Wage Order is <u>ultra vires</u> to the extent it permits captains, who exercise some supervisory functions relative to other waitstaff, to receive tip-pool distributions.  But if Starbucks is correct that ASMs are not akin to waiters, busboys, or other "similar employees"—who, if the Hospital Wage Order controls, would include captains—and, therefore, may not receive tip-pool distributions, we would need to identify a foundational principle on which to rest this conclusion.  None is apparent from existing New York law.

Thus, the same interpretative difficulty is present in Barenboim's and Winans's appeals: What factors should a court consider in determining whether an employee is his employer's agent and, thus, ineligible to receive distributions from an employer-mandated tip pool?  Because the meaning of the word "agent" in § 196-d is not settled in New York caselaw, we defer decision and certify this question to the New York Court of Appeals.

### 2. Exclusion from Starbucks Tip Pools

Assuming without deciding that ASMs are <u>not</u> Starbucks agents under § 196-d, a second question arises in Winans's appeal: Does New York Labor Law compel Starbucks to include ASMs in its stores' tip pools?  Section 196-d is silent as to whether an employer can exclude otherwise eligible tip-earning employees from a common tip pool.  As the district court observed, "the plain language of Section 196-d does not grant any employee a right to participate in tip pools or to receive the proceeds therefrom. Rather, the statute defines who is eligible to participate in tip pools—waiters, busboys, and other similar

employees—and who is not—employers, their agents, and any other person." Winans v. Starbucks Corp., 796 F. Supp. 2d at 519. Indeed, the purpose of § 196-d was to ensure not that certain employees are eligible to receive tip-pool distributions, but that certain individuals, i.e., the employer or his agent, are ineligible to receive the compensation that customers believed they were paying to other employees. "The drafters of Labor Law § 196-d sought to end the unfair and deceptive practice of an employer retaining money paid by a patron under the impression that he is giving it to the employee, not to the employer." Samiento v. World Yacht Inc., 10 N.Y.3d at 78 n.4, 854 N.Y.S.2d at 87 n.4 (internal quotation marks omitted).

In light of the statute's purpose to define who is ineligible to retain tips and its silence with respect to whether a tip-eligible employee must retain some portion of his gratuities, the district court ruled that § 196-d does not require an employer to include any particular employee or group of employees in its tip pool. See Winans v. Starbucks Corp., 796 F. Supp. 2d at 519. Rather, who participates in a tip pool is a decision left to the employer's discretion. Winans challenges this conclusion, arguing essentially as follows: (a) ASMs receive tips when they serve customers, which tips are placed in a common jar;[3] (b) § 196-d

---

[3] There is a dispute of fact as to whether customers served by an ASM who place a gratuity in the common tip jar actually expect that gratuity to be paid to the ASM. Compare Starbucks Br. (Winans) 23 (stating that there is no evidence of customer deception), with Winans Br. 31–35 (identifying evidence that ASMs engage primarily in customer service and, therefore, urging inference that customers would expect ASMs to receive portion of their tips), and Winans Reply Br. 14–15 (emphasizing that ASMs spend "up to 98% of their days" involved in customer service). In reviewing Starbucks's motion for summary judgment, we must assume that this factual dispute would be resolved in favor of Winans, see Novella v. Westchester County, 661 F.3d at 139, and therefore that customers served by an ASM expect that ASM to receive some portion of their tips.

It is also undisputed that no Starbucks policy forbids ASMs from accepting tips given directly to them rather than placed in the common tip jar. But there is no evidence in the record of such direct tipping.

forbids employers from retaining tips paid to an employee, but an employer retains tips when he collects them from one group of employees and distributes them to a different group of employees, insofar as this subsidizes the wages that the employer otherwise would have to pay from its gross revenues; and, therefore, (c) Starbucks should be prohibited from excluding ASMs from the tip pool while at the same time retaining tips earned by ASMs and paying them to other employees—here, baristas and shift supervisors.

Winans's construction of § 196-d cannot be dismissed as implausible.  Indeed, the statute says nothing indicating that this sort of total tip redistribution from one employee to another is permissible.  Insofar as the second sentence of § 196-d expressly permits some tip redistribution—specifically, tip sharing by "a waiter with a busboy or similar employee," N.Y. Lab. Law § 196-d—the statute simply approves the standard practice of waiters sharing tips with waitstaff who assist them but do not receive tips on their own.  Winans contends that Starbucks's challenged policy involves the wholesale taking of ASMs' tips in order to redistribute them to lower-level employees, which § 196-d does not expressly sanction.

Winans also asserts that Starbucks's policy toward ASMs finds no support in the Department of Labor's Hospitality Wage Order.  The Order states that employers may mandate a tip-pooling system and allocate tips to their employees according to fixed percentages, see N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.16(b), but it does not expressly permit an employer to exclude an employee from receiving any distributions from a tip pool that includes tips earned by that employee.

On the other hand, Starbucks is correct that the Hospitality Wage Order affords an employer discretion to create tip pools and to decide the formula for tip distributions from those pools.  It does not mandate the inclusion of any particular employees in such pools.

Starbucks additionally notes employers' discretion to prohibit certain employees from receiving tips. See N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.21 (defining "tips" and "gratuities," and stating that "[n]o gratuities or tips shall be deemed received for the purpose of this Part if their acceptance is prohibited by the employer or prohibited by law"). Plaintiffs counter that § 142-2.21 permits an employer to ban all tipping, not all tips for specific employees, much less a share in a tip pool that includes gratuities for services performed by the excluded employee. Further, plaintiffs note that N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.18 states that "[a] charge purported to be a gratuity must be distributed in full as gratuities to the service employees or food service workers who provided the service." Plaintiffs contend that this regulation commands that, when a customer gives a tip as consideration for service, the employee who provided that service must receive that payment or, at a minimum, a share of that payment from the tip pool. No New York court has yet construed these regulations or explained how they interact, nor can we confidently predict how the New York Court of Appeals would apply them in the context of this case.

Further, in the Winans case, as in Barenboim, the parties agree that the court must interpret § 196-d liberally in favor of employees, see Samiento v. World Yacht Inc., 10 N.Y.3d at 78, 854 N.Y.S.2d at 87, but they contest what this liberal construction would entail. Winans urges that it would require Starbucks to include ASMs in the tip pool, so that all employees can benefit from customers' gratuities. Starbucks responds that including full-time, salaried ASMs in the tip pool would harm baristas and shift supervisors by reducing their share of tip-pool distributions. Winans counters that baristas and shift supervisors are not harmed by being required to share a tip pool with all employees whose gratuities are included therein. Indeed, a contrary holding results in their receipt of a windfall. Winans

submits that the arrangement allows Starbucks to avoid paying the baristas and shift supervisors at the expense of ASMs.  Which one of these interpretations is most consistent with <u>Samiento</u>'s command liberally to construe § 196-d in the employees' favor is not obvious and involves state policy judgments best decided in the first instance by the New York Court of Appeals.  <u>See Joseph v. Athanasopoulos</u>, 648 F.3d at 67.

C.     <u>Certification</u>

As explained <u>supra</u>, existing state caselaw on the questions identified is sparse and insufficient to permit us to predict with confidence how the New York Court of Appeals would construe New York Labor Law and the Department of Labor's regulations as they apply in this case.  <u>See 10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co.</u>, 634 F.3d 112, 125–26 (2d Cir. 2011) (holding that certification is appropriate "if the New York Court of Appeals has not squarely addressed an issue and other decisions by New York courts are insufficient to predict how the Court of Appeals would resolve it" (internal quotation marks omitted)).  Thus, the first certification factor is satisfied.

The same conclusion obtains as to the second factor, as the identified questions present important issues of New York law and policy.  Their resolution will shape the basic rules of how the hospitality industry, which is plainly vital to New York's economy, must pay its employees.  As a matter of comity, we deem it appropriate to certify these questions to the New York Court of Appeals.  <u>See Sealed v. Sealed</u>, 332 F.3d 51, 59 (2d Cir. 2003) ("Where a question of statutory interpretation implicates the weighing of policy concerns, principles of comity and federalism strongly support certification.").

Finally, certification of these questions may dispose of the case entirely.  <u>See Joseph v. Athanasopoulos</u>, 648 F.3d at 67.  Specifically, the New York Court of Appeals'

construction of the phrase "employer or his agent" in § 196-d, and "supervisor" in § 2(8-a), as well as its decision as to the application of the Hospitality Wage Order to some or all of the claims raised, will likely determine which of the parties is entitled to summary judgment in <u>Barenboim</u>. Those rulings, as well as the New York Court of Appeals' decision as to whether state law prohibits Starbucks from excluding ASMs from its tip pools, even if they are eligible to receive tips under § 196-d, will likely determine which of the parties is entitled to summary judgment in <u>Winans</u>. Even if the Court of Appeals' responses to the certified questions do not resolve all questions of fact, they will ensure that any federal trial of such questions is conducted with a correct understanding of the controlling principles of New York law.

## III.   <u>Conclusion</u>

To summarize, we defer decision in these cases, grant Barenboim's certification motion, and certify the following questions for these cases in tandem to the New York Court of Appeals:

1.   What factors determine whether an employee is an "agent" of his employer for purposes of N.Y. Lab. Law § 196-d and, thus, ineligible to receive distributions from an employer-mandated tip pool? In resolving this question for purposes of this case, the Court of Appeals may also consider the following subsidiary questions:

a.   Is the degree of supervisory or managerial authority exercised by an employee relevant to determining whether the employee is a "manager [or] supervisor" under N.Y. Lab. Law § 2(8-a) and, thus, an employer's "agent" under § 196-d?

b.   If an employee with supervisory or managerial authority renders services that generate gratuities contributed to a common tip pool, does § 196-d preclude that

employee from sharing in the tip pool?

      c.  To the extent that the meaning of "employer or his agent" in § 196-d is ambiguous, does the Department of Labor's New York State Hospitality Wage Order constitute a reasonable interpretation of the statute that should govern disposition of these cases?

      d.  If so, does the Hospitality Wage Order apply retroactively?

    2.  Does New York Labor law permit an employer to exclude an otherwise eligible tip-earning employee under § 196-d from receiving distributions from an employer-mandated tip pool?

In certifying these questions, we do not bind the Court of Appeals to the particular questions stated.  Rather, the Court of Appeals may expand these certified inquiries to address any further pertinent question of New York law as it might pertain to the particular circumstances presented in these appeals.  This panel retains jurisdiction and will consider any issues that may remain on appeal once the New York Court of Appeals has either provided us with its guidance or declined certification.

It is therefore ORDERED that the Clerk of this court transmit to the Clerk of the Court of Appeals of the State of New York a Certificate, as set forth below, together with a complete set of briefs and appendices, and the record filed in this court by the parties.

DECISION RESERVED.

## IV.  <u>Certificate</u>

The foregoing is hereby certified to the Court of Appeals of the State of New York pursuant to 2d Cir. L.R. 27.2 and  N.Y. Comp. Codes R. & Regs. Tit. 12,  § 500.27(a) , as ordered by the United States Court of Appeals for the Second Circuit.